**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MANSFIELD OIL COMPANY
OF GAINESVILLE, INC.,

Plaintiff,

Civil Action No. 2:26-cv-06072-GAM

v.

KRSM INC. and SYED KAZMI,

Defendants.

**MEMORANDUM OF LAW OF DEFENDANTS KRSM INC. AND SYED KAZMI**

**IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

**AND**

**IN SUPPORT OF THEIR CROSS-MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER**

## PRELIMINARY STATEMENT

Mansfield Oil is a fuel supplier. It sold motor fuel on open credit to KRSM Inc., a New Jersey fuel distributor, and claims it is owed roughly $4 million on invoices KRSM disputes. On August 19, 2026, Mansfield filed this action for that money. On August 20, without notice to Defendants, it obtained a Temporary Restraining Order freezing the bank account KRSM uses to pay its vendors, ECF No. 10, and that account has been frozen since.

**Defendants ask the Court to dissolve that Order and to deny the preliminary injunction.** The reason requires no finding of fact and no resolution of the parties' commercial dispute: a federal court has no equitable power to freeze a defendant's general assets before judgment to secure an unsecured creditor's claim for money.

A fuel supplier suing its distributor for payment for fuel it delivered on credit is an unsecured creditor with a claim for money. Before judgment, "an unsecured creditor has no rights at law or in equity in the property of his debtor." Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 330 (1999). That proposition decides this motion.

Mansfield's own documents establish the legal character of this transaction. Section 7 of the terms and conditions Mansfield attached to its Complaint acknowledges that KRSM "is purchasing Fuel on credit from Mansfield." Section 4 passes title and risk of loss to KRSM as the fuel is dispensed at the terminal. Section 6 makes payment a debt, due within ten days of KRSM's receipt of invoice. And Count III of the Complaint invokes the seller's remedy of an action for the price under 13 Pa. C.S. § 2709. Compl. Ex. A §§ 4, 6, 7. Nothing in that agreement grants Mansfield a lien, a security interest, a trust over resale proceeds, or any interest in KRSM's bank accounts. When Mansfield wanted protection for KRSM's credit position, Section 7 states the remedies it wrote for itself: suspension of future fuel sales and advance cash payment, together with its ordinary "rights and defenses available at law or equity."

A right to stop selling and a right to sue are what a credit seller bargains for. An interest in the buyer's bank account is not among them. If Plaintiff someday obtains a judgment, the law will give it execution remedies then; it does not give it a hold today on funds in which it owns nothing.

Plaintiff's own filings say the same thing. Its civil cover sheet codes this case "190 Other Contract," its docketed cause of action reads "28:1332 Diversity, Breach of Contract," and its five substantive counts all seek payment of the alleged debt, while the sixth merely asks the Court to declare that the asserted breach warrants this injunction.

The Court need not take Defendants' word for it. A judge of this Court entered an asset freeze on a one-sided application, held an evidentiary hearing, and then vacated his own order for want of power once the controlling authority was briefed to him. Novatek Corp. v. Mallet, 324 F. Supp. 3d 560 (E.D. Pa. 2018) (Bartle, J.). The complaint there pleaded breach of fiduciary duty, corporate waste, conversion, civil conspiracy and an accounting, and the court still held that "this is

an action at law and not an equitable proceeding," so that "Grupo controls." Id. at 566-67. The pleading here is weaker in equity, not stronger.

**The Court should also know what it was not told.** Two days before Plaintiff applied to this Court for this injunction, without notice, undersigned counsel served on Plaintiff's in-house counsel a written objection to every invoice and to the sum demanded, together with a demand to cease and desist. Mr. Kazmi sent copies to a principal of Mansfield at that principal's request, and that principal telephoned him twice that afternoon and said he would review them and revert. Plaintiff then pleaded that KRSM **"did not make any objections"** and **"did not object to paying Mansfield the balance owed,"** and disclosed none of it when it brought this application to this Court.

**Plaintiff itself does not know what it claims to be owed.** The sum it asks this Court to protect has never held still. Mansfield's own documents state it four different ways:

| Mansfield's own document | Date | Amount stated |
| --- | --- | --- |
| Schedule circulated by Mr. Kounalakis | July 23, 2026 | $4,025,748.46 |
| Demand letter | July 29, 2026 | $3,973,665.31 |
| The 151 invoices enclosed with that demand | July 29, 2026 | $4,035,260.72 |
| The Complaint in this action | August 19, 2026 | $3,998,868.46 |

Four figures, none reconciled to another, and the last appears in no pre-suit demand at all. The movement is not a mystery: the July 29 package billed four invoices twice, and the Complaint's figure adds three invoices that appear nowhere in that package. See Part III.C. KRSM disputed the billed amounts throughout, and on August 17 it objected in writing to every invoice and every figure. A creditor whose own paperwork cannot state what it is owed, and whose counterparty objected in writing before suit, did not have a fixed, undisputed account to put before a court without notice.

Three further defects independently support dissolution of the ex parte restraint, and each defeats any continuation or conversion of it. None requires a finding of fact.

**First, there was no sworn record.** Rule 65(b)(1)(A) permits relief without notice only on "specific facts in an affidavit or a verified complaint." The Complaint carries a page titled "Verification," but that page is sworn before no one, contains no declaration under penalty of perjury under 28 U.S.C. § 1746, and never states that the allegations are true: it says only that the signer is "familiar with the facts of this matter" and "would competently testify." And the document styled "Affidavit of George Kounalakis" has no jurat, no notarization and none of § 1746's language. A verification that does not verify and an affidavit sworn to by no one are not the record the Rule requires.

**Second, the restraint was enforced before the security was posted.** The Court ordered security "immediately." By Plaintiff's counsel's own written account, the restraint was invoked against M&T Bank on August 20; by Plaintiff's filed proof of service, at 9:11 a.m. on August 21. On either version, the Clerk's Fiscal Department confirmed in writing that no security had been posted as of 3:34 p.m. on August 21, and the bond at ECF No. 12 was docketed thereafter.

**Third, there is no evidence of dissipation.** The entire basis for freezing an operating business's bank account is one sentence, written by its lawyer, on "information and belief," supported by no document, no transaction, no date, no amount, no transferee and no witness.

And there is more of the same. On August 24, the day before this response was due, Plaintiff filed a second emergency motion (ECF No. 16), again asking that it be granted "without notice to Defendants," and again supported by a document styled an affidavit that is sworn to by no one. Defendants oppose it separately; its significance today is that Plaintiff's answer to every question in this case is another ex parte freeze.

Nor is there a holding pattern available. Defendants do not consent to any extension of the Order under Rule 65(b)(2), the Order cannot outlive the fourteen-day limit that Rule sets without consent or good cause found on a record that supplies none, and it cannot be converted into a preliminary injunction without authority Grupo Mexicano withholds.

**The Order should be dissolved and the motion denied.** Plaintiff's claim for money should proceed the way the law provides: on the pleadings, through discovery, and to judgment, with both sides heard.

## STATEMENT OF FACTS

### *A. The parties, the contract, and the absence of any security.*

KRSM Inc. is a New Jersey corporation that distributes motor fuel. Syed Kazmi is its principal. Plaintiff supplied KRSM with motor fuel on open credit. Kazmi Decl. ¶¶ 1-2.

The credit agreement Plaintiff attached to its own Complaint as Exhibit A contains no security interest, no collateral, no personal guaranty by Mr. Kazmi, no forum selection clause and no lien. Section 11 provides that the agreement is governed by the law of the state in which the terminal is located, which for the liftings at issue is Pennsylvania. Section 6 obligates Plaintiff to invoice upon lifting. Section 4 provides that title and risk of loss pass to KRSM as the fuel is dispensed. Compl. Ex. A. Nor does the Agreement provide that title to resale proceeds reverts to Mansfield, that proceeds are held in trust, that KRSM must segregate them, or that Mansfield holds a security interest in accounts or proceeds. Plaintiff pleads no lien, security interest, guaranty, or traced equitable interest in the restrained funds.

The Complaint alleges that KRSM took delivery "well above its approved credit limit of $150,000 pursuant to the Agreement." Compl. ¶ 56. The Agreement attached as Exhibit A states no $150,000 credit limit; Section 7 refers only to a credit limit "as extended by Mansfield," and if Plaintiff relies on some separate writing to establish that term, it has not placed that writing before the Court.

Plaintiff pleads no tracing allegation. It does not allege that any dollar in the restrained account is a proceed of fuel it supplied, that any such dollar is identifiable, or that any fund was segregated. It alleges that it is owed money.

### *B. What Plaintiff put before the Court.*

The application rested on two documents. The first is the Complaint, captioned "Verified Complaint." Its verification page, at page 10, is signed by George Kounalakis, Mansfield's Vice President of Sales. It is not notarized, is not made under penalty of perjury, contains none of the language 28 U.S.C. § 1746 requires, and never states that the Complaint's allegations are true. It states that Mr. Kounalakis is "familiar with the facts of this matter," has "personal knowledge of Plaintiff . . . and its activities and intentions," and "if called upon to testify . . . would competently testify as to the matters stated herein." Familiarity and competence are not verification. The second is a document styled "Affidavit of George Kounalakis," signed at Gainesville, Georgia on August 18, 2026, bearing no jurat, no notarial certificate, no seal, no attestation by any officer authorized to administer oaths, and none of § 1746's language. Kazmi Decl. ¶ 21 & Ex. F.

**On dissipation, the application contains exactly one line: counsel's assertion, on "information and belief," that KRSM may transfer funds.** Nothing supports it. No declarant states any fact about any transfer. No bank record, no transaction, no date, no amount and no transferee is identified anywhere in the application or in its 179 pages of exhibits. A single unsworn sentence by a lawyer was the entire evidentiary basis for freezing a company's operating account without notice.

The Complaint alleges at paragraph 49 that KRSM **"did not make any objections,"** and at paragraph 51 that KRSM **"did not object to the details of the updated invoices, and did not object to paying Mansfield the balance owed." The exhibits now before the Court show that both allegations were contradicted by a document sitting in Plaintiff's own hands when they were signed: a written objection to every one of the 151 invoices, to the price, and to the sum demanded, served on Plaintiff's in-house counsel two days earlier.** Gossett Decl. ¶¶ 11-12 & Ex. 3.

Plaintiff also asked to proceed without notice on state-law authority. Its motion invokes 12 Pa. C.S. § 5107(3)(i) as the source of power to freeze the account, Pl.'s Mot. ¶ 19, and cites "the general liquid nature of funds held in any specific bank account," together with 231 Pa. Code r.

1531(a), as the reason to proceed without notice to KRSM, id. ¶ 22. It made no showing under Fed. R. Civ. P. 65(b)(1).

### *C. What Plaintiff's own pleading admits.*

Plaintiff alleges that KRSM lifted fuel from May 21 through July 7, 2026. Compl. ¶ 12. It then admits that "[d]ue to a data receiving error, Mansfield did not receive the information necessary to send invoices to KRSM until early July of 2026," and that on or about July 8 it "contacted Kazmi with KRSM to explain the data receiving error." Id. ¶¶ 16-17. Under Section 6 of the Agreement, "Mansfield will invoice Purchaser for Fuel upon lifting at the Delivery Point," and payment is due "within ten (10) days following Purchaser's [KRSM's] receipt of invoice." Compl. Ex. A § 6; Compl. ¶ 20. Whatever KRSM knew operationally, Mansfield agreed to invoice upon lifting and agreed that payment ran from receipt of invoice, and it is Mansfield's own pleading that its invoicing process failed for six weeks.

Paragraph 18 then alleges: "Following receipt of the invoices from Mansfield, Kazmi and Mansfield personnel communicated regarding some minor fuel pricing discrepancies and the invoices were adjusted accordingly." Paragraph 19 alleges that on July 17 Mansfield sent "revised invoices" and advised that, "barring any further discrepancies or disagreements," it would draft KRSM's account beginning July 27.

Those allegations cannot be reconciled with paragraphs 49 and 51. **A counterparty that "communicated regarding . . . pricing discrepancies," and that was told there might be "further discrepancies or disagreements," is not a counterparty that "did not make any objections."** And whatever revisions Plaintiff contends occurred earlier, its July 29 package and its Complaint do not reconcile: the July 29 package bills four invoices twice, the Complaint's demand incorporates three invoices absent from that package, and each of the 147 unique July 29 invoices is identical, to the cent, to its counterpart in the Complaint's exhibits. Kazmi Decl. ¶¶ 18-20 & Ex. E.

***D. What Plaintiff did not put before the Court.***

The following is established by email transmission records, a mobile telephone log and Plaintiff's own documents. Gossett Decl. ¶¶ 11-12 & Ex. 3; Kazmi Decl. ¶¶ 3-7 & Exs. A-C.

**August 6, 2026.** A principal of Mansfield opened a group text message with Mr. Kazmi stating that he wished to stay informed and offering "ways I can be helpful." Kazmi Decl. ¶ 3 & Ex. A.

**August 17, 2026, 2:36 p.m..** Undersigned counsel emailed Plaintiff's in-house counsel, attaching KRSM's written objection to the account and notice of breach, and a demand to cease and desist. The covering email stated: "I represent KRSM, Inc. and Syed Kazmi in this matter. Please direct all further communications concerning it to me." Gossett Decl. ¶ 11 & Ex. 3.

**August 17, 2026, 2:46 p.m..** At their request, Mr. Kazmi emailed copies of counsel's correspondence to two Mansfield personnel, one a principal of the company: "Please see the attached letters, which our counsel forwarded to your legal department." Kazmi Decl. Ex. B.

**August 17, 2026, 2:53 p.m..** That principal telephoned Mr. Kazmi. The call connected for four minutes and one second. Kazmi Decl. Ex. C.

**August 17, 2026, 4:06 p.m..** He telephoned again. The call connected for six minutes and fifty-six seconds. He acknowledged the letters and said he would read them, digest them, and revert. Kazmi Decl. Ex. C.

**August 18, 2026.** Mr. Kounalakis signed the statement supporting the application. The cease and desist letter served the previous afternoon is addressed to him by name.

**August 19, 2026.** Plaintiff filed and moved without notice, two days after its in-house counsel received KRSM's written objection, and while a principal of Mansfield had told Mr. Kazmi he would review the letters and respond.

**August 21, 2026, 8:42 a.m..** Plaintiff's counsel, the same attorney who signed the Complaint alleging that KRSM "did not make any objections," emailed undersigned counsel at legal@upssites.com. That address appears in this dispute in exactly one place: the letterhead of the August 17 letters, the very documents that refute the allegation.

Counsel has since confirmed by his own filed affirmation that he served the case papers on that address that day. ECF No. 17; Gossett Decl. ¶¶ 7-8 & Ex. 2.

**None of this was told to the Court when Plaintiff moved, without notice, for this injunction. Not the objection, not the cease and desist, not counsel's appearance, not the telephone calls. It appears nowhere in the Complaint, the motion, the supporting memorandum, the Kounalakis statement, or any of the 179 pages of exhibits.**

***E. The Order, the freeze, and the late-posted security.***

The Court entered the Order on August 20, 2026. Paragraph 4 provides: "Plaintiff shall immediately post bond in the amount of $100,000.00." Plaintiff's proposed order at ECF No. 2-1 contains seven numbered paragraphs and no bond provision. The condition originated with the Court.

The sequence of Plaintiff's performance is now documented at each step. Plaintiff's counsel wrote on the morning of August 21 that "the Court's TRO was served on M&T Bank yesterday," representing service on the bank on August 20. Gossett Decl. ¶ 7 & Ex. 2. Plaintiff's own affidavit of service on the bank recites personal delivery on August 21 at 9:11 a.m. ECF No. 13. As of 12:54 p.m. on August 21 the docket contained no entry of security, and at 3:34 p.m. the Fiscal Department of the Clerk of this Court, having explained that "[o]nce the bond has been received and processed, a docket entry will be posted," confirmed in writing: "No, they have not." Gossett Decl. ¶¶ 2-5 & Exs. 1, 4. The $100,000 surety bond now docketed at ECF No. 12 was docketed later that day, after the Fiscal Department's 3:34 p.m. confirmation. Id. ¶ 6 & Ex. 5. Mansfield thus invoked the restraint against M&T Bank while the court-ordered security remained unposted, and the security remained unposted through at least 3:34 p.m. on August 21.

Paragraph 3 required personal service of the Order, the motion and the supporting documents on Defendants on or before August 21, 2026. The returns filed and thrice amended by Plaintiff do not resolve the disputed factual predicates of service. Neither ECF No. 14 nor ECF No. 15 states the address or place at which service was made. Each runs through a person named Preet Singh, whom ECF No. 14 describes as a "Manager" of KRSM "authorized to accept service" and ECF No. 15 as a person who "identified himself as the manager and person in charge" of Mr.

Kazmi's "usual place of business." Mr. Kazmi is not aware of any person by that name who, on August 21, 2026, was an officer, employee, manager, registered agent, or person authorized to receive service for KRSM, and he authorized no such person to accept service for him individually. Kazmi Decl. ¶¶ 22-25. As originally filed, the proofs recited service of the summons (ECF No. 14) and of "the summons and complaint" (ECF No. 15), not of the Order or the motion papers paragraph 3 required. On August 24, on the eve of this response, Plaintiff filed amended returns (ECF Nos. 18, 19 and 20) reciting an expanded set of papers, the last adding that Preet Singh "confirmed he was authorized to accept documents on behalf of Syed Kazmi." The Court now has three successive sworn versions of the same August 21 events, each reciting more than the last, all bearing the same August 21 execution date, and none stating the address or place where service was made. Whether any of the recited papers were actually delivered, and whether the unnamed location was in fact KRSM's office or Mr. Kazmi's usual place of business with a person named Preet Singh in charge of it, are questions of fact, and Mr. Kazmi's sworn declaration disputes them. An amended recital does not change who Preet Singh was not. Plaintiff's counsel also filed an affirmation that he emailed the papers to Defendants' counsel on August 21 (ECF No. 17); paragraph 3 required personal service on Defendants, not email to a lawyer, and the affirmation is given "under penalty of false statement" "to the best of my knowledge and belief," not under penalty of perjury as 28 U.S.C. § 1746 requires. Defendants expressly preserve all objections to sufficiency of process and of service of process under Rules 12(b)(4) and 12(b)(5), and nothing in this filing waives them.

In sum: the restraint was invoked before the required security had been posted, on either of Plaintiff's own versions of the date; the security came only late on August 21; and the factual predicates of the personal service paragraph 3 required are disputed under penalty of perjury. Defendants state the sequence and draw no further conclusion from it.

### *F. What the restraint secures, and what it costs.*

The restrained account is not a reserve. It is an account KRSM uses to pay its vendors and other ordinary-course obligations, including its fuel suppliers, its carriers, its tax remittances and its payroll. Kazmi Decl. ¶¶ 8, 15.

Since August 20, payments drawn on the account have been returned, including a payment to one of KRSM's principal fuel suppliers, which has suspended supply. Kazmi Decl. ¶¶ 13-14. The same account paid Plaintiff $26,880.00 on July 30, 2026, the day after Plaintiff's "FINAL NOTICE," for purchases that are not among the invoices in dispute. Kazmi Decl. ¶¶ 11-12 & Ex. D.

### *G. Plaintiff's filings of August 24.*

On August 24, 2026, Plaintiff filed a Second Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 16), requesting that it be granted "without notice to Defendants," id. ¶ 9, and asking that M&T Bank be directed "to immediately freeze all accounts associated with Defendants." Its dissipation allegation is again made "[u]pon information and belief," id. ¶ 6, and its only factual support (ECF No. 21) is again unsworn: no jurat, no notarization, no declaration under 28 U.S.C. § 1746, a caption naming a different court, and an account of a telephone call with an M&T Bank representative whose name counsel "was unable to get." Id. ¶ 3. In it, Plaintiff represents that the restrained account is in the name of a non-party entity, id. ¶ 4, and asks that the freeze extend to accounts of persons and entities that are not parties to this action, id. ¶ 14, attaching a complaint from a different case that does not name Syed Kazmi as a defendant. Defendants oppose that motion by separate filing and address it here only as it bears on the motions now before the Court.

## ARGUMENT

### I. THE COURT LACKS THE POWER TO FREEZE A DEFENDANT'S GENERAL ASSETS IN AN ACTION AT LAW FOR MONEY.

This argument is dispositive and purely legal. The question is whether, "even assuming that all of the district court's findings were correct and that the four traditional standards for issuance of a preliminary injunction were met, the district court had power to enter the injunction." In re Fredeman Litig., 843 F.2d 821, 824 (5th Cir. 1988). It did not.

***A. Grupo Mexicano forecloses this relief.***

A federal district court has no authority to issue a preliminary injunction preventing a defendant from transferring assets in which no lien or equitable interest is claimed, in an action for money damages. Grupo Mexicano, 527 U.S. at 333. The Court traced the rule to the equity jurisdiction of the English Court of Chancery in 1789 and to "the historical principle that before judgment . . . an unsecured creditor has no rights at law or in equity in the property of his debtor." Id. at 330.

It also answered the argument Plaintiff makes here:

> "[T]here is absolutely nothing new about debtors' trying to avoid paying their debts, or seeking to favor some creditors over others . . . . The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." 527 U.S. at 322.

Grupo Mexicano left two escapes: a statute expanding traditional equitable powers, and a claim that is genuinely equitable and attaches to specific property. Plaintiff has neither. This Court has entered an ex parte asset freeze in FTC v. Smith, No. 2:23-cv-04848-GAM (E.D. Pa. Dec. 8, 2023), and it had authority to do so precisely because Congress supplied it: that order recites Sections 13(b) and 19 of the Federal Trade Commission Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act, and rested on findings of a multi-million dollar consumer fraud. Congress has given no comparable authority to a fuel supplier suing on an invoice.

***B. A judge of this Court entered the same order in the same posture and vacated it.***

In Novatek the plaintiff obtained a restraining order restraining the defendants' assets. The court held an evidentiary hearing, then denied the preliminary injunction and vacated the restraining order for want of power. 324 F. Supp. 3d at 566-67.

Novatek also recorded how the order came to be entered: "Plaintiff cited and the court relied upon our Court of Appeals' decision in Hoxworth v. Blinder, Robinson & Co. . . . Defendants cited no contrary authority at that time." Id. at 566 n.3. A court asked to act on one side's papers is entitled to assume the papers are complete. Revisiting the order once the other side appears is the ordinary operation of Rule 65, not a reversal.

Novatek also forecloses the Pennsylvania fallback. The court predicted that the Supreme Court of Pennsylvania would follow Grupo Mexicano and declined to follow contrary Superior Court dicta in Walter v. Stacy, 837 A.2d 1205 (Pa. Super. 2003), and Ambrogi v. Reber, 932 A.2d 969 (Pa. Super. 2007), because 1 Pa. C.S. § 1503(a) imports English equity as it stood in 1776, the same baseline Grupo Mexicano applies. Pennsylvania supplies no wider power than federal law.

***C. This District applies Grupo Mexicano to ordinary commercial collection claims, and it applies a three-part test Plaintiff cannot meet.***

Reidenbach & Associates, LLC v. Brown is close to this case on its facts. A law firm sued a former client for unpaid fees on breach of contract and unjust enrichment theories and asked the court to order the proceeds of a condominium sale into escrow because the client might otherwise be judgment proof. The court denied relief. It held that federal law, not state law, governs the scope of a federal court's authority to issue a preliminary injunction, so that "federal law, and Grupo, is controlling"; that the firm claimed no lien on the property; and that the property was "clearly collateral to the merits of the action." No. 20-1822-KSM, slip op. at 5-7 (E.D. Pa. May 1, 2020) (Marston, J.). The court added that even under Pennsylvania law "the result would be the same." Id. at 6.

Judges of this District test a requested prejudgment freeze against three conditions. A plaintiff may obtain one "only if he satisfies three conditions: (1) he asserts a cognizable equitable

claim, (2) he demonstrates a sufficient nexus between that equitable claim and specific assets of the defendant which are the target of the injunctive relief, and (3) he shows that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." Symphony FS Ltd. v. Thompson, No. 5:18-cv-3904, 2018 WL 6715894, at *8 (E.D. Pa. Dec. 20, 2018) (Leeson, J.). Symphony also holds that conversion is a legal claim and that a constructive trust is a remedy rather than a cause of action. Id.

Even assuming Count II could satisfy the first condition, Plaintiff independently fails the second and the third, and each failure is dispositive. It pleads no nexus at all: it does not allege that any dollar in the M&T account is a traced proceed of fuel it supplied, that any such dollar belongs to it in equity, or that any fund was ever segregated. In plain terms, Plaintiff cannot point to any specific money in the account and say that money is Mansfield's. And tracing alone would not close the gap: before any tracing question arises, Plaintiff needs a legal or equitable entitlement to the proceeds of fuel it sold, and the agreement that passed title to KRSM at the rack, and reserved no trust, proceeds clause, lien or security interest, forecloses that first step. And a blanket freeze of the account a business uses to pay its vendors is not a measure that preserves an identified fund; it is a measure to secure a money judgment.

What the nexus requires can be seen from the case in which it was met. In GridKor, LLC v. Gorbach the plaintiffs traced approximately $4.94 million that they themselves had transferred to the defendants and sought to preserve that specifically identified fund; the court found the nexus satisfied because the restraint targeted that identified sum. No. 23-3563, slip op. at 16-17 (E.D. Pa. Sept. 26, 2024) (Schmehl, J.). Mansfield transferred no funds to KRSM; it sold fuel on credit and now wants to be paid.

### *D. None of Plaintiff's counts supplies an equitable interest in the restrained funds.*

"[A] claim for money due and owing under a contract is quintessentially an action at law." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002). Each count ends in the same place.

| Count | What it actually seeks | Legal or equitable |
|---|---|---|
| I. Breach of contract | The invoiced price of fuel delivered | Legal. Great-West, 534 U.S. at 210. |
| II. Unjust enrichment | The same money, from general funds | Generally unavailable where an express contract governs; in any event, no nexus to any specific fund. See Part I.E. |
| III. Action for the price, 13 Pa. C.S. § 2709 | The price | Legal by definition. The Code calls it an action for the price. Pleading it concedes that what Plaintiff wants is money. |
| IV. Account stated | A sum certain said to be agreed | Legal. It seeks payment of an alleged agreed debt. |
| V. Conversion | Damages measured by the same sum | Legal. See below. |
| VI. Declaratory relief | A declaration that the asserted breach entitles Plaintiff to this injunction | Creates no equitable property interest in the restrained funds. A remedy cannot supply the authority to grant itself. |

On conversion the answer is old and binding. In In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1143-44 (3d Cir. 1982), the Third Circuit quoted Judge Learned Hand: "As to the money, how is it possible to sue in equity? The acts charged constitute, on the plaintiffs' theory, a conversion, nothing more. . . . I cannot suppose that it would anywhere be seriously contended that upon a conversion of money the victim might file a bill in equity and get final relief by mandatory injunction." Sims v. Stuart, 291 F. 707, 707-08 (S.D.N.Y. 1922).

The count also fails on its own terms, and its failure removes the last property-shaped theory from the case. Plaintiff sold fuel on credit, and Section 4 of its own agreement passes title on dispensing. A seller who has parted with title and delivered on credit has a claim for the price, not a claim to the goods, and no claim at all to unrelated dollars in a bank account.

***E. The unjust enrichment count supplies no equitable authority over these funds.***

This is the count Plaintiff will lead with, and the answer does not depend on winning any pleading argument. Even assuming Count II is properly pleaded in the alternative and is equitable in some abstract sense, it supplies no authority to freeze this account, because it has no nexus to any specific, identifiable fund. Four independent points establish that.

First, under Pennsylvania law, which Section 11 of Plaintiff's own agreement selects, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Shafer Elec. & Constr. v. Mantia, 67 A.3d 8, 13 (Pa. Super. 2013), aff'd on other grounds, 96 A.3d 989 (Pa. 2014); see also Vantage Learning (USA), LLC v. Edgenuity, Inc., 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017). Alternative pleading is tolerated where the existence or scope of the contract is genuinely uncertain, but Plaintiff pleads no such uncertainty: it attached the agreement to its Complaint, sued on it, and pleaded an action for its price. A count pleaded only as a fallback to an admitted express contract is a fragile foundation for extraordinary relief.

Second, restitution is equitable only if it seeks particular property. "[F]or restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Great-West, 534 U.S. at 214. And "[t]ypically . . . specific performance of a contract to pay money was not available in equity." Id. at 211. Once the particular fund is dissipated into a defendant's general assets, no equitable remedy lies. Montanile v. Bd. of Trustees, 577 U.S. 136, 144-46 (2016).

And Plaintiff pleads no tracing and offers no evidence tracing any portion of the restrained funds to identifiable proceeds of fuel it supplied. It does not allege that any dollar in the account is such a proceed, that any fund was ever segregated, or that the agreement required segregation. No agreement required segregation and none occurred, Kazmi Decl. ¶ 10; Section 4 of Plaintiff's own contract passed title on dispensing, and by Plaintiff's own pleading the last lifting occurred on July 7, 2026. Compl. ¶ 12. The burden of identifying a specific fund with a nexus to an equitable claim is Plaintiff's, and Plaintiff has not attempted to carry it. Its claim is, and has always been, a claim to be paid.

Third, the closest case in the reported law is against Plaintiff. In Oak Leaf Outdoors, Inc. v. Double Dragon International, Inc., 812 F. Supp. 2d 944 (C.D. Ill. 2011), an unpaid goods supplier owed roughly $2 million pleaded breach of contract, promissory estoppel and unjust enrichment and sought "a constructive trust, escrow, asset freeze, or some other similar relief." The court

denied it for want of authority: the "equitable claims" of promissory estoppel and unjust enrichment "all derive from the same occurrence, namely, a breach of contract." Asked at argument whether it wanted the goods back, the supplier answered that "it was asking to be compensated for the products and did not want the actual products back." That, the court held, "is a straightforward breach of contract situation in which the available remedy is money damages." Id. at 948-50.

Fourth, Plaintiff's own pleading answers the question. The Uniform Commercial Code's action for the price is the seller's legal remedy for a legal debt. Relabeling the same demand costs Plaintiff nothing and gains it nothing: such a request is "nothing more than saying the specific performance desired is ensuring the legal debt can be paid," and is "equitable assistance in the collection of a legal debt, a recourse precisely foreclosed by Grupo Mexicano." Leadenhall Capital Partners LLP v. Advantage Capital Holdings, LLC, No. 24-2647, slip op. at 18-20 (2d Cir. Mar. 23, 2026). Nor does Deckert v. Independence Shares Corp., 311 U.S. 282 (1940), assist Plaintiff: Grupo Mexicano itself distinguished Deckert because the plaintiffs there sought rescission and restitution of specific consideration, 527 U.S. at 324-25, whereas Plaintiff seeks personal payment of a trade receivable from general assets.

Plaintiff may cite Fairview Machine & Tool Co. v. Oakbrook International, Inc., 77 F. Supp. 2d 199 (D. Mass. 1999), where a supplier's quantum meruit claim was held to supply an equitable interest and a freeze survived. Fairview is distinguishable on every fact that mattered. The court there treated the quantum meruit claim as directed to specific assets, funds in the defendant's possession to pay for machinery the defendant had accepted, and the defendant had already "disposed of the vast majority of its assets and paid the cash it received to third parties" and was no longer operating. Here Plaintiff identifies no comparable specific res and no traced fund, and KRSM is an operating company whose disbursement account is the thing restrained. Fairview also required a bond, and even there the injunction permitted ordinary-course transactions. Even Plaintiff's best case did not tolerate an order like this one.

### *F. Hoxworth does not authorize this Order, and what survives of it supports Defendants.*

Defendants address Hoxworth directly rather than in a footnote. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 194-97 (3d Cir. 1990), read De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212 (1945), as permitting a freeze to protect a damages remedy where a defendant was likely to be insolvent at judgment.

To the extent Hoxworth was read to authorize a freeze of general assets solely to secure a future money judgment on collectability concerns, Grupo Mexicano foreclosed that reading: it rejected an asset freeze in an action on a contract debt against a defendant in financial distress, the precise configuration that reading thought permissible, and it did so by holding that the power does not exist. Other circuits had already said the Hoxworth reading "tortures the express language of De Beers." Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1530 & n.24 (11th Cir. 1994). And Novatek shows what a court in this district does with Hoxworth once Grupo Mexicano is briefed: it entered a freeze on Hoxworth, and vacated it.

Even on its own terms Hoxworth would not save this Order, because Hoxworth vacated the freeze before it as "fatally overbroad." See Part VIII.A. Defendants cite Hoxworth affirmatively for tailoring and for security, and ask the Court to apply what Grupo Mexicano left standing.

### *G. Every recognized route to a pre-judgment freeze is absent.*

| Route | What it requires | Present here |
|---|---|---|
| Equitable claim with a nexus to specific assets | "[A] cognizable claim to specific assets of the defendant." U.S. ex rel. Rahman v. Oncology Assocs., 198 F.3d 489, 496 (4th Cir. 1999). | No. Rahman itself holds that "a debt claim leads only to a money judgment and does not in its own right constitute an interest in specific property." |
| Restitution of a traceable res | Particular funds in defendant's possession, still identifiable. Great-West, 534 U.S. at 214; Montanile, 577 U.S. at 144-46. | No. No segregated fund and no tracing pleaded, and by Plaintiff's own pleading the last delivery was July 7, 2026. |
| Conversion | Nothing. Equity does not take a legal claim "merely to hurry it along." Arthur | No. |

| Route | What it requires | Present here |
|---|---|---|
| | Treacher's, 689 F.2d at 1143-44. | |
| A statute expanding equity | FTC Act § 13(b), ERISA, securities laws, the False Claims Act. | No. Diversity contract action. Cf. FTC v. Smith, where Congress supplied the power. And private civil RICO did not authorize the freeze sought in Fredeman. 843 F.2d at 830. |
| Evasion of judgment | Not a route. | See below. |
| Insolvency | Not a route after Grupo Mexicano. Vis Vires Grp. v. Endonovo Therapeutics, 149 F. Supp. 3d 376, 393 (E.D.N.Y. 2016). | Not a route, and unsupported by any evidence. |
| Rule 64 attachment | A separate motion, state-law elements, factual findings. | Not moved for. See Part I.H. |
| Statutory or public-interest enforcement | Where interim equitable relief is otherwise authorized, its scope may broaden when the public interest is involved. Rahman; United States v. First Nat'l City Bank, 379 U.S. 378 (1965). | No. Two private companies and an invoice, and no equitable relief is otherwise authorized. |

The route Plaintiff actually relies on, that KRSM may move money, is not a route at all, and three courts of appeals have said so. Fredeman: the plaintiffs "contend primarily that the defendants are scoundrels who will try to escape judgment, an allegation that, even if true, would not justify the preliminary injunction." 843 F.2d at 827. Rosen rejected the argument that courts are otherwise "powerless to protect a potential future damages remedy against a recalcitrant defendant . . . no matter how brazen its attempt to evade judgment by secreting assets," answering that Rules 64 and 69 exist. 21 F.3d at 1530-31. And this year the Second Circuit held that even an express finding that defendants "intend to frustrate any judgment on the merits by making an award uncollectible does not alter the nature of the obligation sought to be enforced here, which is a legal interest in money due and owing under a contractual obligation." Leadenhall, slip op. at 16.

That is the point to hold in mind through the rest of this memorandum. Whatever Plaintiff says about KRSM, none of it creates judicial power that does not exist.

### *H. Neither Rule 64 nor 12 Pa. C.S. § 5107 supplies an alternative.*

Plaintiff moved under Rule 65 and is bound by Rule 65. "[T]he very nature of a freeze order counsels against commingling the jurisprudence of Rule 65 with that of Rule 64." Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 160 (1st Cir. 2004). An attachment "is a distinct order applying state law, not an alternative basis for a preliminary injunction under federal law," and requires findings the Court has not made and a motion Plaintiff has not filed. Leadenhall, slip op. at 21. Pennsylvania's attachment procedures are not before the Court, and Novatek holds Pennsylvania equity no wider than Grupo Mexicano allows. Reidenbach is directly on point: federal law governs the scope of this Court's injunctive authority, and the answer under Pennsylvania law would be the same. Slip op. at 6.

Section 5107 does not fill the gap either. The statute opens: "In an action for relief against a transfer or obligation under this chapter . . . ." 12 Pa. C.S. § 5107(a). Plaintiff has pleaded no claim under Pennsylvania's voidable transactions statute, has identified no transfer to be avoided, and has named no transferee. A remedy that exists only within an action attacking a transfer cannot convert an ordinary trade receivable into an equitable interest in an unrelated operating account.

Nor can 231 Pa. Code r. 1531(a) supply the standard for proceeding without notice in this Court. Rule 65(b) governs, and Plaintiff made no showing under it. See Part II.

## II. THE ORDER ISSUED WITHOUT THE SWORN RECORD RULE 65(b)(1)(A) REQUIRES.

Rule 65(b)(1)(A) permits a court to act without notice "only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." That is not a formality. It is the entire evidentiary basis on which a court is asked to act against a party who cannot answer.

Neither document exists here. The Complaint's "Verification" page is not a verification in law: it is unsworn, it is not made under penalty of perjury as 28 U.S.C. § 1746 requires, and it never attests that the allegations are true; it recites familiarity, knowledge and competence to testify, and

stops there. A pleading is "verified" when someone swears, or declares under penalty of perjury, that its contents are true. No one has done either, in this Complaint or anywhere else in this case.

The document styled "Affidavit of George Kounalakis" is not an affidavit. An affidavit is sworn before an officer authorized to administer oaths and its execution is evidenced by a jurat. This document has no jurat, no notarial certificate, no seal and no officer. Nor does it qualify as an unsworn declaration under 28 U.S.C. § 1746, which requires the declarant to state, in substantially the prescribed form, that the statement is made "under penalty of perjury" and is "true and correct." Those words do not appear. The Third Circuit enforces § 1746. See United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 314-15 (3d Cir. 2019).

The consequence is precise: the application supplied no sworn statement, and no declaration complying with 28 U.S.C. § 1746, establishing the supposed dissipation or any other immediate and irreparable injury on which relief without notice depended. That defect is independent of everything else in this memorandum: even a court with power to freeze assets in an action at law could not do it on this record.

The application also failed Rule 65(b)(1)(B). That provision permits relief without notice only if "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Plaintiff's papers contain no such certification. In its place, the motion offers "the general liquid nature of funds held in any specific bank account" and a Pennsylvania procedural rule, 231 Pa. Code r. 1531(a). Pl.'s Mot. ¶ 22. No effort to give notice is identified, notwithstanding that undersigned counsel had identified himself to Plaintiff's in-house counsel in writing two days earlier, had asked that all communications be directed to him, and was readily reachable at the very address Plaintiff's counsel used the morning of August 21. Gossett Decl. ¶¶ 7-8, 11, 13.

The pattern persists. The only factual support offered for Plaintiff's second application, the document styled an "Affidavit" at ECF No. 21, is likewise unsworn: it carries no jurat, no notarization and no declaration under 28 U.S.C. § 1746, and it therefore supplies no sworn factual

support for the renewed dissipation allegation. Two ex parte applications; two documents styled "Affidavit"; neither sworn.

Rule 65(b)(2) separately requires that an order issued without notice state the date and hour of its issuance, describe the injury and why it is irreparable, and state why the order issued without notice. It was Plaintiff's burden, as the party seeking ex parte relief, to present an order supplying those recitals; the order Plaintiff proposed and obtained states a date but no hour and contains none of them. Defendants note this only as a further respect in which the ex parte application fell short of the Rule, and a further reason the restraint should not be continued or converted into preliminary relief.

## III. PLAINTIFF FAILS BOTH GATEWAY FACTORS.

Plaintiff must establish both a likelihood of success and irreparable harm. Those are "gateway factors"; if either fails the inquiry ends. Reilly v. City of Harrisburg, 858 F.3d 173, 176, 179 (3d Cir. 2017). Plaintiff fails both.

### *A. A claim for money is not irreparable harm.*

"The availability of adequate monetary damages belies a claim of irreparable injury." Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). "[W]e have never upheld an injunction where the claimed injury constituted a loss of money." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." Sampson v. Murray, 415 U.S. 61, 90 (1974). Plaintiff's injury is that it says it is owed $3,998,868.46. That is the definition of a compensable loss.

Plaintiff's asserted theory of irreparable harm therefore reduces to collectability: that KRSM may move assets before judgment. Grupo Mexicano forecloses using Rule 65 to solve that problem in an action at law, and the theory is unsupported here in any event.

### *B. Plaintiff identifies no evidence that KRSM was concealing or dissipating anything.*

The application contains no evidence of dissipation. It contains a sentence of counsel, on information and belief, in a memorandum. No declarant identifies a single transfer, date, amount or transferee. Nothing in 179 pages of exhibits touches the subject. An assertion on information and belief in a brief is not evidence, and it is not the "specific facts in an affidavit" Rule 65(b)(1)(A) demands.

Plaintiff's second motion repeats the identical defect five days later: its dissipation allegation is again made "[u]pon information and belief," ECF No. 16 ¶ 6, and its only factual support is an unsworn attorney statement recounting a telephone call with a bank representative whose name counsel could not provide, ECF No. 21 ¶ 3. Two applications; no evidence of a single transfer in either.

This District has rejected materially stronger showings. In Bradley v. Amazon.com, Inc., the movant sought an asset freeze and pointed to a default, a prior hold placed on the defendant's account, and transfers of trademarks to China. The court refused. It found no evidence "to support his proposition that [the defendant] has made purported efforts to pilfer money from its account to deprive [the movant] of collecting damages," and held that it "will not grant a TRO based on [the movant's] mere speculation that [the defendant] may not be able to, or may refuse, to pay a final damages award." No. 17-1587, slip op. at 6, 8 (E.D. Pa. Dec. 1, 2021) (Strawbridge, M.J.). Plaintiff here offers less than that: not a weak inference from real transactions, but no transactions at all.

What the record does show is ordinary-course activity, including toward Plaintiff itself. **While this dispute was pending, KRSM continued to pay Mansfield for purchases that were not in dispute, including $26,880.00 on July 30, 2026, the day after Plaintiff's own "FINAL NOTICE."** Kazmi Decl. ¶¶ 8, 11-12 & Ex. D. That payment is ordinary-course activity inconsistent with the only factual narrative Plaintiff offered, and Plaintiff identifies no contrary transaction. Mr. Kazmi states under penalty of perjury that he has not caused or directed any transfer to conceal assets or frustrate collection. Id. ¶ 12.

Nor does the freeze accomplish what Plaintiff said it would. It preserves no identified Mansfield property, while stopping the operation that generates every dollar available to pay any judgment.

### *C. Plaintiff's own documents defeat the showing it made without notice.*

Defendants do not ask the Court to decide whether KRSM owes Plaintiff money, and nothing here is a concession or a waiver of any defense, setoff, recoupment or counterclaim, all of which are reserved. The point is confined to Plaintiff's own paper.

The account stated count is the clearest illustration. Under Pennsylvania law an account stated requires "an agreement to, or acquiescence in the correctness of the account," and its indispensable ingredient is a definite, agreed balance arrived at between debtor and creditor. Zimmer Dev. Co. v. TVC Dev. Co., No. 20-cv-4465-JMY, slip op. at 16-17 (E.D. Pa. June 28, 2022) (Younge, J.). In Zimmer the debtor sent an email disputing several hundred thousand dollars of the balance. The court held that such acquiescence was "inconsistent with" that email, that "no reasonable jury could determine Defendant assented to the account," and granted summary judgment against the account stated theory. Id. at 17.

KRSM did more than send an email. Two days before this Complaint was signed, Plaintiff's in-house counsel had in hand a letter stating that KRSM **"objects to the correctness of each of the 151 invoices enclosed with your letter and to the sum of $3,973,665.31 stated in it,"** that "[n]o amount is due or owing as demanded," and that the objection "extends to every invoice and every line, and is continuing." Gossett Decl. ¶ 12 & Ex. 3 at 1. **Plaintiff pleaded the opposite.**

The amount itself keeps changing. In the span of nineteen days, Mansfield's own documents stated three different totals for the same account, no two of them the same, and the Complaint then pleaded yet another figure that appears in none of them.

| **Source** | **Amount** |
|---|---|
| Sum of the 151 invoices enclosed with Plaintiff's July 29, 2026 demand | $4,035,260.72 |
| Schedule circulated by Mr. Kounalakis on July 23, 2026 | $4,025,748.46 |

| Source | Amount |
|---|---|
| The sum demanded in Plaintiff's July 29, 2026 letter | $3,973,665.31 |
| The same 151 invoices, net of four exact duplicates (derived from Plaintiff's own package) | $3,938,258.51 |
| The sum the Complaint alleges was "stated" on July 17, 2026 | $3,998,868.46 |

The first three figures are Mansfield's own; the fourth is those same invoices with the duplicates removed; all four are identified in KRSM's August 17 objection, Gossett Decl. ¶ 12 & Ex. 3 at 1-2, and the fifth is pleaded at Complaint paragraph 50. Four invoice numbers appear twice in the July 29 package, being 28133196, 28133794, 28133974 and 28134375, and one copy of each totals $97,002.21, which is precisely the difference between the $4,035,260.72 total of the July 29 invoice package and $3,938,258.51, the total of that same package after removal of those four exact duplicates. Kazmi Decl. ¶ 19. The Complaint's $3,998,868.46 includes three invoices that appear nowhere in the July 29 demand. Id.

Defendants do not ask the Court to determine the correct figure now. The point is narrower: a plaintiff cannot establish a fixed, assented-to account by treating a number that moves, and that its own exhibits contradict, as though it were settled.

## IV. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST FAVOR DISSOLUTION.

The harm to Plaintiff from dissolution is the ordinary position of every unsecured trade creditor: it must prosecute its claim and, if it prevails, execute on a judgment. Rules 64 and 69 exist for that. Rosen, 21 F.3d at 1530-31. The freeze preserves no identified Mansfield property; it merely disables the account KRSM uses to operate, which is not a meaningful improvement in Plaintiff's position and cannot justify the harm on the other side.

The harm to KRSM is immediate and of a different kind. The restrained account is how KRSM pays fuel suppliers, carriers, motor fuel tax remittances, payroll and payroll tax deposits, and those obligations cannot be paid while it remains frozen. Kazmi Decl. ¶¶ 13-15. The

consequence is not speculative: since August 20 payments have been returned, and a single returned payment to a principal fuel supplier was followed by that supplier suspending supply, all to secure a claim by a party that by its own pleading has not delivered fuel to KRSM since July 7. Compl. ¶ 12; Kazmi Decl. ¶¶ 13-14. A distributor that cannot pay cannot lift, and a distributor that cannot lift cannot perform.

Courts have described the consequence plainly. "It is almost a certainty that freezing the assets of an allegedly already insolvent company, pending adjudication of a lawsuit in which it is a party, would lead to the swift and complete failure of that company. Such an outcome would put the parties into an even more precarious position than they may have sought to avoid with the grant of injunctive relief initially." Oak Leaf, 812 F. Supp. 2d at 950. Defendants make no representation that KRSM is insolvent and none should be inferred. The point is that a freeze on a working disbursement account is not a conservative measure. It is the most destructive order available, and it destroys the capacity to pay that Plaintiff says it is protecting.

On the public interest, the Third Circuit has addressed this tactic directly: "the public interest is hardly served by the sheer in terrorem effect of allowing plaintiffs to impose (or even threaten to impose) burdens on defendants above and beyond those necessary to protect plaintiffs' otherwise unsatisfiable claims." Hoxworth, 903 F.2d at 198. The public interest also lies in the payment of fuel excise and payroll taxes and in the continued employment of the people who depend on this business.

## V. DEFENDANTS DEMAND AN EVIDENTIARY HEARING IF THE MOTION IS NOT DENIED AS A MATTER OF LAW.

The Court need not reach any factual question. If it does, Defendants demand an evidentiary hearing with live testimony and cross-examination, and request findings of fact and conclusions of law under Rule 52(a)(2). Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC, 793 F.3d 313, 318-19 (3d Cir. 2015); Prof'l Plan Examiners of N.J., Inc. v. Lefante, 750 F.2d 282, 288-89 (3d Cir. 1984). The demand is made expressly and on the record so that it is preserved.

## VI. THE EX PARTE RECORD DID NOT INCLUDE MATERIAL FACTS PLAINTIFF ALREADY POSSESSED.

Defendants raise this for four legal purposes and seek no sanctions and no fees by this motion.

First, Plaintiff invoked the Court's equitable jurisdiction, and equity is centrally concerned with the integrity of its own process. See Gaudiosi v. Mellon, 269 F.2d 873, 881-82 (3d Cir. 1959). A party that seeks equitable relief without notice takes on the obligations that come with the ex parte procedure it chose.

Second, the omissions explain why the ex parte procedure failed here. "The stringent restrictions imposed by . . . Rule 65 on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." Granny Goose, 415 U.S. at 438-39. The restrictions exist to prevent "ill-considered injunctions without notice." Id. at 439 n.14. Plaintiff knew KRSM was represented. Undersigned counsel had written to Plaintiff's in-house counsel two days earlier asking that all communications be directed to him, and Plaintiff's counsel wrote to that same address the morning after the freeze took effect.

Third, the omissions are why the findings made on August 20 warrant no deference now. "[B]ecause of attenuated procedure, an interlocutory order has a higher than usual chance of being wrong." Hoxworth, 903 F.2d at 197. Novatek is the local illustration.

Fourth, the omissions are a credibility predicate for the hearing Defendants have demanded. Omitted material facts are precisely the "credibility issues and factual disputes" Arrowpoint says require live testimony.

The specific omissions are these. Paragraph 49 alleges KRSM **"did not make any objections"**; **the written objection was served on Plaintiff's in-house counsel on August 17 at 2:36 p.m., two days before this suit was filed.** Paragraph 51 alleges KRSM **"did not object to paying Mansfield the balance owed"**; the objection served that afternoon states that **"[n]o**

**amount is due or owing as demanded."** Gossett Decl. ¶ 12 & Ex. 3 at 1. Neither the letters, nor the appearance of counsel, nor the two telephone calls between Mr. Kazmi and a principal of Mansfield that afternoon appears anywhere in the application. Defendants state the omissions, cite the paragraphs in which they should have appeared, and leave the matter there.

The pattern did not end with the first application. Plaintiff's second emergency motion asks that it, too, be granted "without notice to Defendants." ECF No. 16 ¶ 9. By then, Plaintiff's counsel had, by his own affirmation, emailed the case papers to Defendants' counsel on August 21. ECF No. 17. A second request for no-notice relief against parties Plaintiff knew to be represented speaks for itself.

## VII. NO RESTRAINT SHOULD RUN AGAINST SYED KAZMI.

Mr. Kazmi is named as a defendant and is subject to the Order. Plaintiff identifies no basis for prejudgment restraint of his personal assets: the contract contains no personal guaranty, Plaintiff pleads no lien or traced equitable interest in any asset of his, and the restrained account is the account used for KRSM's ordinary-course operations, not any personal account of Mr. Kazmi.

There is a more fundamental defect. Although Mr. Kazmi is named in the caption, **every one of the Complaint's six counts is expressly pleaded "Against KRSM."** Compl., Counts I-VI. The Complaint pleads no cause of action against Mr. Kazmi individually, and it alleges no guaranty by him. A plaintiff cannot demonstrate a likelihood of success on a claim it has not pleaded, and no restraint of any kind should run against Mr. Kazmi personally. Defendants will address the pleading against him separately under Rule 12.

## VIII. THE ORDER IS FATALLY OVERBROAD IN ANY EVENT, AND THE SECURITY QUESTIONS MUST BE PRESERVED.

### *A. Even where power exists, an untailored freeze cannot stand.*

Hoxworth vacated the freeze before it as "fatally overbroad." Its instructions apply directly:

> "If a court imposes a preliminary injunction encumbering a defendant's assets in order to protect a potential future money judgment, the court must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment." 903 F.2d at 197.
>
> "Harm to a defendant is a third factor to be considered, and a defendant, even an unsavory one, is harmed more than necessary by an injunction encumbering far more of its assets than are at stake in the underlying litigation." Id. at 198.

This Order encumbers an entire account without a carve-out of any kind and without any stated relationship to the claim. Even Rahman, the leading decision permitting a freeze, approved an order that prohibited transfers only "outside of the ordinary course of business," in a case alleging a $12 million fraud on the public fisc. 198 F.3d at 493. Fairview likewise permitted transactions "in the ordinary course of business." This Order is broader than the orders entered in the cases most favorable to Plaintiff. And although the mechanics of a restraint can always be narrowed, no carve-out would cure the threshold defect: Plaintiff would still hold no lien and no equitable interest in the funds being restrained. The overbreadth compounds the want of power; it does not substitute for it, and both point to dissolution.

Plaintiff's filings of August 24 sharpen both points. First, Plaintiff now tells the Court that the restrained account is in the name of a non-party entity. ECF No. 21 ¶ 4. Defendants do not accept an unsworn account of an anonymous telephone call as establishing anything. And whatever the bank's records show, Mansfield itself accepted this very account in January 2022 as the account from which it was authorized to debit KRSM's obligations, on Mansfield's own Electronic Funds Transfer Authorization form, ECF No. 16, Ex. A, pleaded that it would draft this account for payment, Compl. ¶ 19, and accepted $26,880.00 from it on July 30, 2026, Kazmi Decl. ¶¶ 11-12. But the representation about title is Plaintiff's own, and Plaintiff cannot have it both ways: it obtained and enforced an Order freezing this account as "Defendant's" account, and it now maintains that freeze while telling the Court the account belongs to a separate non-party. An injunction binds the parties, their officers and agents, and persons in active concert with them, Fed. R. Civ. P. 65(d)(2); and Plaintiff has established no basis, under Rule 65(d)(2), tracing, or any other

doctrine, for restraining the property of a separate non-party that has never been named, served, or heard. On Plaintiff's own newest submission, that is what this Order does. And the account's title changes nothing about Defendants' right to be heard: paragraph 6 of the Order restrains Defendants themselves, by name, and a party restrained by an order always has standing to seek its dissolution. Nor can any factual question about account title create equitable jurisdiction over a claim for money. The question is one of power, and it is answered before any fact about titling is reached. Whatever complexity Plaintiff's second motion introduces, this Court's authority does not expand with the difficulty of the case.

Second, Plaintiff's second motion quotes as its model the GridKor order, and the very passage it quotes approved a freeze that excepted assets "needed for the Defendants' ordinary course of business or for ordinary uses to pay household expenses." ECF No. 21 ¶ 15. The Order here contains no exception at all. Plaintiff's own chosen authority thus describes the untailored freeze Plaintiff obtained as precisely what equity does not do.

***B. The security questions must be preserved, and any bond determination revisited.***

Rule 65(c) requires security "in an amount that the court considers proper," and it is a condition of the court's authority, not a formality: "Under Rule 65(c), the absence of a bond precludes issuance of an injunction." Hope v. Warden York Cnty. Prison, 972 F.3d 310, 322 (3d Cir. 2020), quoted in Anash, Inc. v. Borough of Kingston, No. 25-1097, slip op. at 49 n.36 (3d Cir. July 30, 2026). Here the Order required the security "immediately," and Plaintiff instead invoked the restraint first: the security remained unposted through at least 3:34 p.m. on August 21, by the Fiscal Department's written confirmation, and the bond at ECF No. 12 was docketed thereafter. Gossett Decl. ¶¶ 2-6 & Exs. 1, 4, 5. Defendants do not contend that Rule 65(c) requires cash security, and they do not challenge the bond because its surety is a corporate insurer. The issues are when the security became effective, what period the undertaking covers, and whether $100,000 is adequate for any restraint that continues. The later posting does not itself resolve what, if anything, the undertaking covers during the earlier interval, and Defendants expressly preserve every right

and remedy respecting that question. See Sprint Commc'ns Co. v. CAT Commc'ns Int'l, Inc., 335 F.3d 235, 240-41 (3d Cir. 2003) (the bond fixes the applicant's exposure when it accepts preliminary relief); W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983) (the bond is ordinarily the source of recovery for an erroneous injunction).

The Third Circuit has declined to resolve closely related questions concerning the operation of injunctive relief before required security is posted. See Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904 (3d Cir. 1975) (bond posted eight days after entry; declining to decide whether pre-posting conduct violated the injunction); System Operations, Inc. v. Sci. Games Dev. Corp., 555 F.2d 1131 (3d Cir. 1977) (failure to require security an independent ground for reversal; reserving whether a stay pending posting satisfies Rule 65(c)); see also Scanvec Amiable Ltd. v. Chang, 80 F. App'x 171, 176 (3d Cir. 2003) (nonprecedential) (a restrained party may immediately argue that a TRO "would not commence until the court determined, and [the applicant] posted, adequate security"). The Court need not resolve that question now. Defendants ask only that the security at ECF No. 12 remain in full force and effect and not be released, discharged or exonerated absent further order, and that its temporal scope and coverage, together with Defendants' rights under Rules 65(c) and 65.1 concerning the period preceding its posting, be expressly reserved.

If any restraint continues, the amount of security must be fixed on a case-specific analysis. The Third Circuit requires the district court to consider the factual circumstances, the competing claims of injury, and the scope and potential economic consequences of the injunction, and to explain the basis for its bond determination. Mallet & Co. v. Lacayo, 16 F.4th 364, 391-92 (3d Cir. 2021). The $100,000 fixed at paragraph 4 was set on an ex parte record, before the Court had any account of what the restraint would do: the returned payments, the suspension of a principal supply relationship, and the ordinary-course obligations set out in the Kazmi Declaration. The determination should be revisited on the record that now exists.

**CONCLUSION**

The Court entered this Order without notice, on an ex parte record that did not include Defendants' contemporaneous written objection and related pre-suit communications, on the application of a party that implemented the restraint before satisfying the security condition the Court imposed, and in an action in which no federal court has the power to enter such an order. Defendants respectfully request that the Court deny the motion for a preliminary injunction, grant Defendants' cross-motion under Rule 65(b)(4) and dissolve the Temporary Restraining Order entered at ECF No. 10, and direct M&T Bank to release the restrained account, ending in 7805, forthwith. Defendants do not consent to any extension of the Order under Rule 65(b)(2). Defendants further request an evidentiary hearing and reserve all defenses, setoffs, recoupments and counterclaims.

Dated: August 25, 2026

Respectfully submitted,

**/s/ George S. Gossett, Jr.**
George S. Gossett, Jr., Esquire
Pa. Bar No. 82983
LAW OFFICE OF GEORGE GOSSETT, JR.
408 Green Lane, Suite 201
Philadelphia, Pennsylvania 19128
(267) 846-8963
legal@upssites.com

Counsel for Defendants KRSM Inc.
and Syed Kazmi

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

MANSFIELD OIL COMPANY
OF GAINESVILLE, INC.,

Plaintiff, Civil Action No. 2:26-cv-06072-GAM

v.

KRSM INC. and SYED KAZMI,

Defendants.

## CERTIFICATE OF SERVICE

I certify that on the date set forth below I caused a true and correct copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for a Preliminary Injunction, together with the proposed order and all supporting papers, to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and to be served by electronic mail upon:

Urs Broderick Furrer, Esquire
HARRITON & FURRER, LLP
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
UBFurrer@HFLawLLP.com
Attorneys for Plaintiff

Dated: August 25, 2026

Respectfully submitted,

**/s/ George S. Gossett, Jr.**
George S. Gossett, Jr., Esquire
Pa. Bar No. 82983
LAW OFFICE OF GEORGE GOSSETT, JR.

408 Green Lane, Suite 201
Philadelphia, Pennsylvania 19128
(267) 846-8963
legal@upssites.com

Counsel for Defendants KRSM Inc.
and Syed Kazmi