**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., | : | Civil Action No. 2:26-cv-06072-GAM |
| Plaintiff, | : | |
| v. | : | |
| KRSM INC. and SYED KAZMI, | : | |
| Defendants. | : | |

# PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (ECF NOS. 2, 16) AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION TO DISSOLVE THE TEMPORARY RESTRAINING ORDER

## PRELIMINARY STATEMENT

Stripped of its rhetoric, Defendants' 34-page opposition concedes the facts that matter. KRSM admits that, over seven weeks, it lifted approximately 150 loads of fuel (1,124,594 gallons) from Mansfield's account at the Twin Oaks Terminal. It admits that it has paid nothing for that fuel. It does not deny that when Mansfield initiated the account drafts the parties had scheduled, KRSM's bank refused them. It does not deny that in multiple telephone calls between July 27 and August 10, 2026, its President, Syed Kazmi, told Mansfield that KRSM would pay for all fuel it received. And it does not identify a single load it did not receive, a single gallon it did not lift, or a single price that deviated from the parties' agreed pricing. KRSM's "dispute" consists of a letter from "litigation counsel," served after the drafts were refused, objecting to "every invoice and every line" without disputing any of them in particular.

Defendants' legal theme is that this is an ordinary collection case governed by *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), and that the Court is powerless to preserve the status quo. That argument mistakes both the record and the law. The

restrained account is not an undifferentiated "general asset." It is the specific account KRSM itself designated to Mansfield, on Mansfield's own Electronic Funds Transfer Authorization, ECF No. 16, Ex. A, as the account from which these very obligations would be paid, and the account into which the proceeds of KRSM's resale of Mansfield's fuel have flowed. The record has now developed in a way Defendants' brief studiously avoids: M&T Bank has advised Plaintiff's counsel that the account is no longer held in KRSM's name at all, but in the name of a non-party entity, all while nearly $4 million remains unpaid. That is not a hypothetical risk of dissipation. It is asset movement in progress, and it is precisely the conduct Pennsylvania's Uniform Voidable Transactions Act, 12 Pa. C.S. § 5101 *et seq.*, and the fraudulent-transfer exception that *Grupo Mexicano* itself preserved, exists to address.

Plaintiff responds to Defendants' procedural objections directly rather than defensively. Filed with this reply are declarations of George Kounalakis and of the undersigned, each executed under penalty of perjury pursuant to 28 U.S.C. § 1746, which verify and supplement the factual record. Plaintiff also proposes, on its own initiative, that any continued restraining order be narrowed with ordinary-course carve-outs for payroll, tax remittances, and ordinary vendor payments, capped at the amount in controversy, tailoring the scope as required by *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186 (3d Cir. 1990).

In order to remove any question of pleading, Plaintiff seeks leave to amend to state a claim under Pennsylvania's Uniform Voidable Transactions Act based on the account-titling facts it has just learned, together with narrowly focused expedited discovery into what became of the account KRSM held out as its own.

Finally, Defendants accuse Plaintiff of concealment. As shown in Part III, the Complaint's allegations describe KRSM's conduct in July 2026, when KRSM raised pricing questions, saw

them resolved, and promised payment, and they are accurate as to that period. The August 10 letter from Defendants' counsel is now before the Court, as it would have been at any hearing. The letter does not show a merchant disputing an account; but rather it shows a debtor, whose bank had just refused the payment drafts its principal authorized, retaining counsel to object to everything and concede nothing. It is quite simply a litigation position, and the Court can weigh that letter for what it is. Furthermore, upon discussions between counsel, and in particular a telephone conversation of August 24, it would appear that the August 10 letter in question did not originate from Defendants' counsel, as indicated, but rather is a further fraudulent act taken by Defendants.

**ARGUMENT**

## I. GRUPO MEXICANO DOES NOT STRIP THE COURT OF POWER ON THIS RECORD.

### A. The rule of Grupo Mexicano is narrower than Defendants present it.

*Grupo Mexicano* holds that a district court may not issue a preliminary injunction freezing a defendant's assets "in an action for money damages" where the plaintiff asserts "no lien or equitable interest" in the assets restrained. 527 U.S. at 310, 333. The Court was explicit about what it was not deciding: it distinguished, and left intact, *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), where preliminary relief preserving assets was proper because the plaintiffs asserted equitable claims directed at a particular fund. 527 U.S. at 324–25. And it identified the body of law that *does* reach a debtor who moves assets to defeat creditors: "The law of fraudulent conveyances and bankruptcy was developed to prevent such conduct." *Id.* at 322. Courts across the country have accordingly held that where a plaintiff asserts equitable claims, claims to specific property, or fraudulent-transfer claims, *Grupo Mexicano* does not bar preliminary relief preserving the assets at issue. *See, e.g.*, *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002); *Rubin*

*v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1084–85 (9th Cir. 2004); *see also Gridkor, LLC v. Gorbach*, 2024 WL 4309985 (E.D. Pa. Sept. 26, 2024) (denying motion for reconsideration and confirming freezing of assets); *Allstate Ins. Co. v. Davidson Medical Grp.*, 2004 WL 2357797 (E.D. Pa. Oct. 18, 2004) (granting in part injunction against defendant's prejudgment assets); *F.T. Int'l, LTD v. Mason*, 2000 WL 1514881 (E.D. Pa. Oct. 11, 2000) (granting prejudgment motion).

The decisions of this District on which Defendants rely apply the same framework rather than a complete prohibition. *Symphony FS Ltd. v. Thompson*, No. 5:18-cv-3904, 2018 WL 6715894, at *18 (E.D. Pa. Dec. 20, 2018), identifies the governing three-part test: a cognizable equitable claim, a nexus between that claim and the specific assets targeted, and interim relief reasonably measured to preserve the status quo in aid of the equitable relief claimed. The question, then, is not whether the Court has power in the abstract; it is whether this record satisfies the test. It does, and where the record is incomplete it is incomplete solely because the relevant information sits in Defendants' and their bank's possession. The bank requires several days to respond to any request for records. Plaintiff therefore seeks expedited discovery in the instant matter.

**B. Mansfield asserts an equitable claim with a nexus to a specific, identified account — the account KRSM designated for payment of these obligations.**

i. Mansfield pleads unjust enrichment (Count II). Defendants' respond that unjust enrichment is unavailable where an express contract governs while simultaneously disputing, in writing, "every invoice and every line" of the account rendered under that contract, objecting that the Agreement states no applicable credit limit, and reserving unspecified "defenses, setoffs, recoupments and counterclaims." A defendant that contests the application and content of the writing at every point cannot at the same time invoke the writing to extinguish alternative equitable theories at the outset. Alternative pleading is proper precisely where, as Defendants' own filings demonstrate, the scope and operation of the contract are contested. Fed. R. Civ. P. 8(d)(2)– (3).

ii.. The nexus is clear. The restraint does not reach KRSM's assets generally. The Initial Restraining Order reaches one account: the M&T Bank account that KRSM identified to Mansfield on its January 2022 credit application, and that KRSM authorized Mansfield to draft for payment of its fuel purchases on Mansfield's Electronic Funds Transfer Authorization. ECF No. 16, Ex. A. Defendants themselves tell the Court that this is the account from which KRSM "pays its vendors" and from which it paid Mansfield $26,880.00 on July 30, 2026; that is, the operating account into which KRSM's fuel-sale receipts flow and out of which its fuel obligations are paid. Kazmi Decl. ¶¶ 8, 11. KRSM has in all likelihood resold the 1,124,594 gallons of fuel lifted on Mansfield's account and purportedly deposited the proceeds; it has paid Mansfield nothing on the invoices that are the subject of this matter. Kounalakis Supp. Decl. ¶¶ [4-6]. The funds targeted are therefore clearly connected to the claim: they are, on the existing record, the proceeds of the very fuel for which Mansfield has not been paid, held in the very account KRSM designated for payment. That is the "sufficient nexus between th[e] equitable claim and specific assets of the defendant" *Symphony* requires, and it is what distinguishes this case from *Novatek Corp. v. Mallet*, 324 F. Supp. 3d 560 (E.D. Pa. 2018), and *Reidenbach & Assocs., LLC v. Brown*, No. 20-1822 (E.D. Pa. May 1, 2020), where the plaintiffs pointed to no designated account, no proceeds, and no connection between the claim and the property restrained beyond the desire to be paid from it. *Cf. Fairview Mach. & Tool Co. v. Oakbrook Int'l, Inc.*, 77 F. Supp. 2d 199, 204 (D. Mass. 1999) (the unpaid Plaintiff's claim for unjust enrichment was sufficient for the court to grant a preliminary judgment against specific assets of the defendant in order to maintain the status quo).

iii. Plaintiff proposes in Part V a narrowed order, which is capped at $3,998,868.46, with carve-outs for payroll, payroll and motor-fuel tax remittances, and ordinary-course vendor payments on a reported basis. When narrowed, the restraint is "a reasonable measure to preserve

the status quo," *Symphony*, 2018 WL 6715894, at *18, not the operational strangulation Defendants describe. Defendants' own authorities approved exactly this architecture. *Fairview*, 77 F. Supp. 2d at 204 (injunction allowed for ordinary-course of business transactions to continue).

### C. The account-titling facts bring this case within the fraudulent-transfer framework Grupo Mexicano expressly preserved, and leave to amend should be granted.

On August 24, 2026, M&T Bank advised Plaintiff's counsel that the account KRSM designated to Mansfield as its own, the account bearing KRSM's name on the January 2022 credit application and on Mansfield's EFT authorization and the account from which KRSM paid Mansfield as recently as July 30, 2026, is held in the name of an entity that is not a party to this action. Furrer Decl. ¶ 3. Defendants' response is not to explain the titling; it is to attack the form of the report and to argue that the restraint must be dissolved because the account belongs to someone else. That submission should concern the Court, not reassure it. Either the account is KRSM's, in which case the restraint properly binds a party, Fed. R. Civ. P. 65(d)(2)(A), or KRSM's designated payment account has been placed in, or moved to, the name of an unrelated third party while KRSM's $3,998,868.46 obligation to Mansfield goes unpaid. On the latter account of the facts, Defendants have described a transfer of these assets.

Pennsylvania's Uniform Voidable Transactions Act reaches transfers "made . . . with actual intent to hinder, delay or defraud any creditor," 12 Pa. C.S. § 5104(a)(1), and identifies as evidence of such intent, among others, transfer to an insider, concealment, transfer after the debtor was sued or threatened with suit, transfer of substantially all assets, and insolvency. *Id.* § 5104(b). It then authorizes precisely the remedy sought here: "an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." *Id.* § 5107(a)(3)(i); *see Klein v. Weidner*, 729 F.3d 280, 291–92 (3d Cir. 2013) (construing § 5107(a)(3)'s remedial

grant broadly). This is the statutory authorization *Grupo Mexicano* found wanting in a general equity claim, now supplied by the legislature. 527 U.S. at 322, 330–31.

Defendants respond that no PUVTA count is pleaded. Plaintiff's motion invoked §5107 from the outset, ECF No. 2 ¶ 19, and the facts supporting a PUVTA claim, the titling of the designated payment account in a non-party's name, came to light on August 24, five days after filing. Plaintiff may amend its pleading as a matter of course within the 21 day period following service of the complaint. Fed. R. Civ. P. 15(a)(1)(A). Alternately, Plaintiff requests leave to amend under Fed. R. Civ. P. 15(a)(2) to plead a PUVTA count against KRSM and the account's record holder, within seven days. Leave is to be "freely give", and no conceivable prejudice attends amendment in a case six days old, before any responsive pleading has been filed. Where amendment will place the claim before the Court within days, the logical course is not to dissolve the restraint, release the funds, and hope they remain, but rather it is to preserve the status quo for the short interval that such an amendment would require.

**D. At minimum, the Court should preserve the status quo pending expedited discovery.**

If the Court concludes that the present record leaves the nexus or the account-titling facts insufficiently developed, the remedy that the record supports is further development of the record, not dissolution on the restraining order. In such a scenario, Plaintiff requests expedited discovery on a schedule directed by the Court mandating: (i) production by M&T Bank account signature cards, account titling history, and statements for the account from January 1, 2026 to present; (ii) production by KRSM of records of transfers from the account since May 21, 2026 to present, which is the first lifting date; and (iii) short depositions of Mr. Kazmi and a records custodian of the bank. Every fact Defendants say is missing (tracing, titling, transfers)— is a fact within their control or their bank's control. A party resisting a freeze on the ground that the movant cannot

trace funds, while resisting disclosure of the records that would trace them, is not invoking *Grupo Mexicano*. It is hiding behind it.

## II. THE RULE 65(b) OBJECTIONS ARE CURED OR MOOT, AND THEY ARE NOT A DEFENSE TO PRELIMINARY RELIEF ENTERED AFTER NOTICE AND A HEARING.

Defendants devote much of their brief to the ex parte procedure. But the posture has changed; Defendants have appeared, served a comprehensive opposition and cross-motion, and will be heard on August 27, 2026, which is within the fourteen-day life of the TRO, see, Fed. R. Civ. P. 65(b)(2), so no extension is required for the Court to hear and decide the motion. The stringency of Rule 65(b) exists to protect parties from restraint *without* notice and hearing. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 438–39 (1974). The question now before the Court, whether a preliminary injunction should issue, will be decided on full adversarial briefing and a hearing at which Defendants will be heard. Any alleged defects of the ex parte application do not immunize a defendant from preliminary relief granted on notice.

Filed herewith are the Supplemental Declaration of George Kounalakis and the Declaration of Urs Broderick Furrer, each made under penalty of perjury pursuant to 28 U.S.C. § 1746. Mr. Kounalakis's declaration adopts and verifies, under penalty of perjury, the factual statements in his August 18, 2026 affidavit and in the Complaint, and supplements them. Whatever force the formal objection to the original papers carried, it is now an objection to a record that no longer exists. The preliminary injunction motion will be decided on sworn evidence.

The Court fixed security at $100,000; the bond was posted and docketed on August 21, 2026. ECF No. 12. Defendants' argument reduces to a gap measured in hours between the Order's entry and the bond's docketing. The Third Circuit has not treated a short delay in posting as dissolving an injunction; in *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 906 (3d Cir.

1975), security posted eight days after entry did not void the validity of the injunction in the interim, and the court reserved only the question whether conduct in the interval could be sanctioned. Defendants say they merely "preserve"; however the bond is in place now and secures any restraint going forward. Plaintiff does not oppose the Court revisiting the amount of security on the present record under *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391–92 (3d Cir. 2021), and is prepared to post such additional security as the Court deems proper. Fed. R. Civ. P. 65(c).

Personal service was affected on August 21, 2026, as reflected in the returns at ECF Nos. 14–15. 18–20, and 28 and 29, and the full papers were emailed to Defendants' counsel the same day, ECF No. 17. Defendants appeared and have briefed every issue in the case at length and they identify no respect in which they were hindered in responding. Their Rule 12(b)(4)–(5) objections are preserved for motion practice where they belong; they are no basis to dissolve interim relief.

## III. THE COMPLAINT'S ALLEGATIONS ARE ACCURATE AS TO THE PERIOD THEY DESCRIBE, AND THE AUGUST 10 LETTER DOES NOT CHANGE THE ANALYSIS.

Defendants build a narrative of concealment based upon paragraphs 49 and 51 of the Complaint. Read in sequence, those paragraphs describe the July 2026 invoice-reconciliation period: Mansfield sent invoices on July 8; the parties discussed pricing discrepancies; Mansfield sent revised invoices on July 17 and advised it would draft the account beginning July 27. Compl. ¶¶ 45–51. In that period, KRSM did not object to the revised invoices or to payment; to the contrary, when the drafts were refused on July 28, Mr. Kazmi told Mansfield in multiple calls between July 27 and August 10 that KRSM would pay for all fuel it received. Kounalakis Supp. Decl. ¶ 5. The August 10 letter came later and from a different person, "litigation counsel," writing after the drafts had been refused and after weeks of unfulfilled assurances. Plaintiff does not

contend the letter does not exist; it is before the Court, and Plaintiff addresses it on the merits below.

The letter is not a genuine dispute of the account. It objects to "every invoice and every line" and asserts that "[n]o amount is due", for 1,124,594 gallons of fuel KRSM admits lifting and admits not paying for. A blanket objection interposed by counsel on the eve of suit, after the debtor's principal has repeatedly acknowledged the obligation and after the debtor's bank has refused the agreed drafts, is a litigation position. It is not the kind of contemporaneous, particularized dispute that defeated assent in *Zimmer Dev. Co., LLC v. TVC Dev. Co., LLC*, 2022 U.S. Dist. LEXIS 114776 (E.D. Pa. June 28, 2022)., where the debtor challenged specific charges during the account relationship itself. The jury will weigh Mr. Kazmi's July and August assurances against his "counsel's" August 10 letter; for present purposes it is enough that the letter identifies no delivery not received and no price not agreed.

Further, the source of the August 10 letter has been called into serious question, as a result of subsequent conversation between counsel, and should be ignored for being fraudulent.

As for the invoice totals: the underlying deliveries, the loads, the gallons, and the per-gallon pricing, have never moved. The differences among the figures Defendants tabulate are mathematical updates of the demand package and the reconciliation process, not shifting claims: The "Four Figures" argument relied on by Defendant is clearly refuted by the Reconciliation Table (Furrer Decl. Exhibit 1). Clerical errors in the assembly of a demand package is regrettable; however it is not a merit based defense to payment obligations for fuel concededly received, and it is fully explained in the reconciliation exhibit submitted herewith. Furrer Decl. Ex. 11.

## IV. PLAINTIFF SATISFIES THE PRELIMINARY INJUNCTION FACTORS.

**A. Likelihood of success.** The gateway showing, *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), is a reasonable probability of success, not certainty. "A movant must demonstrate that it can win on the merits, (which requires a showing significantly better than negligible, but not necessarily more likely than not)." (*Reilly v. City of Harrisburg*). Regarding the unjust enrichment claim, the material facts are admitted: Defendants lifted approximately $4 million worth of fuel product that they did not pay for. Defendants' opposition, for all its length, never asserts that KRSM paid, that it did not receive the fuel, or the benefits of the fuel. A defense that consists of a reservation of unspecified defenses is not a defense; it is a placeholder.

**B. Irreparable harm.** Plaintiff does not rest on the proposition that an unpaid debt is itself irreparable harm; the Third Circuit bars that. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). The irreparable harm here is the harm the PUVTA addresses: the placement of the designated payment account beyond the reach of the creditor to whom it was pledged as the payment source. The relevant facts are of record and largely of Defendants' own making: (i) the account KRSM represented as its own is now, per its bank, is titled to a non-party; (ii) KRSM's New Jersey charter was revoked in February 2023 and it is not authorized to do business in Pennsylvania, which means it is an entity with no corporate standing in either state where it operates, ECF No. 2 ¶¶ 4–5; (iii) by its own description, the account disburses to fuel stations "that share some common ownership with KRSM," Kounalakis Aff. ¶ 7. Where the claimant asserts an interest in the specific assets being moved, their dissipation will render ultimate recovery of those assets impossible and is irreparable injury. *Cf. Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 140–41 (3d Cir. 2000).

**C. Balance of equities and the public interest.** With the carve-outs Plaintiff proposes, KRSM can meet payroll, remit taxes, and pay ordinary vendors; what KRSM cannot do

is disburse the proceeds of Mansfield's fuel to affiliates while this matter is pending. Defendants' account of operational devastation, not raised for four days after the Court's TRO was entered, is an argument against the order as entered, not against the narrow order as Plaintiff proposes. The narrowing answers *Hoxworth*'s instruction that restraint be proportioned to the claim. 903 F.2d at 197–98. The public interest is not served by permitting an entity with no corporate standing to liquidate its designated payment account into the hands of affiliated non-parties while the obligation of approximately$4 million of admittedly received product goes unpaid.

## V. THE APPROPRIATE ORDER: NARROWED RESTRAINT, PROMPT AMENDMENT, EXPEDITED DISCOVERY.

Plaintiff proposes the following, reflected in the accompanying proposed order: (1) the restraint continues, but is capped at $3,998,868.46 and modified to permit (a) payroll and payroll-tax obligations, (b) motor-fuel and sales-tax remittances, and (c) ordinary-course vendor payments to non-affiliated entities up to $1,000.00 per week, in each case on five business days' notice to Plaintiff's counsel with supporting documentation; (2) Plaintiff files its amended complaint adding a PUVTA count within fourteen days; (3) the expedited discovery described above in Part I(D) proceeds on the schedule the Court directs; (4) security is fixed at such amount as the Court deems proper on the present record, which Plaintiff will promptly post; and (5) the hearing on August 27, 2026 proceeds as scheduled, with Plaintiff's second motion (ECF No. 16) heard on notice at the same time. Plaintiff withdraws the request in ECF No. 16 that relief be considered without notice, and clarifies that it seeks no relief against any non-party account holder except upon notice to that entity and a proper showing under Rule 65(d)(2) or the PUVTA, informed by the expedited discovery.

There are two points of clarification to be made in response to Part VII of Defendants' memorandum. The existing Order restrains the KRSM account; it does not restrain and Plaintiff

has not sought to restrain, any personal asset of Mr. Kazmi, and the proposed order so provides pending further proceedings. Plaintiff will respond to any Rule 12 motion directed at the pleading against Mr. Kazmi in the ordinary course.

**CONCLUSION**

KRSM took delivery of 1,124,594 gallons of fuel, with an obligation to pay for it, and has paid nothing, and the account it designated for payment now stands, according to its bank, in a non-party's name. The Court should 1) deny the cross-motion to dissolve; 2) continue the restraint as narrowed, through the August 27 hearing, and thereafter as a preliminary injunction; 3) grant leave to Plaintiff to amend the complaint to add a claim under 12 Pa. C.S. § 5101 *et seq.*, order the expedited discovery described above; and 4) fix security in such amount as the Court deems proper. In the alternative, if the Court concludes that preliminary relief cannot issue on the current pleading, Plaintiff respectfully requests denial without prejudice, pending a renewal of the relief upon filing of the amended complaint, with a brief preservation of the status quo, on full security, while that amendment is made.

Dated: Danbury, Connecticut
August 26, 2026

HARRITON & FURRER, LLP

/s/ Urs Broderick Furrer
URS BRODERICK FURRER, ESQ.
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., | : | Civil Action No. 2:26-cv-06072-GAM |
| Plaintiff, | : | |
| v. | : | |
| KRSM INC. and SYED KAZMI, | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

I certify that on August 26, 2026, I caused a true and correct copy of the foregoing Reply Memorandum, together with all supporting declarations, exhibits, and the proposed order, to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and to be served by electronic mail upon George S. Gossett, Jr., Esquire, Law Office of George Gossett, Jr., 408 Green Lane, Suite 201, Philadelphia, Pennsylvania 19128, legal@upssites.com; and Paul J Toner, Esq., Toner Law Group PLLC, One Penn Square West, 30 S 15th Street, Suite 1601, Philadelphia, PA 19102, paul@tonerlaw.com, counsel for Defendants.

Dated: Danbury, Connecticut
August 26, 2026

HARRITON & FURRER, LLP

/s/ Urs Broderick Furrer
URS BRODERICK FURRER, ESQ.
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832