**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : | Civil Action No. 2:26-cv-06072-GAM |
| v. | : | |
| KRSM INC. and SYED KAZMI, Defendants. | : | |

**PLAINTIFF MANSFIELD OIL COMPANY OF GAINESVILLE, INC.'S BRIEF IN SUPPORT OF MOTION FOR LEAVE TO CONDUCT DISCOVERY**

## I. INTRODUCTION

Plaintiff, Mansfield Oil Company of Gainesville, Inc. ("Plaintiff" or "Mansfield"), hereby moves pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure for an order permitting the parties to conduct discovery immediately. The Court's Guidelines for Counsel provide: "Parties should begin discovery as soon as permitted under the relevant Rules, without waiting for the Rule 16 Conference to be held." *Guidelines for Counsel*, (McHugh, J.), https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/mchpol.pdf (last visited Sept. 3, 2026).[1]

[1] On September 2, 2026, Plaintiff's counsel requested Defendants' counsel to meet and confer and consent to this Court permitting Plaintiff to commence discovery, prior to having to file this Motion. Plaintiff requested a response by noon, September 3, 2026, in an effort to avert having to file this Motion. *See* Ex. "A" hereto (correspondence from Plaintiff's counsel to Defendants' counsel). Defendants have not responded. As further explained below, given the need to proceed expeditiously, including the revelation about who now owns the M&T Bank account, as well as the need to trace the fuel shipments downstream and resale proceeds that were moving in and out of the M&T Bank account, Plaintiff has filed this Motion at this time to seek prompt relief permitting discovery without further delays and evasion by Defendants.

To the extent Rule 26(d)(1) normally delays discovery -- in the absence of a Court Order -- until *after* a Rule 26(f) conference among counsel, Mansfield hereby requests entry of such an Order permitting it to commence discovery now. There is reasonable and good cause justifying prompt discovery under the circumstance here. This includes Defendants' prior record statements that this dispute can and should be resolved based on an "accounting" for a "very discrete six-week period." (Transcript, p. 8, lines 19-23, of 8/27/2026 hearing on preliminary injunction) (statement of Defendants' counsel). At this stage, discovery can be tailored to conduct such an "accounting" and the attendant tracing of Mansfield's fuel that Defendants' lifted from the Twin Oaks terminal.

This includes Mansfield's need to (i) immediately identify and trace the movement and resale of that fuel and the proceeds that Defendants' further distributed to itself, to related and/or unrelated third parties, and whether Defendants received payments; and (ii) determine what they did with the proceeds, including what Defendants deposited into the M&T Bank account (or any other bank) and otherwise transferred out of the account to other recipients. As set forth in the pending motion for contempt of this Court's August 27, 2026 Order, Plaintiff's M&T Bank account is now underfunded by approximately ***$2.25 million***, while KRSM financial statements admitted into the record on August 27 represented KRSM had over $30,000.00 in cash assets. Ex. "B" hereto (Ex. "3" at 8/27/2026 hearing).

Such an accounting through prompt discovery relates directly to one of the critical documents in the case, *i.e.* the M&T Bank "EFT" authorization agreement. Ex. "C" hereto (Ex. "4" at the 8/27/2026 hearing (also Ex. "A" to ECF No. 16)). Therein, KRSM, which the EFT agreement identifies and defines as "Customer", expressly agreed to give Plaintiff rights *in this*

*specific "Customer's [KRSM] checking account"*, including the right to withdraw therefrom to pay unpaid invoices. *Id.* (emphasis added). Also, in this EFT agreement, "Customer [KRSM] further agrees to *maintain its checking account with sufficient sums therein to cover the payments herein authorized*." *Id*. (emphasis added). The revelation that the account is now owned by "Universal" also raises serious concerns that funds are being dissipated while KRSM fails to maintain the $2.75 million amount Ordered by the Court.[2]

## II. FACTUAL BACKGROUND

The Court is aware of the background facts of this dispute based on the August 27, 2026 hearing, after which the Court entered the preliminary injunction. Therefore, Plaintiff will not repeat all of them here for purposes of the instant Motion. Rather, Plaintiff incorporates the evidence and testimony presented to the Court at the August 27, 2026 hearing, which has been transcribed. In summary, on August 27, 2026, the Court conducted an evidentiary hearing and vacated its original TRO that imposed a blanket freeze on the M&T Bank account – the same account that Defendants represented (in the parties' applicable contract) as being the account owned by *KRSM* (*i.e.* the "Customer" named in the contract).

In place of the original TRO, the Court entered a measured remedy – carefully tailored to the evidence and testimony presented over several hours – ordering Defendants to maintain a minimum of $2.75 million in the M&T Bank account, the specific account that Defendants

[2] After the original TRO was entered, and as a result thereof, Plaintiff learned from M&T Bank that, contrary to Defendants' express representations in the EFT agreement that the account belongs to KRSM (the "Customer"), the M&T Bank account *now belongs to some different Kazmi-related entity named "Universal"*. This revelation raises serious concerns that Defendants have been moving ownership of the account and funds in this M&T Bank account to Kazmi-related entities *other than KRSM*, which the EFT agreement declared was the original owner of the account. At the hearing, Syed Kazmi claimed ignorance of many details of many facts, including his ownership of Universal. (Transcript, p. 89-91).

contractually designated to pay Mansfield for nearly $4 million in fuel that Defendants admit receiving but not paying for after instructing M&T Bank to refuse payment. The next day, on August 28, 2026, the Court memorialized this August 27th ruling in a written Order. (ECF No. 35). Defendants are already in contempt of this Order; M&T Bank advises that only $589,523.68 is in the account. A motion for contempt was filed September 1, 2026 and is pending. ECF No. 37.

In light of the recent discovery that the M&T Bank account contains substantially less than the $2.75 million Ordered by the Court (*i.e.* the account contains only $589,523.68) in violation of the Court's Order, and given the discovery that the M&T Bank account is ***not*** now in the name of KRSM, Plaintiff seeks to immediately pursue tailored discovery that Defendants are intent on delaying and thereby obstructing Defendants ability to obtain evidence before it continues to morph and potentially disappear or be altered, in order to trace the fuel product that Defendants took, as well as the funds Defendants received for it from third parties or related party transactions. Again, Defendants' misconduct to date and their delays in proceeding to discovery, justifies permitting Plaintiff to immediately issue such discovery.

By way of example, Mansfield will seek discovery concerning:

- Retail fuel stations where Mansfield's fuel was delivered;
- Motor carriers that hauled substantial portions of the Mansfield fuel from the Twin Oaks terminal to retail locations;
- Banking institutions to determine, *inter alia*, the ownership, funding, control, and disposition of Defendants and Defendants-related banking accounts;
- Entities under common ownership or control of KRSM to determine whether they received, resold, or paid for Mansfield fuel, and whether they received transfers from, or hold funds on behalf of, KRSM;
- Other third-parties to determine the ownership and control of entities that received Mansfield fuel or funds from KRSM; and

- Entities receiving Mansfield's fuel at their retail locations to determine if they were invoiced for such fuel; and if so, in what amount and to whom did they remit payments, including to which account they remitted payments as well as the method of such payment, and where did the money move after it was received by KRSM.

There is a present and imminent risk of loss of this evidence, and further conveyances and transfers of the proceeds that need to be traced to the fuel Defendants lifted from the Twin Oaks terminal on Mansfield's account. Defendant Kazmi's wholly incredible testimony feigning ignorance of his own company's finances, including its financial statements and assets, raises serious further concerns of ongoing evasion and obstruction. This is especially heightened given the related party status of the ultimate recipients of the fuel, and the fact that the trucking companies were under Defendants' direction and control. The preservation of relevant records and other evidence is clearly at risk in these circumstances.

In the ordinary course of business, when Mansfield's fuel was lifted by Defendants and delivered to retail locations, the retailer would have paid KRSM for such fuel and KRSM would have paid Mansfield. Even if KRSM *genuinely* disputed Mansfield's invoices, as it continued to claim at the hearing nearly *6 weeks after receiving the Mansfield invoices*, KRSM should have a minimum of approximately $3.998 million in its bank account. If KRSM did not invoice its customers for Mansfield's fuel, then those customers should be able to remit payment to KRSM's bank account upon receipt of the applicable invoices. Until Plaintiff can conduct this targeted discovery, the "accounting" is not possible to verify by tracing where the fuel was delivered, if and what proceeds were received from its resale, the related party status of the recipients of Mansfield's fuel, and where the proceeds were deposited.

At the preliminary injunction hearing, Syed Kazmi admitted that, as President of KRSM, he executed the Electronic Funds Transfer (EFT) Authorization Agreement. (Transcript, p. 85). The January 25, 2022, EFT Authorization explicitly identified ***KRSM*** as the "customer", and

authorized Mansfield "to initiate debit and/or credit entries to ***[KRSM's]*** checking account indicated below and does further authorize the depository institution (Bank) named below to debit and/or credit such entries to [***KRSM's***] account." Ex. "C" hereto (EFT Authorization). Again, Mansfield has learned from M&T bank that that account now belongs to some other entity, "Universal", which is an entity related to and controlled by Kazmi.

It is troubling that during the August 27, 2026 preliminary injunction hearing, KRSM's President, Syed Kazmi, pretended to know little about the M&T Bank account. Incredibly, Kazmi claimed he did not know or "recall", among other things: (i) whether KRSM had an M&T bank account; (ii) the name the account is maintained under; (iii) the last time he looked at the account; or (iv) how much money was in the account. (Transcript , p. 86).

KRSM also represented to Mansfield in its December 2023 Consolidated Financial Statement that it maintained assets of ***$30,900,730.00 in cash***, total current assets of ***$48,044,958.00***, and total assets of ***$59,306,958.00***. Ex. "B". Yet, incredibly, Syed Kazmi feigned he did not recall if he had ever seen the document before (Transcript, p. 92), and did not recall if the figures represented in the company's balance sheet were accurate, despite Kazmi being the President of KRSM. *Id.* at 98.

Defendants' demonstrated lack of credibility, which was on full display in the August 27 preliminary injunction hearing, raises more concerns and need for immediate discovery, without the delays Defendants will impose by exploiting the timing otherwise set forth in Rule 26(d)(1).

## III. <u>ARGUMENT</u>

Under Fed.R.Civ. P. 26(d)(1), *unless permitted by Order of the Court* (or by some other exemption not applicable here), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)[.]" Fed. R. Civ. P. 26(d)(1). Notwithstanding

this, however, district courts have broad discretion to manage the discovery process, and can expedite or otherwise alter the timing and sequence of discovery. *Canal St. Films v. Does 1-22*, No. 1:13-CV-0999, 2013 WL 1775063, at *2 (M.D. Pa. Apr. 25, 2013). In the Third Circuit, district courts routinely apply a good cause or reasonableness standard, which requires the moving party to show that there is good cause for the court to permit expedited discovery because the request is reasonable in light of the circumstances. *See id.* (applying good cause or reasonableness standard).

Pursuant to that standard, when ruling on a motion for immediate discovery, courts consider the "entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances. Good cause is usually found where the plaintiff's need for expedited discovery, in consideration of the administration of justice, outweighs the possible prejudice or hardship to the defendant." *Strike 3 Holdings, LLC v. Doe*, No. 3:24-CV-1642, 2024 WL 4900017, at *2 (M.D. Pa. Nov. 26, 2024) (quotations and citations omitted) (granting motion for discovery). Courts thus review the "actual circumstances of [a] case, as well as . . . certain factors such as . . . the need for discovery, and the breadth of the moving party's discovery requests." *Id.* at *3 (quotations and citations omitted).

Additionally, a party need not be pursuing a preliminary injunction to support immediate discovery. *Cf. Malibu Media, LLC v. Doe*, No. 1:18-CV-0371, 2018 WL 1084234, at *3 (M.D. Pa. Feb. 28, 2018) (granting discovery request where no motion for preliminary injunction pending); *Fonovisa, Inc. v. Does 1-9*, No. CIV. A. 07-1515, 2008 WL 919701, at *10 (W.D. Pa. Apr. 3, 2008) ("None of the cases cited by the parties or reviewed by the Court hold that expedited discovery under Rule 26(d) can only be granted in situations where the plaintiff has requested a preliminary injunction.").

Applying the law here, good cause exists for the Court to order limited, immediate discovery. This action involves claims for, *inter alia*, unjust enrichment whereby Defendants admit to lifting approximately 1.12 million gallons of Mansfield fuel and not paying for it. Despite Defendants' obstruction and subterfuge, Mansfield's own due diligence has allowed it to potentially identify and obtain discovery related to where KRSM re-sold that fuel, and thus what funds should have been or will be deposited into the M&T Bank account. Targeted discovery will also permit Mansfield to seek highly relevant information concerning the M&T Bank account, its transactions, and Defendants' ongoing concealed efforts to avoid paying for Mansfield's fuel, including third-parties acting in concert with them.

Moreover, in light of Defendants' lack of knowledge of KRSM's own financials and banking information, the administration of justice favors this discovery. KRSM has no justification to retain the benefits of the transactions it conducted with Mansfield without paying for them, at least in the amount of $2.75 million as set forth in the Court's August 28, 2026, Order. ECF No. 35. The requested order will not prejudice Defendants in any way.

Accordingly, good cause exists to support limited, immediate discovery in this action. *See Bloom Golf Partners LLC v. Ridgeway*, No. 4:25-CV-02470, 2026 WL 27575, at *4 (M.D. Pa. Jan. 5, 2026) (granting motion for discovery).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff Mansfield Oil Company of Gainesville, Inc. respectfully requests that the Court grant this Motion, and enter the accompanying proposed Order.

Respectfully submitted,

Dated: September 3, 2026

HARRITON & FURRER, LLP

*/s/ Urs Broderick Furrer*
URS BRODERICK FURRER, ESQ.
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI
KYLE M. ELLIOTT
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215.977.1000 (phone)
FPSantarelli@elliottgreenleaf.com
kme@elliottgreenleaf.com

*Counsel for Plaintiff Mansfield Oil Company of Gainesville, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record *via* the Court's electronic filing system.

*/s/ Urs Broderick Furrer*
URS BRODERICK FURRER, ESQ.

Dated: September 3, 2026