**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : Civil Action No. 2:26-cv-06072-GAM |
| v. | : |
| KRSM INC. and SYED KAZMI, Defendants | : |

**JOINT RULE 26(f) REPORT AND CASE MANAGEMENT PLAN**

Pursuant to Federal Rule of Civil Procedure 26(f) and the Court's Order of September 3, 2026, ECF No. 41, and after having conferred among counsel as required by Rule 26(f), Plaintiff Mansfield Oil Company of Gainesville, Inc. ("Plaintiff" or "Mansfield") and Defendant KRSM Inc. submit this report and proposed discovery schedule for the Court's consideration.

## I. NATURE OF THE CASE

For the purpose of this Rule 26(f) Report, the Parties have each summarized and stated what they respectively believe are the salient facts of this case, while expressly acknowledging that each party disagrees with and objects to the other's characterization of what constitutes the facts of this case. Neither of the following parties' summaries of the facts should be construed by the other or the Court as an admission to any fact set forth below.

### A. Plaintiff's Statement of The Case.

Mansfield is a distributor engaged in the marketing and distribution of petroleum products, including in the Commonwealth of Pennsylvania. On January 25, 2022, Defendant Syed Kazmi, President of Defendant KRSM, executed a Commercial Credit Application (Ex. "1"), and Electronic Funds (EFT) Authorization Agreement with Mansfield. (Ex. "2".) The EFT Authorization specifically identified KRSM as the "customer", and authorized Mansfield to debit

or credit entries to KRSM's checking account at M&T Bank. The EFT Authorization also required KRSM to maintain in its checking account sufficient sums to cover unpaid invoices.

In May 2026, Syed Kazmi, on behalf of KRSM, requested to purchase petroleum products from Mansfield at the Sunoco LP / Energy Transfer fuel supply terminal at the Aston, Twin Oaks location for resale to its customers and for sale at its own stations. Between May 21, 2026, and July 7, 2026, Defendants lifted approximately 1,124,594 gallons of Mansfield's fuel valued at approximately $3,998,868.46. Mansfield provided Defendants invoices for the fuel in July 2026. Thereafter, on July 27, 2026, and July 28, 2026, Mansfield submitted draft requests from KRSM's M&T Bank account that KRSM specifically designated for that purpose. Unknown to Mansfield at the time, Defendants had already directed M&T Bank to refuse any draws from Mansfield on the account.

As part of its ordinary course of business, KRSM directs its fuel carriers to create load orders specifying the fuel grade, precise volume, and delivery destination of its orders. For example, KRSM used MR3 Logistics, Inc., and Windson Trucking, LLC as fuel carriers to lift fuel it purchased from Mansfield between May 21, 2026, and July 7, 2026. During that time period, KRSM directed both MR3, and Windson to fill loads from the Twin Oaks Terminal on Manfield's account.

The trucking companies, acting under the direction of KRSM and Defendant Kazmi, took the fuel and then delivered it to various locations (to be identified in discovery), including third party retailers of the fuel and others, some who are affiliated with or under common ownership or control of KRMS and/or Syed Kazmi (and/or his brother Shamikh Kazmi). As set forth in Plaintiff's recently-filed Motion for Discovery filed September 3, 2026 (ECF 40), the tracing of the fuel from the point it was taken from the terminal to the ultimate parties who sold and received

proceeds therefrom, and the receipt and transfer of such proceeds by Defendants – all which was done without paying Mansfield for any of the product valued at approximately $4,000,000 -- will be further shown and proven through discovery. Defendants through its trucking carriers continued drawing Mansfield's fuel from the terminal for approximately six weeks without paying anything, knowing that they were millions of dollars above and beyond their authorized credit of $150,000.00, and knowing they were not paying and had not received invoices for the fuel. Defendants continued this course until Mansfield ultimately caught on to what was happening and sought payment.

At the August 27, 2026, preliminary injunction hearing, Defendants admitted to not paying anything for the fuel. Defendants knew their credit authorization was premised upon their own representations in KRSM's December 2023 Consolidated Financial Statement which was admitted into evidence at the August 27, 2026 hearing, and which had represented KRSM's cash assets as $30,900,730.00. (Ex. "3".) Mansfield thus initiated this lawsuit on August 19, 2026, and the Court conducted an evidentiary hearing on August 27, 2026, after which it entered the preliminary injunction in favor of Mansfield and against Defendants.

After the hearing, it was learned that, as of September 1, 2026, KRSM's M&T Bank account was only $589,513.68. The Court's injunction required that the M&T account maintain a minimum of $2.75 million. Mansfield has also learned that the account is now in the name of a wholly different entity owned or affiliated with the Kazmi brothers – "Universal". Kazmi-affiliated entities using the name "Universal" are also subject to judgment in other federal courts, including in New Jersey for having taken fuel without payment from another fuel distributor. ECF 35.

Despite Syed Kazmi admitting under oath that at least $3 million of the Mansfield invoices are undisputed by KRSM, Defendants have still paid nothing. Defendants have no legitimate excuses or defenses to refusing to pay anything whatsoever for the product it took from the terminal and have since resold and kept all of the proceeds therefrom.

**B. Defendants' Statement of The Case.**

From the perspective of the Defendants, the question this case presents is a narrow one: what is the correct amount, if any, that KRSM Inc. owes for fuel lifted during the Disputed Period. Answering it requires the pricing methodology, the invoices and their revisions, the terminal lifting records, the credits, and the ledger for the account. Those records are Plaintiff's. Defendants ask that discovery begin with them.

Plaintiff's Complaint and pending motions ask for something different. They seek leave to pursue retail stations, motor carriers, banking institutions, entities said to be under common ownership or control, and the destination of money after it left KRSM. ECF No. 40-2 at 4. No claim in the Complaint relates to those inquiries. By way of example, Mansfield pleads that it "was the lawful owner of the fuel until it was obtained by, or on behalf of, Defendant at the Twin Oaks terminal." Compl. ¶55. As a matter of law, title passed on delivery, 13 Pa. C.S. § 2401(2), and nothing in the parties' agreement reserved a security interest in the goods or their proceeds. What KRSM did with fuel it owned is not an element of any count. What is before the Court is an accounting of the amount, if any, due for the fuel lifted, on a calculation that reflects Mansfield's own invoicing process and the acknowledged errors in it. That accounting will need to take into account significant variables, including market price movement between the time fuel was lifted and the time Mansfield invoiced for it.

Defendants do not agree with many of Plaintiff's factual and legal arguments. In particular, Defendants dispute the: (a) characterizations of the Electronic Funds Transfer authorization or the Commercial Credit Application, including the proposition that any account is held in a particular name, are not agreed, because those documents are exhibits to the Complaint and speak for themselves, Fed. R. Civ. P. 10(c), and Defendants take no position in this report on the name on any account; (b) statements that Defendants directed any bank to refuse any request are not agreed; (c) statements concerning load orders, delivery destinations, carrier practices, or the identity of any motor carrier are not agreed and are outside the scope of merits discovery for the reasons stated in Part III.B, the destination of fuel after title passed at the terminal not being an element of any count pleaded; (d) figures drawn from any financial statement of Defendants, and the current balance of any account, are not agreed, Defendants not placing their financial condition in issue, and the balance figure being the contested fact of Plaintiff's pending motion at ECF No. 37 on which Defendants' response is not yet due; and (e) statements attributing conduct to "Defendants" collectively are not agreed, Mr. Kazmi having moved to dismiss the Complaint as to him.

## II. <u>INITIAL DISCLOSURES</u>

Pursuant to Federal Rule of Civil Procedure 26(f)(3)(A), Plaintiff proposes that initial disclosures required by Rule 26(a)(1) be served no later than September 14, 2026. At the August 27, 2026, hearing, Mansfield also disclosed Michael Mansfield, Jr., Chief Operating Officer, and George Kounalakis, Vice President of Sales, each of whom provided substantial information identifying evidence and witnesses. Plaintiff requests there be no further delays by Defendants in disclosures, particularly inasmuch as Syed Kazmi purported to "not know" basic information while testifying, and prompt disclosure is therefore requested. Plaintiff's position is that prompt early disclosure will not prejudice Defendants, inasmuch as the parties have gone through the

preliminary injunction hearing and should be in a sufficient position to know the identity of witnesses and documents that are relevant to the case.

Defendants propose that the parties exchange Rule 26(a)(1) initial disclosures at or within fourteen days after the Rule 26(f) conference, which is the time Rule 26(a)(1)(C) sets unless a different time is stipulated or ordered. Plaintiff's proposed date of September 14, 2026 would shorten the period the Rule supplies.

## III. PROPOSED DISCOVERY PLAN

### A. The Parties Joint Proposed Case Management Deadlines.

The parties agree to the following schedule and deadlines, which would result in this case having a final pre-trial conference in less than a year from the date filed:

| Case Management Activity | Deadline |
|---|---|
| Fact Discovery | January 4, 2027 |
| Affirmative Expert Reports | February 1, 2027 |
| Responsive Expert Reports | March 1, 2027 |
| Supplemental Expert Reports | March 22, 2027 |
| Expert Discovery Deadline | April 19, 2027 |
| Dispositive Motions | May 10, 2027 |
| Final Pretrial Conference | August 2, 2027 |

### B. Plaintiff's Position.

Consistent with the Court's Guidelines for Counsel, Plaintiff intends to conduct discovery now, as expressly permitted and in accordance with the Federal Rules. Plaintiff submits that there is no reason to further delay or protract discovery through any proposed "staging" or truncations that Defendants may seek to impose on this case. If and to the extent there arise specific objections

or disputes about specific discovery requests from either party, they will be subject to meet and confer responsibilities and likely resolved at that point without needing to burden the Court with micro-managing any truncated process being suggested by Defendants. This case should not require any unusual discovery or scheduling complications.

The subjects of discovery include depositions and documents from Syed Kazmi and other KRSM personnel and agents, showing the relationship between the parties and the terms of the contractual arrangements and course of dealing between them; as well as discovery from third parties (such as the trucking company personnel), and parties to whom the fuel was delivered, information about KRSM and Kazmi's receipt of proceeds for the Mansfield fuel, and the movement and disposition of the proceeds themselves and to other parties. Discovery will cover tracing the fuel and money.

As for potential issues or claims relating to attorney client privilege and work product protections, Plaintiff proposes that the parties simply comply with the well-defined obligations under the Federal Rules of Civil Procedure. Plaintiff does not believe that a preemptive order under F.R.E. 502 is necessary for such issues in this case at this time.

As for the number of interrogatories, Plaintiff proposes the Court permit thirty (30) interrogatories for Plaintiff, and thirty (30) for Defendants (who are represented by the same counsel). This is a modest increase of five (5) from the twenty-five (25) permitted under the rules. Otherwise, the usual allotment of discovery requests under the Rules should be sufficient based on the present understanding of the case.

Plaintiff proposes no other order not already addressed by Plaintiff, and submits that, at this point assuming discovery will proceed in accordance with the usual provisions of the Rules,

this case does not require any other particular measures that are not already aptly addressed by the Federal Rules.

**C. Defendants' Position.**

Defendants propose that discovery open with a defined scope directed to the actual transactions at issue. This proposal seeks to limit discovery to merits discovery concerning the subjects of the pleaded claims, and to take the disputed subject first, on a schedule that gets the parties to a resolvable issue quickly. The following are the eight categories that Defendants believe should be readily agreeable to and allow for a prompt exchange of a large volume of relevant and responsive material.

1. **<u>The price, and how Plaintiff calculated it</u>.** This is the central subject of the case, and Defendants ask that the plan define it with care, because the sum Plaintiff seeks is not a posted number that can be checked by inspection. It is the output of a formula. Plaintiff's witness testified that the agreed price was "a formula based off of the refinery contract that we had," that it is "a pretty complex formula," and that it has "[t]hree major components: CBOB, some ethanol, and some other aspects." Tr. 28:2-12. He further testified that for the first set of invoices Plaintiff "build off of our rack price, which was incorrect." Tr. 29:5-6. The Court confirmed the point on the record. Tr. 29:20-24.

   Merits discovery on this subject should therefore reach the formula and every input to it: the index or assessment relied upon, identified by publisher, publication, market or terminal, product code and benchmark time, and whether the figure used was gross or net of any prompt-payment discount; the product specification of each lifting, including grade and volatility, which are separately priced by every index the industry publishes; the blendstock and ethanol components and their weightings; the treatment of any renewable identification number or renewable volume obligation value, and whether it was charged or credited; every differential, adder, terminal charge, discount, fee and tax; and the arithmetic by which each of those became the figure on each invoice. It should also reach the original and every revised version of each invoice, the record of the acknowledged rack-price error, including whether the same error or the same posted price was applied to any other purchaser, the identity of the position holder for each lifting, and the records generated when Plaintiff reconstructed prices for the period.

2. **<u>The invoices</u>.** Every original, revised, superseded and corrected invoice to KRSM for the period, with the record of when each was created and changed, what changed, who approved the change, and why. Every credit, adjustment and

reconciliation worksheet for the account. Plaintiff has told this Court that the invoice package enclosed with its July 29, 2026 demand letter contained four invoices "inadvertently included twice," that the body of that letter "contained an unfortunate clerical error," and that three further invoices were "not billed until after confirmation that they were lifted for KRSM." ECF No. 32-1 at 6. The billing history is therefore not a hypothetical subject. It is one Plaintiff has already placed in issue.

3. **The liftings.** The terminal records for each lifting: bills of lading, lift tickets, terminal identification, product code and grade, volatility where recorded, gross and net gallons, timestamps, and the price source applied to each. Except for the loading credential under which each lifting was authorized, which is the subject of the allegation in Complaint ¶56 and is addressed in subject 8, Defendants do not seek carrier identification, destination, or any record of what became of the product after the lifting, none of which bears on the price.

4. **The parties' course of dealing.** Plaintiff's ledger entries for the KRSM account covering the transactions at issue, showing each draft, each payment and each return if any, together with such earlier entries as Plaintiff itself relies upon to interpret or modify a term of the agreement. Internal communications concerning the KRSM account, its pricing, the delay in invoicing, and any billing or data error.

5. **The account identified in the Order of August 28.** Defendants do not object to confirmation of the identity of the single account the Order identifies and the account-holder designation shown in the Bank's own records for it. Plaintiff has placed the Bank's account-holder designation for that account in issue, and it says it already has the answer. It has twice told this Court that M&T Bank advised its counsel. ECF No. 32 at 2. The orderly first step is therefore for Plaintiff to produce the communication, record or document it received and relies upon, which is subject 6. Defendants do not propose that anyone be asked to create a new document, and they do not ask the Court to order one. If, after Plaintiff produces what it already has, the Court concludes that a further record is needed to decide the question, Defendants will address the least intrusive means of supplying it at that time. Defendants do not agree to the production of signature cards, corporate resolutions, beneficial-ownership records, know-your-customer files or other account-opening material. That limited confirmation is the whole of what Defendants agree is a proper subject. It does not place in issue, and Defendants do not agree to the production of, that account's statements, its balances over time, its transaction history, its deposits, credits or incoming receipts, the identity of anyone who paid into it, its counterparties, or any other activity within it. None of that becomes discoverable merely because the Order names the account. If Plaintiff contends that a prohibited withdrawal, transfer or draft occurred after entry of the Order, the ordinary course is for Plaintiff to identify the transaction it means and the evidence on which it relies, and for the question of any further account discovery to be addressed then.

6. **<u>The basis for Plaintiff's own assertions.</u>** The documents and communications on which Plaintiff relies for each factual assertion it has placed on this docket concerning the M&T account, including the source of every balance Plaintiff has represented to the Court, its communications with M&T Bank, which Plaintiff has twice told the Court exist, ECF No. 32 at 2; Tr. 11:10-12, and any document Plaintiff contends identifies a prohibited withdrawal, transfer or draft, or a transfer, amount, recipient or date said to support its assertion that funds have been dissipated. The asymmetry between this subject and subject 5 is deliberate and it follows from who made the allegation. Plaintiff has told this Court, under oath and in briefing, what this account holds and what has happened in it. Producing the basis for those statements asks Plaintiff for nothing it has not already represented it possesses.

7. **<u>The damages Plaintiff has pleaded</u>.** Plaintiff's Complaint does not confine its claim to the receivable. It seeks damages that "include: past due accounts receivable, and all other damages incurred as a result of the Defendant KRSM's breach including interference with Mansfield's business relationship with its supplier, loss of good will, market share and lost business opportunities, plus its costs, attorneys' fees, expert witness fees, disbursements and interest." Compl. ¶32. Each of those is a separate category, and Rule 26(a)(1)(A)(iii) requires a computation of each and the documents on which each computation is based. This subject covers the identification, amount, computation, causation, supporting records and mitigation of each category Plaintiff seeks, and the basis for the fees, expenses and interest claimed. If Plaintiff does not intend to pursue a category, Defendants ask that it say so, and the subject narrows accordingly.

8. **<u>The allegations in Count V and the conduct Plaintiff attributes to KRSM</u>.** Plaintiff alleges that KRSM Inc. "knowingly took delivery of fuel well above its approved credit limit of $150,000," Compl. ¶56, that it "asserted its control over the misappropriated fuel," ¶57, and that its "conduct was intentional, willful, malicious, and in reckless disregard" of Plaintiff's rights, ¶60. This subject covers the non-privileged factual basis for those allegations: Plaintiff's administration of the credit limit it pleads, its credit monitoring during the period of the liftings, the loading credentials and terminal authorizations it issued, to whom each was issued and whether each remained in effect, including any credential usable by a carrier presenting for KRSM's account, the liftings if any that Plaintiff presently contends it did not authorize, and when and by whom each allegation was first formed.

**C. Protective Orders, Confidentiality Agreements, and E-Discovery.**

**<u>Plaintiff's Position:</u>**

Plaintiff does not believe a preemptive blanket protective order or confidentiality agreement are necessary at this time. If and when such a need arises, Plaintiff anticipates it will

be able to resolve the issue with Defendants by agreement, and if not, then, at such time the parties may propose a confidentiality agreement to be approved or and order entered by the Court. Contrary to their representation below, Defendants have not provided Plaintiff with a proposed protective order for review.

As for "e-discovery", Plaintiff does not anticipate difficulties or burdens necessitating special provision or orders regarding electronic discovery. If such issues arise, Plaintiff would agree to a standard order for procedures governing electronic discovery commonly used in this District. *See* (Ex. "4".)

As for the scope of discovery, Plaintiff proposes that the parties simply follow Rule 26(b)(1) setting forth "Discovery Scope and Limits". Any disagreements that may arise between the parties, if not resolved or narrowed by the parties complying in good faith with the Rules and after counsel meeting and conferring over same, may be brought to the Court for resolution – if and as required.

**<u>Defendants' Position:</u>**

Defendants propose the following:

i. **<u>Categories Outside the Scope of Merits Discovery.</u>** For purposes of the claims and defenses presently pleaded, and in defining the present scope of merits discovery, Defendants propose that the following categories be outside the scope of merits discovery absent written agreement of the parties or further order of the Court upon a particularized showing that the discovery sought is relevant to a claim or defense then pleaded and proportional to the needs of the case, identifying the entity, the period, the factual basis connecting the category to that claim or defense, and why a narrower source is insufficient:

a) The personal bank accounts, personal assets, personal financial condition, net worth, or tax returns of Syed Kazmi.

b) The bank-account statements, balances, transaction history, deposits, credits, incoming receipts and counterparties of KRSM Inc., including those of the account identified in the Order of August 28, 2026, save only the limited confirmation

of account identity and account-holder designation described in subject 5.

c) The accounts, financial records, ownership or corporate structure of persons and entities that are not parties to this action, sought from Defendants or concerning any non-party affiliated with Defendants.

d) Tax returns of either Defendant, or of any non-party affiliated with Defendants.

e) Defendants' enterprise-wide financial statements, general solvency, or ability to satisfy a judgment.

f) Defendants' downstream customer, supplier, vendor and carrier identities, relationships, receipts, payments, resale proceeds and delivery destinations, except for payments made directly between KRSM Inc. and Plaintiff bearing on the amount claimed and the loading-credential information described in subject 8.

g) A general tracing of funds among Defendants and persons or entities related to them.

h) KRSM Inc.'s own ownership interests, capitalization, corporate structure, affiliated or related entities, and general business operations, other than the transaction-specific subjects identified above.

i) Nothing in the foregoing paragraphs limits discovery directed to Plaintiff.

i. Defendants ask that the scheduling order define the scope of merits discovery in these terms under Rule 16(b)(3)(B)(ii), so that the boundary is set once at the outset rather than litigated on each request. Nothing in that provision determines that any category identified above is or will become discoverable, and the filing of an amended pleading does not of itself modify the scope so set.

ii. Separately, a protective order governing confidential commercial information is necessary. The discovery in this case will run directly to Plaintiff's pricing formula and its inputs, the pricing provisions of its supply contracts, its invoicing and credit records, and its ledger. Defendants submit a proposed protective order herewith. It is symmetrical, it seals nothing, and it carves out anything a person obtained independently of discovery. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32, 34, 37 (1984). Defendants ask that it be entered before any production of confidential commercial information. If Plaintiff maintains that none is

necessary, Defendants will present it by motion under Rule 26(c) after conferring, as this Court's procedures require.

iii. Defendants further propose, each applicable to both sides: (i) sequence, that Plaintiff's production of its pricing, invoice, credit and reconciliation records precede Defendants' responsive transaction-specific production by thirty days, and that Plaintiff identify in that production the single figure it contends is due and the computation supporting it, Fed. R. Civ. P. 26(d)(3); (ii) interrogatories, that Defendants do not object to a reciprocal limit of thirty per side if the Court enters the scope provision above, and that otherwise the twenty-five Rule 33(a)(1) permits should remain; (iii) notice before non-party financial subpoenas, seven days beyond what Rule 45(a)(4) requires, applicable according to what a subpoena seeks and without regard to how it is captioned; (iv) preservation under Rule 26(f)(2), each party to confirm in writing that a litigation hold is in place covering the records at issue; (v) electronically stored information, ordinary documents as searchable PDF or single-page TIFF with a load file and standard metadata, spreadsheets, ledgers and pricing files in native format with formulas intact, and no forensic imaging or comparable exceptional collection absent agreement or further order; and (vi) privilege, a log satisfying Rule 26(b)(5)(A) served on a rolling basis, communications with counsel created after the Complaint need not be logged, and entry of the Federal Rule of Evidence 502(d) provision contained in the proposed protective order.

iv. Defendants' proposed dates. Plaintiff's dates set end points without production milestones. The records that fix the amount are in Plaintiff's exclusive control, and a schedule without substantial-completion dates permits those records to arrive at the end of the period rather than at the beginning. Defendants propose: Rule 26(a)(1) disclosures at or within fourteen days after the Rule 26(f) conference; the protective order entered before any production of confidential commercial information; written discovery served upon completion of the conference, Fed. R. Civ. P. 26(d)(1); Plaintiff's production on the subjects above substantially complete within sixty days after service of the requests; Defendants' responsive transaction-specific production substantially complete thirty days thereafter; amendment of pleadings and joinder of parties within thirty days after entry of the scheduling order, Fed. R. Civ. P. 16(b)(3)(A); the close of fact discovery seventy-five days after Defendants' production is substantially complete; expert disclosures under Rule 26(a)(2) by Plaintiff within thirty days after the close of fact discovery, by Defendants within thirty days thereafter, and rebuttal within twenty days after that; the close of expert discovery thirty days after the last rebuttal report is due; and dispositive motions within thirty days after the close of expert discovery.

**D. Potential Resolution or ADR.**

**<u>Plaintiff's Position:</u>** Plaintiff has engaged in informal resolution discussions with Defendants, but currently the parties are unable to amicably resolve this matter. Plaintiff has advised Defendants, through counsel, that Plaintiff remains willing to explore resolution with discussions among themselves. Plaintiff would also agree such efforts may include mediation before the Court or a Magistrate Judge of this Court. In the Rule 26(f) conference, Plaintiff's counsel communicated to defense counsel that, to the extent Defendants claim to have insufficient funds to make payment of an agreeable amount at this time, Defendants are requested to provide satisfactory verification of financial ability/inability (particularly given the fact that a recent financial statement from year-end 2023 reflects KRSM having over $30,000,000.00 in cash assets).

**<u>Defendants' Position:</u>** The parties have discussed resolution informally and have not resolved the matter. Defendants have proffered what they believe are reasonable settlement terms, to which Plaintiff has not accepted or provided a good faith counterproposal. Defendants remain open to alternative dispute resolution at any time the Court directs, and note that a resolution is more likely once Plaintiff has identified the single figure it contends is due and the computation supporting it.

**E. Other Matters Bearing on The Schedule.**

A. <u>Pending motions</u>. Two motions are pending: (1) Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not Be Held in Civil Contempt of the Corut's August 28, 2026, Order, ECF No. 37; and (2) Plaintiff's Motion to Conduct Discovery. ECF No. 40. Defendants will file a Motion to Dismiss the Complaint on September 11, 2026.

**<u>Plaintiff's Position:</u>** To the extent the Court rejects Defendants' one-sided, overly complicated and restrictive discovery plan being proposed by Defendants, and if the Court adopts Plaintiff's positions as stated herein, Plaintiff's pending Motion for Discovery could be deemed

moot or otherwise withdrawn (ECF 40), and discovery will simply proceed under the Rules without the need for a ruling by this Court on that pending Motion. Plaintiff also reserves rights to the extent Defendants' proposals make reference to Motions or pleadings that Defendants apparently intend to file, but have not yet done so, which could alter the scope of discovery depending on what Defendants file.

**Defendants' Position:** Defendants position is that the scope sought by ECF No. 40 overlaps the categories addressed in Part III.B, and Defendants respectfully suggest that the scheduling order and that motion be considered together.

B. Pending appeal. Defendants filed a notice of interlocutory appeal from the Order of August 28, 2026 on September 1, 2026. ECF No. 36. Defendants do not contend that the notice of appeal automatically stays merits discovery in this Court. Defendants preserve all positions taken on appeal.

**Plaintiff's Position:** Defendants' appeal lacks merit inasmuch as the Court conducted an extensive hearing at which testimony and documents were presented to fully support the Court's exercise in discretion in entering the preliminary injunction. Moreover, the law, as articulated on the record in the Court's decision from the Bench, fully supports the Court's Order, which was carefully measured and tailored to the specific evidence and circumstances of the case. Plaintiff agrees, however, with Defendants that their appeal has no impact on discovery proceeding now.

C. Defendant Syed Kazmi. Mr. Kazmi seeks no discovery. He joins in this report solely so that the Court has the parties' proposals in one document as its Order directs, and solely as to this Part. He preserves in full every defense and objection, and nothing in this report is an appearance by him for any other purpose.

**Plaintiff's Position:** Plaintiff does not consent to Defendant Syed Kazmi's position concerning this matter.

Respectfully submitted,

Dated: September 11, 2026

HARRITON & FURRER, LLP

*/s/ Urs Broderick Furrer*
URS BRODERICK FURRER, ESQ.
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI
KYLE M. ELLIOTT
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215.977.1000 (phone)
FPSantarelli@elliottgreenleaf.com
kme@elliottgreenleaf.com

*Counsel for Plaintiff Mansfield Oil Company of Gainesville, Inc.*

*/s/ Paul J. Toner*
*Paul J. Toner, Esquire*
*TONER LAW GROUP, PLLC*
*1717 Arch Street, Suite 1415*
*Philadelphia, Pennsylvania 19103*
*(215) 282-8525 | paul@tonerlaw.com*

*Counsel for Defendants KRSM Inc. and Syed Kazmi*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served on all counsel of record via the Court's electronic filing system.

*/s/ Frederick P. Santarelli*
FREDERICK P. SANTARELLI

Dated: September 11, 2026