**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., | |
| Plaintiff, | Civil Action No. 2:26-cv-06072-GAM |
| v. | |
| KRSM INC. and SYED KAZMI, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR CIVIL CONTEMPT**

Defendants, KRSM, Inc. and Syed Kazmi, by and through undersigned counsel, respectfully submit this memorandum in opposition to Plaintiff's Motion for an Order to Show Cause why Defendants should not be held in civil contempt.

**PRELIMINARY STATEMENT**

Civil contempt enforces a clear command. Plaintiff identifies no command to deposit money into the account. The August 28 Order sets a target balance and freezes the account at or below it, but it does not command Defendants to deposit funds by any date. Plaintiff nonetheless asks this Court to fine Defendants daily, imprison Mr. Kazmi, *against whom the Complaint pleads no claim*, and to order sweeping prejudgment relief, all for failing to perform an act the Order never required. The motion should therefore be denied.

At this juncture, the underlying dispute is and remains an accounting disagreement concerning a limited period of approximately six weeks. While the instant dispute concerns only six weeks of charges, Defendant KRSM has been a customer of Plaintiff for over four years and Plaintiff readily admitted during the August 27 hearing that this dispute began with its own invoicing failures. That history does not decide this motion, but it confirms why the "clear and convincing" proof contempt demands is absent. Moreover, the instant Motion for Sanctions, with its reckless *ab hominin* attacks and its sensational politicization of a billing dispute, is a glaring example of Plaintiff's continuing, gross overreach in this dispute.

**ISSUES:**

I. WHETHER PLAINTIFF HAS PROVEN, BY CLEAR AND CONVINCING EVIDENCE, THAT DEFENDANTS DISOBEYED A CLEAR AND UNAMBIGUOUS COMMAND IN THE AUGUST 28, 2026 ORDER WHEN THE ORDER COMMANDS NO DEPOSIT, SETS NO DEADLINE, AND IDENTIFIES NO PROHIBITED WITHDRAWAL, TRANSFER, OR DRAFT THAT OCCURRED?

II. WHETHER A FEDERAL DISTRICT COURT MAY, ON A CIVIL CONTEMPT MOTION, IMPOSE THE COERCIVE AND PREJUDGMENT RELIEF PLAINTIFF SEEKS, DAILY FINES, IMPRISONMENT, A SWORN ACCOUNTING OF EVERY AFFILIATED ACCOUNT, AND REROUTING OF CUSTOMER RECEIPTS, WHERE THAT RELIEF WOULD EXPAND THE INJUNCTION RATHER THAN ENFORCE IT?

**BACKGROUND:**

Plaintiff asks this Court to hold Defendants in civil contempt, to fine them every day until they pay, and to imprison Syed Kazmi, a man against whom the Complaint pleads no count and from whom it seeks no relief, all before the parties engage in discovery and before the Court even reviews the now pending Motion to Dismiss.

On August 28, 2026, the U.S. District Court for the Eastern District of Pennsylvania granted in part Mansfield Oil's motions for a preliminary injunction and, in the same order,

granted KRSM's motion to vacate the earlier temporary restraining order. (Mansfield Oil v. KRSM Inc., Order at 1) The injunction directs that "[d]efendants shall maintain a balance of at least $2,750,000" in the identified M&T bank account (ending 7805) referenced in the parties' Electronic Transfer Agreement; at or below that threshold, no party may withdraw, transfer, or draw on the account, and M&T Bank must refuse such requests, "except as ordered by this Court." (Mansfield Oil v. KRSM Inc., Order at 1)

Plaintiff's motion rests on a single factual premise–the account balance–and the only bank writing it filed to corroborate that premise is an email that states no balance at all. In full, that email provides:

**"Good morning, The balance has not changed. Thank you,"**
(See Exhibit C.)

That is the entire message. It states no balance. It gives no dollar figure. It names no account. And it is a reply, sent under the subject line "RE: Bank response - Restraining Order," to an earlier email Plaintiff did not file.

Defendants state one matter plainly, because it bears on every part of this motion. Defendants take no position on what the balance of the account was on any particular date, other than Defendant can now confirm that the balance has been below $2,750,000.00 since before the hearing on August 27th and Defendants have not made an impermissible withdraw since the Court issued its order and remain in full compliance with the plain language of the Court's preliminary injunction order.

As plainly set forth in Plaintiff's Complaint, their core allegation is that between May 21 and July 7, 2026 (the "Disputed Period"), Defendant KRSM lifted approximately 1,124,594 gallons of fuel and did not pay (COMPLAINT at 2; COMPLAINT at 3). There is no allegation that any payment remains outstanding for fuel taken *before* May 21, 2026 or *after* July 7, 2026.

Moreover, the Complaint acknowledges that Plaintiff Mansfield did not send invoices to Defendant KRSM "until early July of 2026." (Complaint ¶ 16.) Importantly, the Complaint does not contend that Defendants were responsible for or in any way involved with the "data receiving error" that resulted in Plaintiff's own failure to issue invoices during the Disputed Period.

The dispute concerns one defined set of deliveries over one defined period, May 21 through July 7, 2026.

**ARGUMENT**

**I. PLAINTIFF IDENTIFIES NO CLEAR COMMAND THAT DEFENDANTS DISOBEYED.**

Civil contempt is a heavy burden and Plaintiff cannot carry it.

To establish civil contempt, a movant must prove by *clear and convincing evidence* that (1) a valid order existed, (2) the alleged contemnor knew of it, and (3) the alleged contemnor disobeyed it. John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit, 318 F.3d 545, 552 (3d Cir. 2003). As recognized by the Eastern District:

> "The plaintiff has a heavy burden to show a defendant guilty of civil contempt. It must be done by 'clear and convincing evidence,' and where there is ground to doubt the wrongfulness of the conduct, he should not be adjudged in contempt."

Al C. Rinaldi, Inc. v. Bach To Rock Music Sch., Inc., 279 F. Supp. 2d 624, 629 (E.D. Pa. 2003). Any ambiguity "must be resolved in favor of the party charged with contempt." John T., 318 F.3d at 552. Where "there is ground to doubt the wrongfulness of the conduct," a party "should not be adjudged in contempt." Robin Woods, Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994).

Here, the third element decides this motion. Plaintiff cannot show disobedience of a definite command. The Order commands no deposit into the account, and fixes no time, sum or method for one.

### A. Contempt enforces a clear command, and ambiguity favors the party charged.

Rule 65(d)(1) requires every injunction to "state its terms specifically" and to "describe in reasonable detail … the act or acts restrained or required." A party is entitled to learn from the four corners of the decree what it must do. Contempt enforces the command actually given, not one supplied afterward. As reiterated by the Supreme Court for well over a century: Contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct." California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885). That standard was reaffirmed recently, and it is "generally an objective one": contempt is appropriate only where "there is no objectively reasonable basis for concluding that the [alleged contemnor's] conduct might be lawful." Taggart v. Lorenzen, 587 U.S. 554, 561 (2019). And "the most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension." International Longshoremen's Association v. Philadelphia Marine Trade Association, 389 U.S. 64, 76 (1967).

The Third Circuit has applied the same specificity principle outside contempt as well. In Eavenson it reversed Rule 11 sanctions imposed for violating an ambiguous order, expressly invoking the Circuit's "longstanding, salutary rule in contempt cases" by analogy. "[T]he order which is said to have been violated must be specific and definite," and an order "so vague or indefinite" that the party "cannot be punished for doing what he did in view of lack of certainty as to what it prohibited or directed" will not support contempt. Eavenson, Auchmuty & Greenwald v. Holtzman, 775 F.2d 535, 544 (3d Cir. 1985). An injunction "need be obeyed only to the extent it reasonably specifies the conduct prohibited." Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir. 1971). Rule 65(d) "strongly suggests that prohibited conduct will not be implied" and "ambiguities and omissions in orders redound to the benefit of the person charged with

contempt." Id. On that rule, the Third Circuit reversed a contempt order because, although the district court's findings showed it believed the conduct unlawful, "the provisions of the order contain no prohibitory language explicitly addressed to" that conduct, so the order "did not prohibit the conduct which formed the basis for the contempt order." Id.; *see also* John T., 318 F.3d at 552 (holding that "ambiguities must be resolved in favor of the party charged with contempt.")

The prior stated principle bars exactly what Plaintiff attempts. A decree "must be construed as it is written, and not as it might have been written." Harris v. City of Philadelphia, 47 F.3d 1342, 1350 (3d Cir. 1995). Where the court "cannot find an unambiguous provision" requiring the act charged, it "cannot uphold" a contempt finding built on it. Id. at 1350-51. Rule 65(d)'s specificity requirements "are not mere technicalities"; they exist "to avoid the possible founding of a contempt citation on a decree too vague to be understood." Mallet & Co. v. Lacayo, 16 F.4th 364, 379-80 (3d Cir. 2021).

Defendants do not contend that good faith alone defeats civil contempt. Willfulness is not an element, and Plaintiff is right about that. Nor do Defendants contend that an appeal excuses compliance with an unstayed injunction. The question is whether the Order gave a command definite enough to be disobeyed, and whether anything it forbids was in fact done. On this record, the answer to each is no.

### B. The Order fixes a balance and freezes the account. It does not command a deposit by anyone, by any date.

Paragraph 2 has two sentences. The first says Defendants shall maintain a balance of at least $2,750,000. The second says what happens "[a]t any balance at or below $2,750,000": no withdrawals, transfers or drafts, and M&T Bank shall refuse to permit them.

Defendants do not dispute that the first sentence sets a floor. The question this motion actually presents is different and more narrow. It is not what "maintain" means. It is when, by what act, and by whom an account that Plaintiff says was below the floor was first required to reach it.

On that question the Order says nothing. It sets no date. It sets no hour. It sets no cure period. It names no affirmative act. It allocates nothing between the two Defendants. It requires no report of compliance and gives no warning that anything is due by any time. Under Ford, each of those omissions is construed against Plaintiff and in favor of the party charged. 450 F.2d at 280. Compare the order enforced in Plaintiff's own authority, which directed compliance "FORTHWITH under penalty of sanctions for contempt of court." John T., 318 F.3d at 550. Paragraph 2 contains no language commanding a payment, by anyone, by any date.

The Court did answer the question of what happens below the floor, and it answered it in the second sentence. The account is frozen. Nothing may be withdrawn, transferred or drafted. The Bank must refuse to permit it. Any movement requires leave of this Court. That is relief the Court could impose at once, enforce against the Bank as well as the parties, and state in terms a party can obey at every moment. Reading into that sentence an unstated, same-day obligation to deposit millions of dollars asks the Court to enforce Paragraph 2 "as it might have been written," not as it was. Harris, 47 F.3d at 1350.

Defendants do not contend that Plaintiff's reading is impossible, and they do not ask this Court to read the first sentence out of its own Order. They contend only that paragraph 2 does not speak in a single, unmistakable voice on the question on which fines and imprisonment are sought. A decree that supplies no answer at all to that question is not the clear and unambiguous command Rule 65(d)(1) and this Circuit require.

One further point follows from the text. The freeze in the second sentence operates "[a]t any balance at or below $2,750,000." Plaintiff's motion therefore depends at every step on establishing what the balance was, and, as shown below, it has not.

### C. <u>This Court and Plaintiff's counsel both described the injunction as holding a balance, not funding one.</u>

Immediately after fixing the figure, the Court said:

> "The plaintiff has suggested that there are other limitations that should be placed. In my view, if the injunction is that that balance be held in this account, I don't know that there are any other limitations or requirements that would be necessary. But I'm willing to hear from counsel on that score." Tr. 175:23 to 176:3.

Plaintiff's counsel answered immediately:

> "MR. FURRER: Your Honor, if the order is going to be that they maintain that amount in that account, then that's sufficient." Tr. 176:4-6.

Having told this Court that maintaining the amount in the account "is sufficient," Plaintiff cannot now contend that the same decree silently imposed the same-day affirmative replenishment obligation. The Court's ruling confirms the point. After the close of testimony and in announcing the relief, the Court stated that the order "will require that a balance of 2,750,000 dollars be maintained in the account." Tr. 175. The Court then described what that relief did, explaining that "by entering an injunction that requires a certain amount in the account I'm maintaining or restoring the status quo, as it should have existed." Tr. 173. The Court thus spoke of a balance to be "maintained" and a status quo to be "restored," not of a deposit to be made by any date.

### D. <u>Plaintiff asked for a cap on withdrawals, not an order to deposit money</u>

The day before the hearing, Plaintiff told this Court in writing exactly what order it wanted:

> "Plaintiff proposes the following, reflected in the accompanying proposed order: (1) the restraint continues, but is capped at $3,998,868.46 and modified to permit (a) payroll and payroll-tax obligations, (b) motor-fuel and sales-tax remittances, and (c) ordinary-course vendor payments to non-affiliated entities up to $1,000.00 per week …."

ECF No. 32 at 12.

A cap on the restraint limits the amount restrained. Carve-outs permit specified transactions. Neither is a command to deposit. Plaintiff asked, in writing and with a proposed order attached, to continue a restraint on withdrawals. It asked for no funding obligation of any kind.

Nothing changed at the hearing. Plaintiff never asked this Court to order Defendants to put money into the account. The words deposit, fund, replenish and pay into do not appear in the ruling. The Court used the word restoring once, and explained in the sentences that follow what it was doing: applying the exception to Grupo Mexicano drawn from Deckert, under which a court may "intervene and preserve the asset" where there is "an identifiable asset that ... to which the plaintiff has a claim," and where "whatever legal remedy there would be without recourse to the funds in dispute would be inadequate." Tr. 173:4-16. Every part of that rationale operates on a fund that exists and is identified. The Court framed the relief as preserving the assets in the identified account. Tr. 174:3-4. Preservation operates on what an account holds. It says nothing about filling one. A court that means to command immediate payment of a multi-million-dollar sum says so, and states the act to be performed, the sum, and the date by which it must be done. Paragraph 2 of the Order states none of the three, and does not allocate any such obligation between the two Defendants.

### E. <u>The Only Deadline Defendants "Missed" Was One Plaintiff's Counsel Set by Email.</u>

Plaintiff argues that "the Court explicitly offered Defendants an opportunity on the record at the end of the hearing, to raise any questions they may have on the clarity of the Order. They said nothing." Mem. at 7. The record is:

> "THE COURT: Is there anything else that requires the attention of the Court?
> MR. FURRER: No, Your Honor.
> MR. TUCCI: Nothing, Your Honor."

Tr. 176:21-24.

That is a routine adjournment question, asked after the colloquy about the bond. The record testimony had long since closed and, of course, counsel are not fact witnesses. The next matter was Mr. Tucci's admission, and the Court adjourned. Tr. 176:25 to 177:10. No written order existed at that moment for anyone to ask questions about. And Plaintiff's counsel answered the identical question in the identical way. If silence there forfeits anything, the forfeiture is mutual.

Plaintiff's reliance on <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187 (1949) is misplaced. <u>McComb</u> holds that a party may not act on its own private construction of a decree and escape the consequences. The Court in <u>McComb</u> did not hold that one litigant may supply a term that the decree omits and then convert its own party-contrived deadline into a contempt trigger.

According to Plaintiffs, what Defendants "missed" was not a date in the Order, since the Order has none, but a 2:00 p.m. deadline Plaintiff's counsel set by email at 8:16 a.m. that morning. Furrer Decl. Ex. D. Moreover, Defendants did not act on a private construction and conceal it. They stated their reading in writing the day the question arose. Plaintiff identifies no

withdrawal, transfer or draft from the account after entry of the Order. Mr. Kazmi has separately sworn that since entry of the Order he has not requested, authorized, directed, initiated or caused any withdrawal, transfer or draft from that account, and instructed no one else to do so. Kazmi Compliance Decl. ¶¶ 4-6. Plaintiff, which reads the same paragraph to command immediate payment of millions, never asked this Court to say so before moving for sanctions.

In the end, that two counsel of record read a two-sentence decree in opposite ways, and one said so in writing before taking any action, underscores the objective uncertainty already apparent from the Order's text; it does not, by itself, create that uncertainty. Taggart, 587 U.S. at 560-61. Defendants do not rely on their own good faith, and do not need to. The standard is objective and it is satisfied on the face of the record.

### F. Plaintiff's own record supplies the fair ground of doubt and its balance figure is unproven.

Two independent defects defeat Plaintiff's motion, and both are Plaintiff's own.

First, the Order supplies no date, no act, and no mechanics for an initial funding obligation, so there was no objectively clear command to disobey.

Second, Plaintiff's declaration swears that M&T Bank "advised me in writing" that the balance "was $589,513.68" and that Exhibit C is "a true and correct copy of that written confirmation." ECF No. 37-1 ¶ 4. Exhibit C contains no such figure. Two days later, Plaintiff represented the balance as $589,523.68. The significance is not the roughly ten dollar difference. It is the unexplained change in a figure stated to the penny and attributed to the Bank, when the writing Plaintiff identified as the source contains neither amount. Plaintiff has filed no bank record, account statement, or other writing supporting any figure, and the very document it swore was the bank's confirmation contains none. Contempt "should not be resorted to where there is

fair ground of doubt as to the wrongfulness of the defendant's conduct." Molitor, 113 U.S. at 618; *accord Taggart, 587 U.S. at 561; Robin Woods, 28 F.3d at 399.*

The rules of evidence apply here. Federal Rule of Evidence 1101(b) applies the Federal Rules of Evidence to "contempt proceedings, except those in which the court may act summarily," and Rule 1101(d) excepts no proceeding of this kind. Rule 43(c) permits a motion to be heard on affidavits, and Defendants do not suggest otherwise, but it does not dispense with personal knowledge or foundation. What Plaintiff has filed on the only fact that matters is counsel's account of what a bank is said to have told him, unaccompanied by any account statement, business record or certification under Rule 902(11). The Court of Appeals considered a comparable submission in Bedrosian v. United States Department of the Treasury, IRS, 42 F.4th 174 (3d Cir. 2022), where the only proof of an account balance was a page carrying figures but, as the court observed, "no name on the page. No account number. Not even a bank mentioned." Offered "without a witness laying a foundation," it should not have been admitted "without further foundation." Id. Exhibit C states no figure at all.

Preliminary-injunction findings do not finally determine the merits. University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Nothing in this Opposition adopts any preliminary estimate of the amount due, or limits Defendants' positions on the merits or on appeal. Nothing here waives or narrows Defendants' pending appellate challenges to the validity, scope or enforceability of ECF No. 35.

The record separately shows where this controversy came from. He was asked whether he reviewed the payment history before seeking to freeze the account, and answered: "I did. And that's why I spent a month trying to, in good faith, work out a solution." Tr. 152:19-24. He was then asked what that history showed:

> "Q. So yes or no, was he timely making payments from the date he first entered into a business relationship with you up [to] May 21st, 2026?
>
> A. Under a very tight and controlled credit limit of 150,000 dollars, the answer is yes."

Tr. 153:1-5. To be clear, that is Plaintiff's owner, under oath, answering yes. Defendants quote the answer rather than the question and note that the witness qualified it.

Next, what the dispute has actually been about. It has been about the amount, and the amount has moved. On the first morning of the hearing, when Defendants' counsel said "there's no dispute that in this six-week period, the failure to invoice was entirely Mansfield's fault," the Court answered: "Agreed." Tr. 7:6-8. Section 6 of the General Terms attached to the Complaint requires Mansfield to "invoice Purchaser for Fuel upon lifting at the Delivery Point," with payment due within ten days of receipt of invoice, and Section 5 provides that Mansfield "will charge Purchaser the agreed upon price per gallon." Defendants raise this not to argue the merits on a contempt motion, but because it is why the amount has moved and continues to move.

Plaintiff documented the movement itself. On August 26 it filed a "Reconciliation of Stated Balances." ECF No. 32-1 at 6. Read against the Complaint, it shows the same balance stated four ways in five weeks:

a. July 17, 2026. The Complaint alleges "an account was stated … in the amount of $3,998,868.46." Compl. ¶50.

b. July 23, 2026. The schedule Plaintiff circulated six days later showed $4,025,748.46. ECF No. 32-1 at 6 (line B.1).

c. July 29, 2026. The invoice package enclosed with the demand letter totaled $4,035,260.72 across 151 invoice pages. Id. (line A.1). Plaintiff states that four of those invoices were "inadvertently included twice," accounting for $97,002.21. Id. (line A.2).

d. July 29, 2026. The body of that same demand letter stated $3,973,665.31. Id. (line C.1). Plaintiff states the letter "contained an unfortunate clerical error." Id.

In fact, Plaintiff's counsel addressed this at the hearing:

> "The defendants keep saying invoices were corrected four times. That's not true. The testimony was the invoices were corrected once because they used the wrong formula. They didn't use a formula, they just used the rack price …. The other time, there were four duplicate invoices, and the other time there was an invoice that ... had already been paid."

Tr. 166:17-24. The denial enumerates three corrections, and the reconciliation Plaintiff had filed the day before adds the clerical error in the demand letter itself.

Defendants do not contend on this motion that the figure now pleaded is wrong, and do not ask this Court to resolve the account. The point is narrower, and Plaintiff's own document makes it. A party that must file a reconciliation to explain four different statements of one balance, attributing two of them to a duplication and a clerical error, has shown that the amount is genuinely in dispute. The Court recognized as much, answering Plaintiff's counsel from the bench that "where we are is in a dispute," Tr. 17:22-23, and describing the dispute in its ruling as one that "only has to do with the amount." Tr. 169:3. That history does not decide what paragraph 2 means, and Defendants do not offer it for that.

## II. THE RELIEF PLAINTIFF SEEKS CANNOT BE IMPOSED ON THIS RECORD, AND MUCH OF IT WOULD EXPAND THE ORDER RATHER THAN ENFORCE IT.

A contempt proceeding enforces an existing decree. It cannot enlarge the injunction, and it is not a vehicle to impose additional prejudgment restraints that have not themselves been justified. Harris, 47 F.3d at 1350; Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 333 (1999). Each form of relief Plaintiff requests exceeds what a contempt proceeding on this Order can support.

As a threshold matter, Plaintiff's own proposed order overreaches. Plaintiff asks for an order directing Defendants "to show cause, at a hearing on the earliest available date, why they

should not be held in civil contempt," Mot. ¶6(a), and its closing paragraph asks the Court to enter its proposed order "and, following hearing, grant the relief described above." The proposed order Plaintiff actually submitted directs no one to show cause and sets no hearing. ECF No. 37-7. It orders the deposit within three business days, imposes the daily fine, orders an accounting of every account of every affiliated entity, awards fees, redirects KRSM's customer receipts, and modifies the preliminary injunction. Signed as presented, it would impose every sanction Plaintiff seeks without the hearing Plaintiff's own motion says should come first.

### A. <u>The request to imprison Mr. Kazmi should be denied.</u>

Plaintiff asks that relief "include the confinement of Defendant Kazmi." Mem. at 9. The request is made in a single clause, in the alternative, with no supporting authority, and it fails at the threshold. Defendants do not contend that an officer of a corporate party can never be reached by an injunction. Rule 65(d)(2) binds a party's officers and agents who receive actual notice. The objection is narrower and goes to what must exist before a court may confine a person to coerce compliance.

Before a court may confine a person to coerce compliance with a court order, several essential prerequisites must be established. The foundational requirements are: (1) a valid, lawful court order must exist; (2) the contemnor must have failed to comply with that order; (3) the order must identify the act whose performance will end the confinement; and (4) the confinement must be conditional, structured so that the contemnor can secure immediate release by complying. *See* <u>Shillitani v. United States</u>, 384 U.S. 364, 370; <u>Gompers v. Bucks Stove & Range Co.</u>, 221 U.S. 418, 442 (1911); <u>Hicks v. Feiock</u>, 485 U.S. 624, 638 n.9 (1988). The prerequisites for the coercive confinement Plaintiff requests have not been established on this record. The Order identifies no personal funding act that Mr. Kazmi, as distinct from KRSM, must perform,

assigns him no personal sum, sets no compliance deadline personally applicable to him, and states no purge condition. No evidentiary hearing has been held on this motion, on any personal disobedience by Mr. Kazmi, or on any purge condition, and the motion supplies no evidentiary basis for those findings.

Three further reasons compound those defects.

First, no count of the Complaint is pleaded against Mr. Kazmi. The Complaint has six counts, and each is captioned as a claim against KRSM. (Compl. at 4-8.) Its opening sentence says Plaintiff proceeds "by way of this Verified Complaint against Defendant KRSM Inc." Compl. at 1. Its prayer asks for judgment against KRSM and no one else. Compl. at 8-9. Mr. Kazmi is named in five paragraphs, and in each he is described acting for the company. The pleading alleges no promise, guaranty, duty or receipt of property of his own. Plaintiff said the same thing in writing six days before it asked this Court to imprison him:

> "The existing Order restrains the KRSM account; it does not restrain and Plaintiff has not sought to restrain, any personal asset of Mr. Kazmi …. Plaintiff will respond to any Rule 12 motion directed at the pleading against Mr. Kazmi in the ordinary course." ECF No. 32 at 12-13.

Defendants do not rest the point on the pleading alone. Even assuming Rule 65(d)(2) reaches Mr. Kazmi as an officer, the record establishes no compliance deadline personally applicable to him, no personal disobedience, no purge condition and no evidentiary basis of the kind confinement requires.

Second, coercive confinement rests on a single premise: the person confined can end it at will. He "carr[ies] the keys of [his] prison in [his] own pocket[]." Gompers, 221 U.S. at 442. A court "may not impose punishment in a civil contempt proceeding when it is clearly established that the alleged contemnor is unable to comply with the terms of the order." Hicks, 485 U.S. at 638 n.9, quoted in Turner v. Rogers, 564 U.S. 431, 442 (2011); see Shillitani v. United States,

384 U.S. 364, 371 (1966). Plaintiff proposes escalation from daily fines to confinement if the fines are deemed inadequate. Confinement is a means of compelling a party who can comply and will not. Defendants do not place their financial condition at issue in opposing this motion and do not rely on financial inability as a ground for denial on the present record. The Court need not reach that question. The point concerns the record: a coercive confinement order requires findings this record cannot support, because there has been no evidentiary hearing, no testimony and no exhibit addressed to the question.

Third, if Plaintiff seeks punishment rather than coercion, that is criminal contempt, and it may not be pursued through a Motion for Civil Contempt. Criminal contempt requires notice under Federal Rule of Criminal Procedure 42(a) and proof beyond a reasonable doubt, and it may not be prosecuted by counsel for the party that benefits from the order. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 802-09 (1987). Plaintiff is the beneficiary of the Order and Plaintiff is the movant.

Plaintiff's closing argument explained what its concern about Mr. Kazmi actually is: "There are multiple judgment against Mr. Kazmi, and/or his brother, and/or multiple different entities, including KRSM. And those parties have judgments, and they can't collect." Tr. 166:2-5. "And my client having an interest in that account shouldn't be put in a position where it's just like somebody else who has a judgment." Tr. 166:6-8. That is an argument about collecting a debt. It is not a basis for confining anyone. At this juncture, before the Court rules on the pending Motion to Dismiss, without the benefit of discovery, the Plaintiff is seeking a preliminary judgment for the payment of money, for which there is and will continue to be a dispute over its entitlement and accounting.

Defendants do not ask this Court on this motion to revisit its ruling of August 28. The Court considered other judgments in assessing whether the single account identified in the Order faced a risk of execution, Tr. 174:1-4, and Defendants have appealed that interlocutory order to the Third Circuit. The narrow point is what that consideration can be made to carry now. It concerned one account and judgments "entered against the defendant here." It did not decide that Plaintiff stands ahead of other creditors generally, and a creditor asking not to be "just like somebody else who has a judgment" is asking for a position that judgment alone confers. Rule 69(a)(2) reserves discovery "[i]n aid of the judgment or execution" to a judgment creditor. Plaintiff is not one.

Nor does a judgment elsewhere establish the facts Plaintiff attaches to it. A court "may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion." Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999). Counsel also told the Court that the material is "in our papers," and "not hard to find." Tr. 166:1-2. Whatever weight Plaintiff wishes to give other litigation, it has the material and needs nothing from Defendants to present it.

**B. The Request for an Accounting of Every Affiliated Account Constitutes Impermissible Prejudgment Asset Discovery.**

Plaintiff asks for a sworn accounting of every account "at any institution, held by or for the benefit of either Defendant or any entity under their control, with balances," and asks that the injunction be extended to those accounts. Proposed Order ¶¶6-7; Mot. ¶6(d), (f). There is no judgment in this case, so Plaintiff has no entitlement under Rule 69 to postjudgment asset discovery. Any narrower pretrial financial discovery would have to satisfy Rules 26 and 45 and this Court's scheduling order independently, and this contempt motion supplies no such basis.

A federal court has no equitable power, before judgment, to freeze a defendant's general assets to secure an unsecured money claim. Moreover, the expansion Plaintiff now seeks, a freeze reaching the general assets of persons and entities it has not sued, is relief a federal court has no equitable power to grant before judgment where, as here, Plaintiff identifies no cognizable equitable interest in the additional assets it asks this Court to reach. Grupo Mexicano holds that a court "had no authority to issue a preliminary injunction preventing [defendants] from disposing of their assets pending adjudication of [a] contract claim for money damages," because such relief "was historically unavailable from a court of equity." Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 333 (1999). A general creditor without a judgment has no cognizable interest, either at law or in equity, in the property of his debtor. Id. at 321. Courts in this Circuit enforce that limit: "a federal court has no authority to freeze a defendant's funds to help ensure satisfaction of a judgment," absent a "cognizable equitable claim" with "a sufficient nexus" to "specific assets." GridKor, LLC v. Gorbach, No. 23-3563, 2024 WL 4309985, at 8 (E.D. Pa. Sept. 26, 2024); accord Su v. Comprehensive Healthcare Mgmt. Servs., LLC, No. 2:18-CV-1608, 2023 WL 6518955, at 4 (W.D. Pa. Oct. 5, 2023) (reasoning that "a debt claim does not, before reduction to judgment, authorize prejudgment execution against the debtor's assets"). Mansfield's claim is an unsecured, disputed contract claim; it meets none of the exception's conditions.

Plaintiff has not shown why the assets and financial condition of persons it has not named are relevant to any claim it has pleaded, or proportional to the needs of this case. Discovery into a party's assets is what Rule 69(a)(2) affords a judgment creditor, and any narrower pretrial discovery must be justified independently under Rules 26 and 45 and this Court's scheduling order. A contempt motion is not a substitute for that process.

Plaintiff's own footnote confirms that Plaintiff itself recognized this relief required a separate request. It states that Plaintiff "intends to file a motion for expedited discovery shortly." Mem. at 10 n.1. A party that must still move for expedited discovery does not have it.

**C. The request to route KRSM's customer receipts is new mandatory relief.**

Plaintiff asks this Court to direct that "all payments received by KRSM on account of the fuel it lifted from Mansfield shall be deposited into the M&T Bank account." Proposed Order ¶5; Mot. ¶6(g). That is prejudgment control of an operating company's incoming revenue, on a contempt motion, without a pleaded equitable claim to those receivables and without any of the showings such relief would require. Grupo Mexicano forecloses it, 527 U.S. at 333, and it would enlarge the order rather than enforce it, Harris, 47 F.3d at 1350.

**D. Plaintiff's Pattern of Abuse, Exaggeration and Misrepresentation to the Court.**

First and foremost, the Complaint itself includes patently impertinent matter concerning the politically-charged 'Freedom Fuels' and the Trump administration. This accounting dispute has nothing to do with either and reflects an irrational obsession that has now imbued their litigation strategy.

By means of example, the following is offered to demonstrate how Plaintiff is unjustifiably seeking to make the above-captioned action something much more than the accounting dispute. In paragraph 13 of the Complaint alleges that KRSM sold fuel cheaply "in order to garner media attention," names a website, and cites a newspaper article by web address. Paragraph 14 alleges that KRSM "was able to sell such fuel for such low prices and garner such publicity because it never paid Plaintiff for such fuel." Neither paragraph states an element of any of the six counts, and no one swore to either one, because the Complaint calls itself verified and contains no verification.

Then, on August 27, Plaintiff's counsel agreed on the record that a political point in this case "would be irrelevant," and this Court said it "would carry no weight." Tr. 120:19-22. Unfortunately, five days later, Plaintiff filed the instant Motion and asked this Court to imprison a defendant against whom he has pleaded no claim, and to reach every account of every entity Defendants are said to control. As thoroughly discussed above, neither request concerns a decree that was disobeyed. Defendants reserve all rights concerning extrajudicial publications and communications about this litigation, do not ask the Court to decide any such matter on this record, and reserve the right to seek relief on a properly supported application.

It has now become apparent that counsel for Plaintiff is willing to utter baseless claims solely to foster a national media hysteria to a dispute over approximately six weeks of properly contested charges. At this juncture, there is no disputing that the sworn description of the M&T bank email exchange included in Exhibit C is not the only misrepresentation in this matter. By way of illustration:

- The Joint Rule 26(f) Report tells the Court that the account "is now in the name of a wholly different entity," and that entities of that name "are also subject to judgment in other federal courts." Both sentences are followed by the citation "ECF 35." ECF No. 42 at 3. The Order of August 28 has two numbered paragraphs. It says neither thing and makes no finding on either subject.

- Paragraph 3 of the same declaration swears that the Order was served "by personal service on Cristian Curtean, Associate Banker" at an address in Bensalem, Pennsylvania, and identifies Exhibit B as the proof. ECF No. 37-1 ¶3. Exhibit B is an email from Plaintiff's paralegal to two different bank employees in Bridgeport, Connecticut, attaching the Order and asking one of them to "acknowledge receipt." ECF No. 37-4. Defendants raise no objection to service and make no argument about it. The point is only that the sworn description of the exhibit does not match the exhibit.

- The same Report tells the Court that Mr. Kazmi "admit[ted] under oath that at least $3 million of the Mansfield invoices are undisputed." ECF No. 42 at 4. Plaintiff's own witness testified that he asked Mr. Kazmi for the undisputed amount and that Mr. Kazmi answered, "I don't know what the undisputed amount is." Tr. 147:6-8. The three million dollar figure appears in the record in two places. First, as a preliminary

> analysis of an accounting not yet complete and prior to taking into consideration any offsets that may arise from the impact of Plaintiff's own internal breakdown on the collectability of amounts delivered during the disputed period. Then, three million dollar figure appears in the record as a proposal by Plaintiff's counsel in rebuttal closing: "my client will take three million dollars today and this case is settled." Tr. 164:15-16. Defendants do not adopt that figure as a final accounting, and nothing here should be read as an admission of any amount.

Defendants seek no relief on account of these matters and ask the Court to draw no inference beyond the one the governing standard requires. They are set out because this motion asks the Court to find a violation by clear and convincing evidence, on Plaintiff's account of documents this Court can read for itself.

The same assertion has been pressed outside this courtroom, to four national outlets immediately after the conclusion of the August 27th hearing and then in the five days after this Court took evidence.

By means of example, Politico reported on August 28, 2026 that Plaintiff's counsel stated: "KRSM has failed to pay for fuel that they lifted off of Mansfield's account. That is not an accounting dispute." The Washington Post reported the following day that he had given it a statement, identifying him by name as counsel for Plaintiff. On August 31, 2026 the Associated Press published a written statement it attributed to "Lawyers for Mansfield," which reads in relevant part: "KRSM's statements are factually inaccurate and highly misleading. This is not an accounting dispute. If it were, KRSM would have paid the undisputed amount." Newsweek published the same statement on September 1, 2026, attributing it to him by name as something he "told Newsweek."

Set that beside what had already happened in this courtroom.

On the first morning of the hearing, when Defendants' counsel stated that "there's no dispute that in this six-week period, the failure to invoice was entirely Mansfield's fault," this Court answered: "Agreed." Tr. 7:6-8.

Later the same morning, Plaintiff's counsel told this Court of the invoices, "Not one of them was disputed." The Court answered: "I was trying to cut to the heart of the dispute and see where we are, and where we are is in a dispute." Tr. 17:21-23.

That statement rests on an identified undisputed amount. Plaintiff's own witness testified that when he asked Mr. Kazmi to state the total undisputed amount, Mr. Kazmi answered that he did not know what it was. Tr. 147:6-8, set out above.

One further matter of sequence. The written statement published on August 31 asserts that the complaint's facts "have not changed." Five days earlier Plaintiff had filed its own "Reconciliation of Stated Balances," a document that exists because the amount had been stated four different ways in five weeks. ECF No. 32-1 at 6. The public statement does not mention it.

Defendants plead no claim arising from these statements, seek no relief on account of them, ask this Court to find no violation of any rule, and reserve all rights. The accompanying pages are offered only for the fact and content of publication, and not for the truth of anything asserted in them. They are set out for one reason. Plaintiff asks this Court to find a violation by clear and convincing evidence, on the premise that an identified undisputed amount was simply withheld. That premise was tested under oath in this courtroom on August 27. The evidentiary record made here, and not a characterization of it made elsewhere, should control this motion.

**CONCLUSION**

The motion should be swiftly denied in its entirety.

Dated: September 15, 2026

Respectfully submitted,

/s/ Paul J. Toner
Paul J. Toner, Esquire
TONER LAW GROUP, PLLC
One Penn Square West
30 South 15th Street, Suite 1601
Philadelphia, Pennsylvania 19102
(215) 282-8525
paul@tonerlaw.com

Counsel for Defendants
KRSM Inc. and Syed Kazmi

**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | Civil Action No. 2:26-cv-06072-GAM |
| v. | |
| KRSM INC. and SYED KAZMI, Defendants. | |

**CERTIFICATE OF SERVICE**

I certify that on the date set forth below I caused a true and correct copy of the foregoing Defendants' Memorandum in Opposition to Plaintiff's Motion for an Order to Show Cause to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and to be served by electronic mail upon Urs Broderick Furrer, Esquire, Harriton & Furrer, LLP, UBFurrer@HFLawLLP.com; Frederick P. Santarelli, Esquire, Elliott Greenleaf, P.C., FPSantarelli@elliottgreenleaf.com; and Kyle M. Elliott, Esquire, Elliott Greenleaf, P.C., kme@elliottgreenleaf.com, counsel for Plaintiff.

Dated: September 15, 2026

Respectfully submitted,

/s/ Paul J. Toner
Paul J. Toner, Esquire
TONER LAW GROUP, PLLC
One Penn Square West
30 South 15th Street, Suite 1601
Philadelphia, Pennsylvania 19102
(215) 282-8525
paul@tonerlaw.com

Mauro G. Tucci, Jr., Esquire
CHIESA SHAHINIAN & GIANTOMASI PC
mtucci@csglaw.com

Counsel for Defendants
KRSM Inc. and Syed Kazmi