IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : | Civil Action No. 2:26-cv-06072-GAM |
| v. | : | |
| KRSM INC. and SYED KAZMI, Defendants. | : | |

**ORDER**

**AND NOW**, this ____ day of _____________, 2026, upon consideration of Defendant KRSM Inc.'s Motion to Quash the September 17, 2026 Subpoenas Pursuant to Fed. R. Civ. P. 45(d)(3), Impose Protective Order and for Sanctions, and any response thereto, it is hereby **ORDERED** that the Motion is **GRANTED** as follows:

1. Pursuant to Rule 45(d)(3)(A)(iii), the subpoenas to Shamik Kazmi (Requests 8 through 13) and to Universal Property Services (Requests 6 and 7) — which command production of documents prepared by counsel for KRSM, as well as documents concerning counsel's engagement, payment, and electronic-filing access — are **QUASHED**.

2. The remaining subpoenas are **QUASHED** and shall be immediately withdrawn by Plaintiffs with a right to reissue only as to documents relating to: (a) the terminal loading data (bill-of-lading number, lift date and time, and product and gallons for each load) reflecting the Mansfield fuel lifted May 21–July 7, 2026; (b) Request 4 of the M&T Bank subpoena; (c) Request 6 of the M&T Bank subpoena; and (d) Request 8 of each carrier subpoena. In the alternative, the subpoenas are **MODIFIED** to those categories and a protective order shall issue under Rule 26(c). The demands for suspicious-activity reports (M&T Request 11), for online-banking credentials (M&T Request 2), for the destination or onward resale of product after it left the terminal, for the formation, ownership, capitalization, and general financial-account records of the non-party recipients, and for press, governmental, and below-cost-pricing communications are **QUASHED**; and the "Relevant Period" is limited to May 21, 2026 through the date of the subpoenas.

3. It is hereby ORDERED that Plaintiff is hereafter precluded from issuing any discovery on third parties concerning the business operations of any third party unless that activity involves or includes KRSM;

4. Plaintiff's counsel shall pay KRSM the reasonable attorneys' fees and costs in the amount of $5,000.00 for bringing this Motion.

BY THE COURT:

______________________________
Gerald Austin McHugh, U.S.D.J.

**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : | Civil Action No. 2:26-cv-06072-GAM |
| v. | : | |
| KRSM INC. and SYED KAZMI, Defendants. | : | |

**DEFENDANT, KRSM INC.'S MOTION TO QUASH THIRD-PARTY SUBPOENAS, IMPOSE PROPOSED PROTECTIVE ORDER AND AWARD SANCTIONS FILED IN ACCORDANCE WITH FED. R. CIV. P. 45(d)(3)**

Defendant, KRSM Inc. ("KRSM"), by and through undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 45(d)(3), to quash the seven third-party subpoenas Plaintiff issued on September 17, 2026 and served on September 18, 2026; or, in the alternative, for an order modifying those subpoenas and to impose a protective order under Federal Rule of Civil Procedure 26(c); and for an award of the reasonable attorneys' fees and costs KRSM incurred in bringing this Motion, pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 45(d)(1), Federal Rule of Civil Procedure 26(g)(3), and the Court's inherent authority. The grounds are set forth in the accompanying Memorandum of Law, the exhibits filed herewith, and the record in this action.

WHEREFORE, for the reasons more fully elaborated on in the corresponding Memorandum of Law filed contemporaneously herewith, KRSM respectfully requests that the

Court enter the accompanying proposed Order (1) quashing the third-party subpoenas dated September 17, 2026 and served upon M&T Bank, Freedom Fuel Network LLC, Shamik Kazmi, MR3 Logistics LLC, Windson Trucking LLC, Universal Group Company, Inc., and Universal Property Services, Inc., as set forth therein, or in the alternative modifying them and entering a protective order under Rule 26(c), and (2) awarding KRSM its reasonable attorneys' fees and costs incurred in bringing this Motion, in an amount to be established by supplemental submission.

Respectfully submitted,

/s/ Paul J. Toner, Esq.

Paul J. Toner, Esq.
Toner Law Group, PLLC
One Penn Square West
paul@tonerlaw.com
*Counsel for Defendant, KRSM Inc.*

Date: September 22, 2026

**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : | Civil Action No. 2:26-cv-06072-GAM |
| v. | : | |
| KRSM INC. and SYED KAZMI, Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, KRSM INC.'S MOTION TO QUASH THIRD-PARTY SUBPOENAS, IMPOSE PROPOSED PROTECTIVE ORDER AND AWARD SANCTIONS**

## PRELIMINARY STATEMENT

The most telling thing about Plaintiff's seven subpoenas is what they demand from the defense's own files-i.e., Mansfield is seeking Defendants' privileged communications with their attorney. On their face, the subpoenas to Shamikh Kazmi and Universal Property Services command production of every draft of Defendants' court filings in this action, the identity of everyone who drafted, reviewed, or approved them, every communication with Defendants' counsel George S. Gossett, Jr., Esq., and the documents concerning his engagement, his payment, and his CM/ECF and PACER access. That is a subpoena for the attorney-client privileged communications and work product at the heart of KRSM's defense. No part of this case concerning a disputed right to a fuel payment entitles a plaintiff to its adversary's litigation file, and Rule 45(d)(3)(A)(iii) requires the Court to quash a subpoena that commands it.

While their efforts to secure discovery into attorney-client protected documents is the most outrageous and serious defect, it is not the only one. Stripped of the privileged material, the subpoenas seek an impermissible pre-judgment discovery into the assets, accounts, credit, transfers, and financial condition of four non-parties against whom nothing is pleaded. At best, Plaintiff Mansfield's subpoena to the third-party entities seeking their internal ledgers and other business records on all matters (not just KRSM) are a veiled attempt at discovery in aid of executing a judgment Plaintiff has not obtained, in a suit whose sole dispute is over the price of fuel KRSM concededly lifted over a six-week period. As a clear matter of law, Plaintiff Mansfield holds no judgment, no lien, and no security interest, and the Supreme Court has long forbidden a general creditor from using litigation to inventory a debtor's assets before judgment. But, most important, Mansfield has no conceivable right to private business records of third parties that are not first established to have some connection to Defendants and the dispute currently before the Court.

Finally, the undisputable manner in which subpoenas came to be served presents clear violations of the Rules of Civil Procedure and reveals the reckless and abusive nature of Plaintiff's current actions. Without any notice and in clear violations of Fed. R. Civ. P. 45, Plaintiff served third-party subpoenas on September 11, and Defendants only became aware of the existence of third-party subpoenas when undersigned counsel was contacted by counsel for a recipient of one of those un-noticed subpoenas. When KRSM objected, Plaintiff's counsel claimed the notice and service defects were an "oversight" and withdrew all of the improperly served Subpoenas. While conceding to their initial procedural defects, Plaintiff proceeded to simply reissue those subpoenas and an additional three third-party subpoenas on September 17. Upon notice of their new round of third-party subpoenas, Defendant KRSM requested that

Plaintiff comply with Rule 45 and not serve the new round of third-party subpoenas until it complied with Rule 45's requirement of reasonable notice and opportunity to object and schedule a meet-and-confer so the parties could attempt to narrow the scope of the proposed subpoenas and remove the patently impermissible document requests. In response, Plaintiff's counsel represented in writing, on the morning of September 18, that the subpoenas "have not been served and are not in the process of being served." Nevertheless, hours later, Plaintiff notified undersigned counsel that it no longer believed any opportunity was required to file objections and that they had proceeded to serve all seven subpoenas. That misrepresentation, and the service that contradicted it, forced this Motion and warrant sanctions.

**FACTUAL BACKGROUND**

**A. <u>The claims and their scope.</u>**

Mansfield's Complaint pleads six counts arising from the same disputed fuel transactions and the same claimed unpaid balance. Those counts are (i) Breach of Contract, (ii) Unjust Enrichment, (iii) an Action for a Price under 13 Pa. C.S. § 2709, (iv) Account Stated, (v) Conversion; and (vi) declaratory relief. (ECF No. 1.) Defendants' pending Motion to Dismiss seeks dismissal of Syed Kazmi individually and of the unjust-enrichment, conversion, and declaratory-relief counts. (ECF No. 43.) At this juncture, the pleadings are not even closed, Defendants have not yet had the opportunity to file Counterclaims, and Mansfield holds no judgment, no lien, and no security interest in any KRSM property.

**B. <u>The first Round of Improperly Noticed and Improperly Served Subpoenas – dated September 11 and all served without notice and then withdrawn.</u>**

To date, there has been a troubling pattern of claimed procedural 'breakdowns' by Plaintiff. Rather than being a series of mistakes or oversights, it is clear that Plaintiff Mansfield is seeking to secure confidential and otherwise protected information by disregarding the Rules of Civil Procedure. A review of the process and procedure followed for its first round of – now withdrawn – third-party subpoenas is revealing.

On September 11, 2026, Plaintiff's counsel caused a document subpoena to be served on nonparty Freedom Fuel Network LLC without serving on Defendants the notice and copy that Rule 45(a)(4) requires before service on the recipient. After being contacted by counsel for Freedom Fuel, Defendants issued an email to counsel for Plaintiff demanding, inter alia, the immediate withdrawal of the improperly issued subpoenas. A copy of the email from Paul J. Toner, Esquire, to Urs Broderick Furrer, Esquire is attached hereto as **Exhibit "A"**. Plaintiff's counsel responded the same day and conceded that the subpoenas to Freedom Fuel Network, M&T Bank, and Universal Property Services had been served through "an oversight in coordination with local counsel" and were "withdrawn, effective immediately," and stated that "[w]hen Plaintiff re-serves, you will receive Rule 45(a)(4) notice, with copies, before service." A copy of Plaintiff's notice letter to all recipients of an improper subpoena are attached hereto as **Exhibit "B"**.

**C. <u>The Second Round of Improperly Noticed and Improperly Served Subpoenas – dated September 17.</u>**

By letter dated September 17, 2026, Plaintiff's counsel stated that Plaintiff was "re-serving" the withdrawn subpoenas with Rule 45(a)(4) notice, together with new subpoenas, seven in all, directed to M&T Bank, Freedom Fuel Network LLC, Shamik Kazmi, MR3

Logistics LLC, Windson Trucking LLC, Universal Group Company, Inc., and Universal Property Services, Inc. A copy of the Instant, Second Round of Proposed Third-Party Subpoenas are attached hereto as **Exhibit "C"**.

Thereafter, on the morning of September 18, 2026, undersigned counsel asked Plaintiff's counsel to confirm that none of the subpoenas attached to the prior evening's email "have been issued or sent for delivery," so that the parties could confer and narrow the requests before service. A copy of the email exchange from September 18, 2026 is attached hereto as **Exhibit "D"**. Later that morning, Plaintiff's counsel responded and specifically confirmed that the subpoenas **"have not been served and are not in the process of being served."** (Ex. D.) Then, roughly two hours later, Plaintiff's counsel wrote that **"even if they are not formally served at this time, there is no reason to delay any further in serving these third party subpoenas," and that "[a]fter the subpoenas are served, we'll let you know."** A copy of the mail from Frederick Santarelli, Esquire, dated September 18, 2026 is attached hereto as **Exhibit "E"**. Contemporaneous with his indication that Plaintiff would 'let [us] know' when they placed the subpoenas out for service, it is now clear that Plaintiff had already proceeded to serve all seven subpoenas that same day, before the parties met and conferred. While under the assumption that Plaintiff would follow through with their representation that no attempt would be made to serve the new Third-Party Subpoenas, Defendants prepared a letter outlining their objections to the newly proposed subpoenas and proposed areas where the parties could reach agreement. A copy of the Response Letter is attached hereto as **Exhibit "F"**. On September 21, 2026, undersigned counsel wrote and set out KRSM's request-by-request objections, proposed a telephone conference, and accepted Plaintiff's proposal for a meet-and-confer on September 23, 2026. The parties' September 18–21, 2026 email exchange is **Exhibit "G"**.

It is now clear that by the time counsel for Defendants had issued their letter detailing all objections, Plaintiff had already proceeded to service all subpoenas that they had confirmed on September 18, 2026 had "not been served and are not in the process of being served."

**D. <u>The Clearly Improper Scope of the Now Issued Third-Party Subpoenas.</u>**

As set forth in the KRSM's meet-and-confer letter, the following documents sought for production through the September 18, 2026 subpoenas are improper.

**i. Attorney-Client Communications**

The subpoena to Shamik Kazmi (document requests 8 through 13) and the subpoena to Universal Property Services (document requests 6 and 7) command production of the defense's own litigation materials. They demand all drafts, final versions, and all documents concerning the preparation and filing of, Defendants' court submissions (ECF Nos. 25, 26, 26-1 through 26-13, and 27), together with the identity of everyone who drafted, reviewed, approved, or filed them. They demand all drafts of the August 17, 2026 letters sent under the name of defense counsel George S. Gossett, Jr., Esq. They demand all communications with Mr. Gossett and all documents concerning his engagement or payment. And they demand all documents concerning any CM/ECF or PACER account, including Mr. Gossett's. (Ex. "C")

**ii. Business Records of Third-Party Corporations**

Read together, Schedules A of each of the Subpoenas directed to Universal Group Company, Inc., Universal Property Services, Inc, Windson Trucking, LLC, MR3 Logistics, LLC and Freedom Fuel Network, LLC, include broad document requests that unavoidably seek documents that will be of a highly confidential nature to the identified third-party recipients.

When the definitions of "Kazmi Parties[1]," "Kazmi Affiliated Entities[2]" and "Participating Station[3]" is taken into account, the scope of the requested documents makes sweeping and improper demands for:

a) the financial, business and corporate records of entities with no tangential relationship to the outstanding payment for fuel lifted from May 21, 2026 to July 7, 2026;

b) every entity in which Syed Kazmi or Shamik Kazmi ever held an interest, office, or signatory authority;

c) every deposit, checking, savings, money-market, brokerage, merchant-services, and payment-processor account of those persons and entities, with account-opening documents, signature cards, and beneficial-ownership certifications;

d) online banking credentials;

e) every loan, line of credit, and credit card, with the financial statements submitted to obtain them, and every safe-deposit box; and,

f) the source of one entity's initial capitalization and the general ledgers and bank reconciliations of two businesses that have not been sued. It reaches the confidential branding, dealer, and supply contracts between Freedom Fuel Network and the retail stations and suppliers in its network.

**LEGAL STANDARD**

On a timely motion, Rule 45(d)(3)(A) requires the Court to quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Rule 45(d)(3)(B) permits the Court to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research,

---

[1] "**Kazmi Parties**" means KRSM, Syed Kazmi, Shamik Kazmi, and the Kazmi Affiliated Entities, collectively and individually.

[2] "**Kazmi Affiliated Entities**" means Universal Property Services, Inc.; Universal Group Company, Inc.; Riar HR LLC; Diwan Petrol (also spelled as Dawaan and any entity of similar name); Freedom Fuel Network LLC and any entity doing business as "Freedom Fuel" or "Freedom Fuel Network"; and any other corporation, limited liability company, partnership, trust, or other entity in which Syed Kazmi or Shamik Kazmi holds or held, directly or indirectly, an ownership interest, officer or director position, signatory authority, or management role, at any time during the Relevant Period.

[3] "**Participating Station**" means each retail fuel station that is, was, or has been held out as part of the Freedom Fuel Network, including each location listed at freedomfuelnetwork.com at any time since June 1, 2026.

development, or commercial information." A subpoena must in any event "fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013).

KRSM has standing to bring this Motion. Although "a party does not have standing to quash a subpoena served on a third party," an exception "permits a party to move to quash when it claims some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty." Id. KRSM claims exactly that. It asserts the attorney-client privilege and work-product protection in its own litigation materials, and a personal right in the bank-account records the subpoenas seek. The Third Circuit has likewise recognized that where "a claim of property or privilege is made with respect to a third party subpoena[,] . . . the party claiming the property right or privilege may" challenge it. Wm. T. Thompson Co. v. Gen. Nutrition Corp., 671 F.2d 100, 103 (3d Cir. 1982). "Personal rights claimed with respect to bank account records give a party sufficient standing to challenge third-party subpoenas served upon financial institutions holding such information." ITOCHU Int'l, Inc. v. Devon Robotics, LLC, 303 F.R.D. 229, 232 (E.D. Pa. 2014). Where a party legitimately claims such a right, the Court may also "manage these risks" through "a protective order." First Sealord Sur., 918 F. Supp. 2d at 383–84.

**ARGUMENT**

**A. The Second Batch of Third-Party Subpoenas must be Quashed Because they Command Production of Privileged Attorney-Client Communications and Work Product.**

Rule 45 "requires the Court to quash or modify a subpoena that 'requires disclosure of privileged or other protected matter.'" ITOCHU Int'l, Inc., 303 F.R.D. at 232. The subpoena to Shamik Kazmi (Requests 8 through 13) and the subpoena to Universal Property Services

(Requests 6 and 7) do precisely that. They demand the drafts and the preparation of Defendants' own court filings, the identity of everyone who worked on them, the communications between Defendants and their counsel, and the terms of counsel's engagement and payment. Those are core attorney-client communications and attorney work product.

The Third Circuit's decision in Sporck v. Peil is dispositive. It holds that "the selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product," because "[i]n selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case." Id., 759 F.2d at 316. Opinion work product, which the court described as "an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws," "is accorded an almost absolute protection from discovery." Id. A subpoena that reaches for the drafting of an adversary's briefs and the adversary's communications with its own lawyer seeks the most protected material the work-product doctrine recognizes. There is no fuel payment exception to the attorney-client privilege, and no showing of substantial need could justify handing one litigant the other's litigation file. These Requests must be quashed.

**B. The Subpoenas must be Quashed Because they seek Confidential Business Records of Third Parties Far Beyond those Relevant to the Instant Payment Dispute.**

The five entity subpoenas reach far past the fuel payments at issue and demand the private business records of companies that have no connection to the six-week fuel account dispute.

As a general rule, the Eastern District recognizes that “the standards for non-party discovery require a stronger showing of relevance than for party discovery,” *See, e.g.,* In re

Domestic Drywall Antitrust Litig., 300 F.R.D. 234 (E.D. Pa. 2014). *See also*, Avago Technologies U.S., Inc. v. IPtronics Inc. , 309 F.R.D. 234 (E.D.Pa. 2014) (holding that "[b]roader restrictions may be necessary to prevent a non-party from suffering harassment or inconvenience," and that undue burden "encompasses situations where the subpoena seeks information irrelevant to the case").

**i. The Subpoenas Seek to Expose the Business Operations, including contracts, between multiple third-party companies and financial information from and of companies without any connection to Defendants in a Patent Attempt to Harass and Intimidate Defendants and Secure Confidential Information from the Business Competitors of Plaintiff.**

Plaintiff served document subpoenas on Universal Group Company, Inc., Universal Property Services, Inc., Windson Trucking, LLC, MR3 Logistics, LLC, and Freedom Fuel Network, LLC. Not one of these entities is a defendant, not one is alleged to have lifted or paid for Mansfield Fuel, and not one is alleged to owe Mansfield anything. Each subpoena nonetheless commands production of the recipient's own formation and ownership records, its bank and brokerage accounts, its internal ledgers, and its contracts with persons other than Mansfield, none of which bears on whether KRSM must pay what Plaintiff Mansfield is now demanding for the fuel it lifted between May 21, 2026 and July 7, 2026. (Ex. C)

The individual requests prove the point. The MR3 Logistics subpoena, Request 4, demands all contracts, rate agreements, carrier agreements, and credit applications between MR3 and any Kazmi Party in effect during the Relevant Period, with no limitation to the Mansfield Fuel, and its Request 6 demands the identity of every retail location to which MR3 delivered fuel for any Kazmi Party "whether or not the fuel was Mansfield Fuel." The Windson Trucking subpoena repeats those same demands in its Request 4 and Request 6. The Universal Group Company subpoena, Requests 1, 2, 3, and 8, and the Universal Property Services subpoena,

Requests 1, 2, 3, and 10, sweep in each company's formation and ownership documents, every bank account they hold, every transfer of value between them and any Kazmi Party, and each company's "general ledger, accounts-payable and accounts-receivable ledgers, and bank reconciliations for the Relevant Period." The Freedom Fuel Network subpoena, Requests 1, 3, 7, and 8, reaches that company's formation and ownership, its confidential branding, dealer, and supply contracts, every bank account in its name, and even "the source of Your initial capitalization." (Ex. C) None of these records has anything to do with KRSM, Mansfield, or the fuel Mansfield sold.

Plaintiff also uses the subpoenas to inventory bank accounts that have no connection to KRSM or to Mansfield Fuel. The M&T Bank subpoena, Request 7, commands account records for "every other deposit, checking, savings, money-market, or investment account held at M&T Bank" by any Kazmi Party or on which any Kazmi Party is a signer, together with account opening documents, signature cards, and beneficial ownership certifications. Request 2 demands the account holder's "online-banking user credentials." Request 9 demands every loan, line of credit, and credit card extended to any Kazmi Party along with the financial statements submitted to obtain them, and Request 10 reaches "any safe-deposit box held by or accessible to any Kazmi Party at M&T Bank." (Ex. C) Those accounts are not the Subject Account, they did not receive the Mansfield Fuel, and they are not alleged to hold a dollar that Mansfield is owed.

None of this was necessary. Before Plaintiff served these subpoenas, KRSM sent a detailed letter identifying each objectionable request and asking Plaintiff to withdraw or narrow it so that the parties could resolve the dispute without motion practice. (Ex. F) Rather than confer, Plaintiff served all seven subpoenas the same day. The result is that five non-parties who

owe Mansfield nothing and have no stake in this fuel dispute have been forced to retain counsel and incur legal fees to respond to demands that never should have issued.

**ii. The subpoenas Constitute a pre-judgment discovery of inventory of assets and financial condition of Third Parties not relevant to any pleaded claim.**

The balance of the subpoenas seeks a pre-judgment inventory of the assets, accounts, credit, transfers, and overall financial condition of KRSM and of the non-party recipients. None of that is relevant to whether KRSM paid for fuel, and a subpoena that exceeds the scope of Rule 26(b)(1) is subject to quashal. First Sealord Sur. v. Durkin & Devries Ins. Agency, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013).

At this juncture, Mansfield is a general creditor that holds no judgment, no lien, and no security interest.

The Supreme Court has held that "a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc., 527 U.S. 308, 319-20 (1999). Allowing "any prowling creditor, before his claim was definitely established by judgment, . . . to file a bill to discover assets, or to impeach transfers, or interfere with the business affairs of the alleged debtor," the Court warned, "would manifestly be susceptible of the grossest abuse." Id. at 330. Relief that reaches a debtor's assets before judgment "deals with a matter lying wholly outside the issues in the suit." De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945). Discovery of assets and financial condition is a post-judgment tool, available to a judgment creditor "[i]n aid of the judgment or execution" under Rule 69(a)(2), not a pre-judgment entitlement. As recognized by the Court in *Talentscale, Inc.v. Aery Aviation, LLC*, the “[e]ntry of a money judgment is the key that unlocks

the discovery process authorized by Rule 69(a)(2)," and "[a]bsent a federal money judgment, a litigant may not avail himself of discovery under Rule 69(a)(2)." 802 F. Supp. 3d 1370 (N.D. Fla. 2025).

As such, the following asset-and-account categories should be quashed. From the M&T Bank subpoena, Request 1 (as to any period before January 1, 2026 and the multi-year ownership history) and Requests 2, 3, 5, and 7 through 10. From the Universal Property Services subpoena, Requests 1, 2, 3, and 10. From the Universal Group Company subpoena, Requests 1, 2, 3, and 8. From the Freedom Fuel Network subpoena, Requests 7 and 8. And from the Shamik Kazmi subpoena, Requests 1, 2, and 4.

**C. <u>The Court should award KRSM the fees it incurred in bringing this Motion</u>.**

It is now unavoidable that Plaintiff's counsel represented in writing that the subpoenas "have not been served and are not in the process of being served," and then served all seven the same day, before the parties met and conferred, and while KRSM's request to hold service was pending, mooting the conferral the parties were arranging and forcing this Motion.

Unfortunately, their misrepresentation concerning service of their second batch of subpoenas does not stand alone. It followed a pattern.

By means of summary review, Plaintiff admittedly served the September 11 subpoena without the notice Rule 45(a)(4) requires. Through their now withdrawn *Motion for Leave to Conduct Discovery*, counsel for Plaintiff clearly mispresented to the Court that Defendants had not responded to a request to meet and confer when, in fact, the following response had been provided the very next business day: "I can speak with you concerning a discovery schedule on Tuesday, September 8th from 8AM to 11AM and then on Thursday, September 10th from 9AM to 12:00PM." Moreover, Plaintiff responded to a Rule 11(c) notice, which was issued by

Defendants on September 9, 2026 (**Exhibit "H"**), by admitting to their prior inaccurate representations, but then proceeded to file what should have been an "Errata Notice" as an "Affidavit." Plaintiff's now established pattern of false representation and flagrant disregard of the Rules of Civil Procedure cannot be ignored. And, as the Court is now well aware, this case began with Plaintiff's now unavoidable misrepresentation that Defendants had received notice of an *ex parte* TRO application when they in fact had received none. At this stage, their course of conduct warrants a fee award on several independent grounds.

A "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense," and the Court "must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply," a sanction that "may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45. Serving seven sweeping subpoenas after representing they would not be served, and after already having served the September 11 subpoena without the notice Rule 45(a)(4) required, breached that duty.

28 U.S.C. § 1927 permits the Court to require counsel who "multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC, 287 F.3d 279, 288 (3d Cir. 2002). In this Circuit that requires the four elements the statute states and a finding of bad faith. Id. Where Rule 45 misconduct "led to the parties filing additional motions, the Court holding hearings, and additional action by the Court," counsel has "multiplied proceedings, [ ] in an unreasonable and vexatious manner, [ ] thereby increasing the cost of the proceedings," and fees are properly awarded. Price v. Trans Union, L.L.C., 847 F. Supp. 2d 788, 795-96 (E.D. Pa. 2012). That is precisely what occurred

here. Counsel's misrepresentation and contradicting service forced motion practice that KRSM's conferral proposal was designed to avoid.

The distinction from a mere negligent notice slip is dispositive. In Spencer v. Steinman, the court declined a fee sanction only because § 1927 was inapplicable where counsel "did not multiply the proceedings" and the record showed no knowing or intentional violation. Id. No. 2:96-CV-1792 ER, 1999 WL 33957391 at *3 (E.D. Pa. Feb. 26, 1999). Here, counsel served subpoenas it had affirmatively represented would not be served, against the backdrop of the repeated misrepresentations, the earlier notice violation described above, and the service multiplied the proceedings.

Courts in this District award fees where a subpoena is served without notice and the conduct is "not inadvertent or negligent, but rather . . . intentional and undertaken in bad faith." Mid-Atl. Constructors Inc. v. Stone & Webster Const., Inc., 231 F.R.D. 465, 467 (E.D. Pa. 2005). The Court also retains inherent power to shift fees when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," including where it "delays or disrupts the litigation." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991). The pattern recounted above is the sort of bad-faith, litigation-multiplying conduct that supports an award under both § 1927 and the Court's inherent power. That pattern includes an *ex parte* freeze obtained without the notice Defendants were entitled to, a misrepresentation to the Court about the meet-and-confer, a subpoena served in disregard of Rule 45(a)(4), and now the service of subpoenas counsel had represented would not be served.

Finally, the subpoenas' demands for the defense's privileged files and a pre-judgment asset inventory were "interposed for [an] improper purpose" and are "unreasonabl[e] [and] unduly burdensome" within the meaning of Rule 26(g)(1). A certification that violates the rule

"without substantial justification" requires the Court to "impose an appropriate sanction," which "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

The fee KRSM seeks is narrow and compensatory. It is limited to the reasonable fees and costs incurred in preparing and filing this Motion, in an amount to be established by supplemental submission.

**CONCLUSION**

For the foregoing reasons, KRSM respectfully requests that the Court quash the September 17, 2026 subpoenas as set forth in the accompanying proposed Order, beginning with the demands for privileged and work-product material, or, in the alternative, modify them and enter a protective order under Rule 26(c), and award KRSM the reasonable attorneys' fees and costs it incurred in bringing this Motion.

Respectfully submitted,

/s/ Paul J. Toner

Paul J. Toner, Esquire
TONER LAW GROUP, PLLC
One Penn Square West
30 South 15th Street, Suite 1601
Philadelphia, Pennsylvania 19102
(215) 282-8525
paul@tonerlaw.com
*Counsel for Defendants*
*Syed Kazmi and KRSM Inc.*

Dated: September 22, 2026

**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY | : | |
| OF GAINESVILLE, INC., | : | |
| Plaintiff, | : | Civil Action No. 2:26-cv-06072-GAM |
| | : | |
| v. | : | |
| | : | |
| KRSM INC. and SYED KAZMI, | : | |
| Defendants. | : | |

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule of Civil Procedure 26.1(f), undersigned counsel certifies that KRSM conferred, and attempted in good faith to confer, with Plaintiff's counsel to resolve the subject matter of this Motion without Court action — including a conference call on September 21, 2026 — and that the parties have been unable to resolve the dispute, Plaintiff having served the subpoenas notwithstanding KRSM's request that service be held so the parties could confer.

/s/ Paul J. Toner
Paul J. Toner, Esquire
TONER LAW GROUP, PLLC
(215) 282-8525
paul@tonerlaw.com
*Counsel for Defendants*
*Syed Kazmi and KRSM Inc.*

Dated: September 22, 2026

**TONER LAW GROUP, PLLC**
By: Paul J. Toner, Esquire (Atty. I.D. 94185)
Michael P. McIlhinney, Esquire (Atty. I.D. 93246)
Kilian C. Teschko, Esquire (Atty. I.D. 332358)
One Penn Square West
30 S 15th Street, Suite 1601
Philadelphia, PA 19102
T. 215.282.8525
E. paul@tonerlaw.com *Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., Plaintiff, | : |
| v. | : Civil Action No. 2:26-cv-06072-GAM |
| KRSM INC. and SYED KAZMI, Defendants. | : |

**CERTIFICATE OF SERVICE**

I certify that on the date set forth below I caused a true and correct copy of the foregoing Defendants' Motion to Quash and for Sanctions and Memorandum of Law in Support to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record, and to be served by electronic mail upon Urs Broderick Furrer, Esquire, Harriton & Furrer, LLP, UBFurrer@HFLawLLP.com; Frederick P. Santarelli, Esquire, Elliott Greenleaf, P.C., FPSantarelli@elliottgreenleaf.com; and Kyle M. Elliott, Esquire, Elliott Greenleaf, P.C., kme@elliottgreenleaf.com, counsel for Plaintiff.

/s/ Paul J. Toner
Paul J. Toner, Esquire
TONER LAW GROUP, PLLC
(215) 282-8525
paul@tonerlaw.com
*Counsel for Defendants Syed Kazmi and KRSM Inc.*

Dated: September 22, 2026