**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MANSFIELD OIL COMPANY OF GAINESVILLE, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**KRSM INC., SYED KAZMI, SHAMIKH KAZMI, UNIVERSAL PROPERTY SERVICES, INC., UNIVERSAL GROUP COMPANY, INC., UNIVERSAL GROUP COMPANY LEASEHOLDS, INC., and UNIVERSAL GROUP COMPANY 1636 HOLDINGS, INC.,**<br><br>**Defendants.** | **: Civil Case No.: 2:26-cv-06072-GAM** |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Mansfield Oil Company of Gainesville, Inc. ("Plaintiff" or "Mansfield"), through its attorneys, Harriton & Furrer, LLP and Elliott Greenleaf, P.C., and by way of this First Amended Complaint against Defendants KRSM Inc., Syed Kazmi, Shamikh Kazmi, Universal Property Services, Inc., Universal Group Company, Inc., Universal Group Company Leaseholds, Inc., and Universal Group Company 1636 Holdings, Inc. (collectively, "Defendants") states as follows:

### <u>Jurisdiction and Venue</u>

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Plaintiff is a citizen of Georgia; each Defendant is a citizen of New Jersey and/or Pennsylvania.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because a substantial part of the events giving rise to the claims occurred in this District.

3. The controversies in this case are justiciable, capable of disposition and Plaintiff has a personal stake in the outcome.

**Parties**

4. Mansfield is a corporation organized and existing under the laws of the State of Georgia, with its principal place of business at 1025 Airport Parkway SW, Gainesville, Georgia 30501, and is authorized to do and doing business in the States of New Jersey and Pennsylvania.

5. Defendant KRSM Inc. ("KRSM") is a corporation with a principal business address of 1601 Princeton Avenue, Lawrenceville, New Jersey 08648, organized under the laws of the State of New Jersey on July 7, 2017 and assigned identification number 0450182281, with Syed Kazmi as its registered agent at a registered office of 117 Petal Lane, Ewing, New Jersey.

6. Defendant Syed Kazmi ("Kazmi") is President of KRSM Inc. and its sole officer and director of record, and is the registered agent, incorporator, and sole disclosed principal of Defendant UPS. Kazmi is an individual residing at 117 Petal Lane, Ewing, New Jersey. At all times relevant to this action, Kazmi personally directed, authorized, and participated in the acts and omissions of KRSM alleged herein, including the requests to lift the fuel described below, the execution of the credit and banking documents delivered to Mansfield, the disposition of that fuel, and the disposition of the proceeds of that fuel.

7. Defendant Shamikh Kazmi ("Shamikh Kazmi") is an individual and, upon information and belief, the brother of Defendant Syed Kazmi, residing at 102 Honeysuckle Dr., Ewing, NJ. Shamikh Kazmi is the registered agent, incorporator, and sole disclosed director of

Defendant UG Leaseholds and, upon information and belief, manages the operations of Defendant UPS.

8. Defendant Universal Property Services, Inc. ("UPS") is a New Jersey corporation, organized on October 23, 2018 and assigned identification number 0450316932, with Syed Kazmi as its registered agent and a registered office and principal business address at 6 Lenn Road, Allentown, New Jersey. Upon information and belief, Kazmi is the sole owner of UPS.

9. Defendant Universal Group Company, Inc. ("UGC") is the entity in whose name the M&T Bank account ending 7805 described below is presently titled, and was a named defendant, together with Kazmi, Shamikh Kazmi, and UPS, in *Petroleum Marketing Group, Inc. v. Kazmi, et al.*, No. 3:23-cv-22418 (D.N.J.). A search of the Secretary of State websites for business entity searches in New Jersey, Pennsylvania, New York, and Delaware reflects that no such entity exists. To the extent UGC is not an entity capable of suing and being sued, it is, upon information and belief, a trade or assumed name under which one or more of Kazmi, Shamikh Kazmi, and UPS transact business and hold the account described below, and the allegations pleaded herein against UGC are pleaded in the alternative against those Defendants as the true holders of the Account.

10. Defendant Universal Group Company Leaseholds, Inc. ("UG Leaseholds") is a New Jersey corporation, assigned identification number 0451114034, with Shamikh Kazmi as its registered agent at a registered office of 843 Route 40, Pilesgrove, New Jersey, and a principal business address of 934 Main Street, Darby, Pennsylvania.

11. Defendant Universal Group Company 1636 Holdings, Inc. ("UG 1636") is a New Jersey domestic profit corporation, organized on May 12, 2023 and assigned identification number 0450968845, with Mohammad Kazmi, upon information and belief a member of the same family

or alias used by Shamikh Kazmi, as its registered agent at a registered office of 6 Lenn Road, Allentown, New Jersey, the same address as UPS, and a principal business address of 1636 Old York Road, Robbinsville, New Jersey.

12. Defendants KRSM, UPS, UGC, UG Leaseholds, and UG 1636 (the "Entity Defendants") are, upon information and belief, operated by Kazmi and Shamikh Kazmi as a single common enterprise without observance of corporate separateness: among other things, (a) KRSM's own Electronic Funds Transfer Authorization Agreement given to Mansfield lists 6 Lenn Road, the registered office of UPS and UG 1636, as a "KRSM" address; (b) KRSM's invoicing, accounting, pricing, and legal correspondence are conducted through email addresses on the "upssites.com" domain operated by or for UPS, including accounting@upssites.com, sk@upssites.com, and legal@upssites.com; (c) the depository account that KRSM represented to Mansfield as its own checking account is titled in the name of UGC; and (d) funds owed to or generated by one member of the enterprise are, upon information and belief, routed through and held or used by or for the benefit of other members of the group of Defendants.

13. Kazmi, Shamikh Kazmi, UPS, and affiliated entities have previously been sued in the United States District Court for the District of New Jersey in actions alleging, among other things, undisclosed transfers among UPS and affiliated carriers and the operation of affiliated entities as alter egos, including *Petroleum Marketing Group, Inc. v. Universal Property Services, Inc., et al.*, No. 3:22-cv-02410 (D.N.J.), and *Petroleum Marketing Group, Inc. v. Kazmi, et al.*, No. 3:23-cv-22418 (D.N.J.).

14. Upon information and belief, KRSM is not authorized to do business in the Commonwealth of Pennsylvania.

15. Upon information and belief, KRSM is not authorized to do business in the State of New Jersey, having had its business standing revoked for failure to pay annual reports on February 16, 2023.

**Facts**

16. Mansfield is a distributor engaged in the marketing and distribution of petroleum products in certain states, including the States of New Jersey and Pennsylvania.

17. Among its activities, Mansfield sells petroleum products and other related products.

18. Defendant KRSM is a dealer which sells petroleum products to end users and to stations that share some common ownership with KRSM.

19. On January 25, 2022, KRSM executed Mansfield's Commercial Credit Application, which provided, in part, that "[I]n the event Mansfield extends credit to Company hereunder, and Company thereafter purchases fuel from Mansfield, Company hereby agrees that it shall be responsible to pay Mansfield for such fuel." A copy of Mansfield's Commercial Credit Application is attached hereto as **Exhibit A**.

20. On January 25, 2022, contemporaneously and in conjunction with the Commercial Credit Application, KRSM, by Kazmi as its President, executed and delivered to Mansfield the Electronic Funds Transfer Authorization Agreement (the "EFT Authorization"). A copy of the EFT Authorization is attached hereto as **Exhibit B**.

21. The credit Mansfield extended to KRSM under the Commercial Credit Application (the "Agreement") was limited. KRSM's approved credit limit was $150,000. Mansfield's consent to KRSM's lifting of fuel from Mansfield's account at any terminal was limited to, and conditioned upon, liftings within the credit Mansfield had extended and otherwise in accordance with KRSM's compliance with the terms of the Agreement and the EFT Authorization.

22. Mansfield did not at any time consent to the lifting and delivery to KRSM of fuel in excess of that limit, and no provision of the Agreement authorized KRSM to lift fuel and take possession or ownership of it, in excess of that limit.

23. The EFT Authorization identified an account at M&T Bank ending 7805 (the "Account") as KRSM's own checking account and authorized Mansfield to initiate debits against it in payment for fuel throughout the relationship. As set forth below, that representation was false: the Account is not, and upon information and belief was not at any relevant time, titled in the name of KRSM.

24. If and to the extent the Account was owned by and in the name of KRSM at the time the Agreement and EFT Authorization were executed by KRSM and Kazmi, the ownership and name of the Account were thereafter transferred to a party other than KRSM, while they intentionally concealed such transfer from Mansfield.

25. KRSM's ownership (and continued ownership) of the Account was a material inducement to Mansfield entering into and continuing to operate under the Agreement and EFT Authorization agreement. Kazmi and KRSM had been representing to Mansfield that KRSM had substantial assets backing up the relationship and the extension of credit thereunder.

26. For example, the "Consolidated Financial Statement" audited by Andy Shaw, CPA, and provided by Kazmi and KRSM represented to Mansfield that KRSM had over $30 million in cash assets alone.

27. Mr. Shaw's audited "Consolidated Financial Statement" for KRSM and Kazmi persuaded Mansfield to continue to conduct business with KRSM and Kazmi, as the financial information led Mansfield to believe that they had an abundance of liquid cash to pay for the fuel purchased from Mansfield.

28. KRSM continued to be a customer of Mansfield since entering into the Agreement and EFT Authorization, and remained a customer of Mansfield until recently.

29. At no time during the relationship did KRSM disclose the true identity of the owner of the account, or otherwise disclose the transfer of the ownership of the account and funds therein.

30. In May of 2026, Kazmi, on behalf of KRSM, requested to purchase petroleum products from Mansfield at the Sunoco LP/Energy Transfer fuel supply terminal in Aston/Twin Oaks, PA (the "Twin Oaks Terminal") for resale to its customers and for sale at its own stations.

31. As of that time, KRSM had not disclosed the true identity of the owner of the Account from which payments for the fuel would be made. Nor had Kazmi or KRSM otherwise disclose to Mansfield the transfer of ownership of the Account.

32. From May 21, 2026 – July 7, 2026, while continuing to conceal such facts from Mansfield, KRSM lifted approximately 150 loads of fuel from Mansfield's account at the Twin Oaks Terminal, totaling approximately 1,124,594 gallons with a price of approximately $3,998,868.46.

33. The fuel KRSM lifted exceeded KRSM's approved credit limit of $150,000 by more than twenty-six times. Approximately $3,848,868.46 of the $3,998,868.46 in fuel KRSM took from Mansfield's account was fuel that Mansfield had not agreed to sell to KRSM on credit, had not consented to being lifted by or delivered to KRSM, and there was no provision of the Agreement that otherwise authorized KRSM to lift such fuel.

34. KRSM knew during the course of the time it lifted the fuel during the six (6)-week period, that it had extended its authority on the $150,000 credit limit. KRSM knew it had no authority to continue lifting fuel beyond that limit.

35. At the time KRSM and Kazmi were lifting the fuel during this period, they also knew that the Account they had previously represented as being owned by KRSM when they induced Mansfield to extend credit to KRSM, was not owned by KRSM.

36. On information and belief, KRSM and Kazmi also knew that the representations of KRSM having over $30 million in cash, as stated in the "Consolidated Financial Statements" they had previously provided Mansfield, were false.

37. KRSM continued to lift fuel from Mansfield's account, knowing it had no consent or authority to do so, throughout the period May 21 through July 7, 2026. KRSM and Kazmi knew that KRSM had not paid; that it had exceeded its credit limit; and was taking the fuel without intending to pay for the fuel it had already taken. They also knew they had made false representations about ownership of the Account and the financial status of KRSM.

38. The identity of all of the stations to which Mansfield's fuel was delivered, the volumes so delivered, and the prices at which the fuel was sold and resold, bear directly upon the claims asserted herein over the unlawful taking of Mansfield's property by and with the active knowing assistance of the several Defendants herein.

39. The precise identity of the stations and parties to whom KRSM sold and delivered this fuel will be established in discovery. At this time, it is known that KRSM sold and delivered some quantities of this fuel to stations that are part of the "Freedom Fuel Network" (freedomfuelnetwork.com), which then resold the fuel at prices significantly below those charged by competing retailers.

40. KRSM was able to sell such fuel, or provide such fuel to related entities, at reduced prices or zero cost, because KRSM never paid Mansfield for it. KRSM's was enabled to undersell competing retailers who had actually paid for their fuel.

41. This is further evidence of KRSM's and Kazmi's knowledge that it had taken fuel for which it had not paid, and by knowingly underselling confirmed that they did not intend to pay.

42. Mansfield has received no payment for such fuel and, therefore, KRSM owes Mansfield at least $3,998,868.46, a fact that all Defendants know.

43. Due to a data receiving malfunction, Mansfield did not receive the information necessary for it to know of the KRSM lifting and to generate and send formal invoices to KRSM, until early July of 2026. At the same time, KRSM and Kazmi knew that they were continuing to lift Mansfield's fuel without paying and in volumes well in excess of KRMS' authorization, which they knew was limited to KRSM's $150,000 credit limit. KRSM and Kazmi also knew, throughout this time period, that the Account they had represented to Mansfield as being owned by KRSM, from which Mansfield would draw for its payment, was not owned by KRSM.

44. On or about July 8, 2026, Mansfield contacted Kazmi and KRSM to explain the data receiving issue and all invoices were promptly sent to KRSM.

45. Following receipt of the invoices from Mansfield, Kazmi and Mansfield personnel communicated regarding some minor fuel pricing discrepancies being claimed by KRSM and Kazmi. While minor pricing discrepancies are not wholly uncommon or unexpected in the industry, KRSM and Kazmi used those errors to deceitfully stall Mansfield. In any event, the invoices were adjusted accordingly.

46. On July 17, 2026, Mansfield, having revised the invoices, re-sent the revised invoices to KRSM and advised Kazmi that, barring any further discrepancies or disagreements, Mansfield would draft KRSM's account beginning on July 27, 2026. A copy of the invoices are attached hereto as **Exhibit C**.

47. Upon information and belief, and unbeknownst and undisclosed to Mansfield, by this time Kazmi had already directed M&T Bank to not release any funds from the Account.

48. Also as of this time, Kazmi and KRSM were continuing their nondisclosure of the fact that the Account was not owned by KRSM.

49. Kazmi and KRSM had no intention of paying anything for the fuel, as further confirmed by the fact that, to this day and despite Kazmi admitting under oath that at least $3 million was and remains owed, KRSM has paid nothing toward these unpaid invoices.

50. Section 6 of the Agreement provides that "Full payment of such invoice amounts shall be paid to Mansfield via EFT within ten (10) days following Purchaser's [KRSM's] receipt of invoice, with interest thereafter accruing at the rate of 1.5% per month on any unpaid balance."

51. As Mansfield had previously notified KRSM and Kazmi, Mansfield submitted draft requests to KRSM's account on July 27, 2026 and July 28, 2026. Mansfield's bank advised on July 28, 2026 that KRSM had refused the drafts.

52. By that time, Kazmi and KRSM had already instructed M&T Bank to decline any draw from the account.

53. KRSM and Kazmi had concealed and never disclosed to Mansfield, the fact that they instructed M&T Bank to decline any draws by Mansfield on the Account.

54. In multiple phone calls with Mansfield personnel from July 27-August 10, 2026, Kazmi, after having been caught, further stalled with additional misrepresentations to Mansfield, stating that KRSM will pay for all fuel that KRSM received from Mansfield.

55. Such assurances proved to be false. As of August 17, 2026 and to this day, contrary to Kazmi's and KRSM's prior false assurances as well as Kazmi's admissions under oath that KRSM owed at least $3 million for the fuel, Mansfield never received any payment whatsoever

for the referenced 150 loads of fuel that KRSM lifted from Mansfield's supply at the Twin Oaks Terminal.

**The Injunction, the Restrained Account**
**and the Disposition of the Fuel Proceeds**

56. On August 20, 2026, this Court entered a Temporary Restraining Order (ECF No. 10) restraining the disposition of funds in the Account.

57. On August 28, 2026, following an evidentiary hearing, the Court entered a Preliminary Injunction (ECF No. 35) requiring, among other things, that a balance of not less than $2,750,000.00 be maintained in the Account.

58. Kazmi stated, under penalty of perjury in this action, that KRSM "uses" the Account on a regular business basis for operations, and that KRSM made a payment to Mansfield from the Account as recently as July 30, 2026 (for an invoice not claimed in this case to be unpaid).

59. On August 31, 2026, after this Court's preliminary injunction, M&T Bank confirmed in writing that the balance in the Account was only $590,513.68 — $2,160,486.32 below the court-ordered amount; and, that no deposits had been made to the Account since entry of the Preliminary Injunction.

60. Defendants never disclosed to Mansfield that the amount in the Account was insufficient to cover the amount at issue. Nor did Kazmi or KRSM – despite testifying under oath and being present in the Courtroom throughout the preliminary injunction hearing -- disclose in testimony or otherwise to the Court during the hearing that the amount in the Account was nowhere near the amount ordered by the Court.

61. Notwithstanding the representations in KRSM's EFT Agreement, M&T Bank has advised that the Account is not titled in the name of KRSM; rather, it is in the name of Defendant UGC. This fact was concealed and never disclosed by Kazmi and KRSM to Mansfield. Nor did

they ever disclose this fact to the Court at the preliminary injunction hearing, despite Syed Kazmi testifying and being present in the Courtroom at the time of the preliminary injunction hearing, at which the Account was the focus of the proceeding at the time.

62. At relevant times UGC held and controlled, as nominee for or in concert with KRSM and Kazmi, the very Account into which the proceeds of the Mansfield fuel were to be deposited, and through which KRSM conducted its banking with Mansfield. This includes the July 30, 2026 payment to Mansfield that Kazmi has sworn KRSM made from the Account.

63. Every deposit to and disbursement from the Account was a transfer to or by Defendant UGC, with express knowledge that the Account was designated for its funds to be paid to Mansfield. By virtue of Kazmi's knowledge, each of the Defendants knew of these facts and transfers of the funds in the Account.

64. Each of the Defendants also knew of and, upon information and belief, participated in, KRSM's resale of the approximately 1,124,594 gallons of fuel it lifted from Mansfield's account at the Twin Oaks Terminal to KRSM's customers, and through stations controlled by and affiliated with the Defendants. The proceeds of those resales were not paid to Mansfield, were not maintained in the Account, and, upon information and belief, were transferred to, routed through, or held by one or more of the other Defendants or persons or entities under their control with full knowledge of these facts.

65. At the August 28, 2026 hearing, Kazmi professed ignorance of the identity of KRSM's other shareholders, of the percentage of KRSM that he owns, and of the identity of the other companies he owns and with whom he owns them — notwithstanding that he is KRSM's President and sole officer and director of record, executed its credit and banking documents, and is its registered agent.

66. Financial statements submitted by Kazmi to Mansfield and admitted at the August 28, 2026 hearing as Hearing Exhibit 3 reflect that KRSM represented that it had cash assets exceeding $30,000,000.

67. The fuel described above and the proceeds of its resale are identifiable and traceable. Mansfield has an equitable interest in, and claims an equitable lien upon and a constructive trust over, that fuel and its identifiable proceeds, wherever held and in whosoever's hands, including any funds in the Account and in any other account into which such proceeds were deposited or through which they were routed.

68. Mansfield does not seek by this pleading a restraint upon Defendants' assets generally. It asserts a claim to specific property, the unpaid-for fuel and its traceable proceeds, and to the avoidance of the Transfers; and, Mansfield seeks injunctive relief as authorized by 12 Pa. C.S. § 5107(a)(3) and as ancillary to the equitable relief demanded herein.

**Count I for Breach of Contract Against KRSM**

69. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

70. The Agreement contained in the Credit Application is a valid, binding, clear and unambiguous contract for the purchase of and payment for any fuel purchased from Mansfield on credit and under the terms and conditions stated therein and in the ancillary EFT Authorization Agreement.

71. On January 25, 2022, contemporaneously and in conjunction with the Commercial Credit Application, KRSM, by Kazmi as its President, executed and delivered to Mansfield an Electronic Funds Transfer Authorization Agreement (the "EFT Authorization"). A copy of the EFT Authorization is attached hereto as **Exhibit B**. The EFT Authorization is a valid, binding,

clear and unambiguous agreement supported by consideration, and is an integral part of the credit relationship between Mansfield and KRSM. Mansfield performed all of its obligations thereunder.

72. In the EFT Authorization, KRSM and Kazmi represented and promised that "*KRSM* Inc" was the "*Customer*" and owner of the Account; and, that "*Customer* [*KRSM*] further agrees to maintain in its [*KRSM's*] checking account with sufficient sums therein to cover the payments herein authorized." (Emphasis added). The EFT Agreement further provides that, "[t]he amount authorized to be drawn on said checking account by Mansfield shall be the amount of al *unpaid invoices* of Mansfield..." (Emphasis added).

73. In violation of the Agreement, Defendant KRSM lifted fuel on credit from Plaintiff, and has failed to make payment on any of the unpaid invoices for such fuel. Defendant KRSM's refusal to pay for the lifted fuel is a clear and unambiguous breach of its contractual obligations to Mansfield to pay for such fuel.

74. This includes KRSM's breach of the EFT Authorization, because KRSM is not, and upon information and belief has not been at relevant times, the owner of the Account. M&T Bank has advised that the Account is titled in the name of Defendant UGC, an entity that is not a party to the Agreement or to the EFT Authorization. Further, KRSM has breached the obligation to "to maintain in its checking account with sufficient sums therein to cover the payments herein authorized."

75. Pursuant to the Agreement, Defendant KRSM agreed that, "The undersigned hereby agrees to reimburse Mansfield for all collection expenses, including reasonable attorney's fees, incurred in connection with the collection of any amounts properly due to Mansfield."

76. As a result of Defendant KRSM's breaches, Mansfield has been damaged and will continue to be damaged in an amount to be fully determined but, in no case less than

$3,998,868.46, which damages include: past due accounts receivable, and all other damages incurred as a result of the Defendant KRSM's breach, plus its costs, attorneys' fees, expert witness fees, disbursements and interest (at the rate of 1.5% per month per the Agreement), the total of which will be determined at trial.

**Count II for Unjust Enrichment Against KRSM Inc.**
**Pleaded in the Alternative to Count I Pursuant to Fed. R. Civ. P. 8(d)(2) and (3)**

77. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

78. This Count is pleaded in the alternative to Count I pursuant to Fed. R. Civ. P. 8(d)(2) and (3).

79. To the extent Defendants have not admitted that the Agreement governs the liftings during the period May 21 through July 7, 2026, or otherwise misstate its meaning and effect and application to the breaches alleged herein, and have otherwise served upon Mansfield a letter dated August 10, 2026 styled "Objection to Account and Notice of Breach" disputing any obligation to make payment to Mansfield under the Agreement, KRSM owes restitution and related equitable action to account for unjust enrichment and benefits taken without payment owed to Mansfield.

80. Defendant received a benefit from Mansfield when it lifted the fuel from Mansfield's account at the Twin Oaks Terminal.

81. Defendant KRSM took possession of that fuel from Mansfield and resold such fuel to its customers and at its own stations.

82. Plaintiff Mansfield allowed KRSM to lift such fuel with the expectation that KRSM would not do so in excess of KRSM's $150,000 credit limit or in violation of the Agreement and the EFT Authorization; and that KRSM would pay for all such fuel it lifted and took from the terminal.

83. To the extent the Agreement is determined not to govern, or not to extend to, the liftings in excess of KRSM's approved credit limit of $150,000, and if and to the extent Mansfield is not fully made whole under the Agreement, then, KRSM received and retained the benefit of at least approximately $3,848,868.46 in fuel to which it had no entitlement whatsoever, under circumstances in which it would be inequitable for KRSM to retain that benefit without restitution and payment to Mansfield.

84. To the extent it is discovered and determined that other parties, including the other named Defendants herein, received benefits unjustly from the conduct of KRSM and its principal Kazmi or others affiliated with them, Plaintiff reserves the right to name all such other parties in this Count for unjust enrichment, and to make restitution to Plaintiff.

85. A data receiving malfunction causing delay in detection, recording and billing for Mansfield's fuel taken by KRSM does not negate or in any way waive Mansfield's right to receive payment, nor does it absolve KRSM's (and others who have been unjustly enriched) obligation to pay and make restitution.

86. As a direct result of Defendant KRSM's receipt and retention of the fuel without authority from and payment to Mansfield, and KRSM's subsequent resale of the Mansfield fuel for proceeds which it has retained or used for Defendants' own benefit, the Defendants and other potential Defendants to be identified in discovery have been unjustly enriched.

87. Mansfield is entitled to restitution of the value of the fuel KRSM received and retained, and to the imposition of a constructive trust upon the identifiable proceeds of that fuel, wherever and by whomever received, held and/or disposed of or transferred.

**Count III for Action for the Price Against KRSM**

88. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

89. Defendant requested to take possession of fuel from Mansfield, and had its designated transportation partners lift such fuel at the Twin Oaks terminal for delivery to Defendant's customers and its own stations.

90. Defendant clearly accepted and then retained the fuel, as it subsequently sold the fuel at retail.

91. Payment for the fuel became due within ten (10) days of each delivery accepted by KRSM, pursuant to the terms of the Agreement.

92. Despite Plaintiff's demands, KRSM has refused to pay the wholesale price of the fuel, or any portion thereof.

93. Pursuant to 13 Pa. C.S. § 2709(a)(1), when a buyer fails to pay the price as it becomes due, the seller may recover the price of goods accepted.

94. As a direct result of KRSM's failure to pay, Plaintiff has been damaged in the amount of $3,998,868.46, plus interest and costs.

**Count IV for Account Stated Against KRSM**

95. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

96. Plaintiff submitted invoices to KRSM for the fuel that KRSM had picked up at the Twin Oaks Terminal.

97. After the reconciliation described above, KRSM received the final revised invoices for the fuel and retained them without objection.

98. On or about July 17, 2026, an account was stated between Mansfield and KRSM showing a balance due to Mansfield in the amount of $3,998,868.46.

99. Between July 17, 2026 and August 10, 2026, KRSM made no objection to the details of the revised invoices, and Kazmi stated in multiple telephone calls with Mansfield personnel that KRSM would pay the balance owed. KRSM thereby retained the revised invoices without objection for a reasonable period and assented to the account stated.

100. The letter dated August 10, 2026 styled “Objection to Account and Notice of Breach” was served after KRSM had refused Mansfield’s drafts on July 27 and 28, 2026 and nine days before this action was commenced. It was not interposed within a reasonable time after KRSM’s receipt and retention of the revised invoices, and it does not displace the account stated between the parties on or about July 17, 2026.

101. Despite Plaintiff’s demands, KRSM has refused to pay the stated balance or any part thereof.

102. As a direct result of KRSM’s failure to pay the account stated, Plaintiff has been damaged in the amount of $3,998,868.46, plus interest and costs.

**Count V for Conversion Against KRSM Inc., Syed Kazmi, and Shamikh Kazmi**

103. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

104. Mansfield was at all relevant times the owner of the fuel held in its account at the Twin Oaks Terminal. Mansfield’s consent to any withdrawal of fuel from that account by KRSM was limited to, and conditioned upon, lifting of fuel only within the $150,000 of credit Mansfield had extended to KRSM under the Agreement, and only if and to the extent KRSM was in compliance with its obligations under the Agreement and the EFT Authorization.

105. KRSM knowingly took delivery of 1,124,594 gallons of fuel, worth $3,998,868.46, from Mansfield's account at the Twin Oaks Terminal, more than twenty-six times its approved credit limit of $150,000.

106. Mansfield did not consent to the delivery of the fuel taken in excess of that limit, and KRSM took it without lawful justification.

107. The duty KRSM breached in taking, exercising dominion over, and disposing of fuel that Mansfield had not consented to KRSM taking or delivering to itself and others, is not a duty solely created by the Agreement or defined by its terms. It is the duty owed by every person to every other person not to take, exercise dominion over, or dispose of property belonging to another without that person's consent and without lawful justification, and it would exist between Mansfield and KRSM had no contract ever been made.

108. To the extent title to any fuel taken in excess of the approved credit limit is deemed to have passed to KRSM – which is expressly denied by Mansfield under the fact of this case -- such title transfer was voidable within the meaning of 13 Pa. C.S. § 2403, and Mansfield retains an interest in that fuel and in its identifiable proceeds.

109. Among other things, (a) KRSM and Kazmi obtained the fuel upon their misrepresentation, including in the EFT Authorization executed by Kazmi, that the Account against which Mansfield was authorized to draw was *KRSM's* own checking account, when in fact the Account was actually titled in the name of another; (b) KRSM and Kazmi knew that they failed to maintain funds sufficient to cover the invoices for the fuel they were lifting, in violation of the EFT Authorization agreement; (c) KRSM refused Mansfield's drafts against that Account on July 27 and 28, 2026, while intentionally refusing payment to Mansfield and despite having already previously instructed M&T Bank to decline draws by Mansfield without disclosing this to

Mansfield; (d) KRSM never disclosed the fact that its business standing in the State of New Jersey had been revoked on February 16, 2023 for failure to file annual reports, and KRSM was not authorized to do business in the Commonwealth of Pennsylvania; and (e) KRSM continued lifting and taking Mansfield's fuel with no intention of paying for it, and knowing it had no authority to do so above its $150,000 credit limit.

110. KRSM has further exercised dominion over the identifiable proceeds of Mansfield's fuel by collecting those proceeds, declining to deposit or maintain them in the Account, and causing them to be transferred to or held by the other Defendants and by persons and entities under their control.

111. Defendant Syed Kazmi personally requested, directed, and authorized the liftings of fuel described above; personally executed and delivered to Mansfield the credit and banking documents upon which Mansfield relied in permitting those liftings; and personally directed the disposition of the fuel and of its proceeds.

112. Upon information and belief, Defendant Shamikh Kazmi directed the day-to-day operations through which the fuel was received, transported, delivered, and resold, and through which the proceeds of the fuel were collected and routed among the Entity Defendants.

113. Syed Kazmi and Shamikh Kazmi each specifically directed the acts constituting the conversion alleged in this Count to be done, and each knowingly participated and cooperated therein. Each is therefore personally liable for that conversion, without regard to the corporate form of any Entity Defendant.

114. KRSM, at the direction of and with the participation of Syed Kazmi and Shamikh Kazmi, asserted control over the misappropriated fuel by selling the same to retail fueling locations and causing it to be delivered to stations affiliated with the enterprise described above.

115. Defendants continue to refuse either to return the misappropriated fuel and its proceeds or to pay Mansfield the value thereof.

116. As a direct result of Defendants' conversion of Mansfield's property, Mansfield continues to suffer loss in the amount of $3,998,868.46, plus interest and costs.

117. Defendants' conduct was intentional, willful, malicious, outrageous, and undertaken with a subjective appreciation of the risk of harm to Mansfield and in conscious and reckless disregard of Mansfield's property rights. Punitive damages should accordingly be awarded to Mansfield on this Count.

**Count VI for Violation of the Pennsylvania Uniform Voidable Transactions Act, 12 Pa. C.S. § 5101 et seq., Against All Defendants**

118. Plaintiff repeats, realleges and reasserts each of the foregoing paragraphs as if each were fully set forth herein.

119. Mansfield is a "creditor" of KRSM, and KRSM is a "debtor" of Mansfield, within the meaning of 12 Pa. C.S. § 5101(b).

120. Mansfield's claim arose no later than the lifting of the fuel between May 21 and July 7, 2026, and before the Transfers.

121. The Transfers were made, and the routing of the proceeds of the Mansfield fuel away from KRSM and the Account was undertaken, with actual intent to hinder, delay, or defraud Mansfield within the meaning of 12 Pa. C.S. § 5104(a)(1).

122. The badges of fraud enumerated in 12 Pa. C.S. § 5104(b) are present, including without limitation: the Transfers were to insiders (§ 5104(b)(1)); the debtor retained possession or control of the property transferred, including through a bank account represented to be KRSM's but titled in the name of Defendant UGC (§ 5104(b)(2)); the Transfers and the identities of the transferees were concealed, including through Kazmi's professed ignorance under oath of

KRSM's own ownership and affiliates (§ 5104(b)(3)); before the Transfers were made, KRSM had been sued or threatened with suit (§ 5104(b)(4)); the Transfers were of substantially all of KRSM's liquid assets available to satisfy the Court's $2,750,000.00 floor (§ 5104(b)(5)); KRSM removed or concealed assets (§ 5104(b)(7)); the value received by KRSM was not reasonably equivalent to the value of the assets transferred (§ 5104(b)(8)); and the Transfers occurred shortly before or shortly after a substantial debt was incurred (§ 5104(b)(10)).

123. In the alternative, the Transfers were made without KRSM receiving a reasonably equivalent value in exchange, at a time when KRSM was engaged or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction, or when KRSM intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, in violation of 12 Pa. C.S. § 5104(a)(2), and/or were made while KRSM was insolvent or rendered insolvent, in violation of 12 Pa. C.S. § 5105.

124. Defendants are, upon information and belief, first transferees of the Transfers, persons for whose benefit the Transfers were made, or subsequent transferees within the meaning of 12 Pa. C.S. § 5108(b), and none took in good faith or for a reasonably equivalent value.

125. Defendants Kazmi and Shamikh Kazmi orchestrated, directed, and participated in the Transfers.

126. Pursuant to 12 Pa. C.S. §§ 5107 and 5108, Mansfield is entitled to: avoidance of the Transfers to the extent necessary to satisfy its claim; attachment against the assets transferred; injunctive relief against further disposition; the appointment of a receiver; judgment against the first transferees of the Transfers and the persons for whose benefit the Transfers were made in the amount of the lesser of Mansfield's claim and the value of the assets transferred; and such other

relief as the circumstances may require.

127. Defendants' conduct was intentional, willful, and undertaken in conscious disregard of Mansfield's rights and of the Orders of this Court, warranting punitive damages.

**Count VII For Fraudulent Misrepresentation Against KRSM Inc., Syed Kazmi, Shamikh Kazmi, and Universal Group Company, Inc.**

128. Plaintiff repeats, realleges and reasserts all of the foregoing paragraphs as if each were fully set forth herein.

129. On January 25, 2022, contemporaneously with the Commercial Credit Application, KRSM, by Kazmi as its President, executed and delivered to Mansfield the EFT Authorization.

130. Kazmi's representation and identification of KRSM being the owner of the Account, when the Account has been, in truth, owned by UGC, and/or by thereafter changing and transferring ownership of the Account and never disclosing the truth, were fraudulent misrepresentations that were relied upon by Plaintiff and that induced Plaintiff to enter into the business relationship, and to continue operating thereunder.

131. KRSM and Kazmi also induced Mansfield to continue to conduct business with them by representing in their "Consolidated Financial Statement" audited by Andy Shaw, CPA, that KRSM had cash assets of $30 million.

132. The misrepresentations and material nondisclosures, made between January 25, 2022 and August 10, 2026, were made by Defendant Syed Kazmi and Defendant KRSM. The representations and material nondisclosures were deliberate and were known to be false and fraudulent when made or, in the alternative, became false and were thereafter knowingly permitted to stand uncorrected.

133. Upon information and belief, UGC, acting by and through Kazmi and his brother, Shamikh Kazmi, knowingly owned or acquired ownership of the Account while it was being

identified and represented to Mansfield as being owned by KRSM for the purpose of inducing Mansfield to do business with KRSM. UGC knowingly permitted its Account to be used as the instrument through which KRSM conducted its banking with Mansfield; and knowingly received and retained the benefit of the fuel and of the proceeds routed through and held in that UGC account. UGC thereby participated in, authorized, and ratified the misrepresentations and misconduct, and is liable for it together with KRSM and Kazmi.

134. The fraudulent misrepresentations were made for the purpose and with the intent of: (i) inducing Mansfield to extend credit to KRSM, to induce Mansfield to allow KRSM to lift fuel from Mansfield's account at the terminal rack, and to forbear from requiring prepayment, a letter of credit, a personal guaranty, or other security in place of the EFT Authorization agreement; and (ii) preventing Mansfield from discovering that the party with whom it had the business relationship and agreement, was not the party owing the Account on which the business relationship and Agreement was based.

135. As a direct and proximate result of the misrepresentations and of the ongoing concealment of their falsity, KRSM and Kazmi lifted approximately 1,124,594 gallons of fuel on Plaintiff's account, valued at approximately $3,998,868.46, for which Plaintiff has received no payment. And, absent proper relief from the Court against UGC, Plaintiff will be deprived of the contractual right to draw upon a deposit account owned by its actual debtor (*i.e.* KRSM) in payment for that fuel.

136. Plaintiff has also incurred and continues to incur costs, expenses and attorneys' fees in ascertaining the true ownership of the Account and in seeking to reach the proceeds of its fuel, including the expense of obtaining and enforcing the restraints entered by this Court against an account that has proved to be owned by a party other than its debtor *(i.e.* KRSM).

137. The misrepresentations and related conduct alleged in this Count, at minimum were engaged in negligently, and were also intentional, willful, malicious, outrageous, and undertaken with a subjective appreciation of the risk of harm to Mansfield, and otherwise in conscious and reckless disregard of the rights of Mansfield and others. Accordingly, Mansfield is entitled to punitive damages.

**WHEREFORE**, Mansfield demands judgment be entered, jointly and severally against the Defendants named in each Count, and other relief, awarded as follows:

(a) On Count I, damages in an amount to be determined but not less than $3,998,868.46 including, but not limited to, Plaintiff's costs, attorneys' fees, disbursements and interest;

(b) On Count II, restitution in an amount to be determined but not less than $3,998,868.46 including, but not limited to, Plaintiff's costs, attorneys' fees, disbursements and interest, and imposing a constructive trust upon the proceeds of the fuel wherever and by whomever held;

(c) On Count III, damages in an amount to be determined but not less than $3,998,868.46 including, but not limited to, Plaintiff's costs, attorneys' fees, disbursements and interest; and

(d) On Count IV, damages based on account stated in an amount to be determined but not less than $3,998,868.46 including, but not limited to, Plaintiff's costs, attorneys' fees, disbursements and interest; and

(e) On Count V, damages in an amount to be determined but not less than $3,998,868.46 including, but not limited to, Plaintiff's costs, attorneys' fees, disbursements and interest, and punitive damages; and

(f) On Count VI, appropriate Orders declaring that pertinent transfers of fuel product and proceeds thereof are avoided to the extent necessary to satisfy Mansfield's claim; entering judgment pursuant to 12 Pa. C.S. § 5108 against Defendants Syed Kazmi, Shamikh Kazmi, UPS, UGC, UG Leaseholds, and UG 1636, jointly and severally to the extent of the transfers each received or from which each benefited, in an amount not less than $3,998,868.46 or the value of the assets transferred; granting attachment, injunctive relief pursuant to 12 Pa. C.S. § 5107(a)(3), and the appointment of a receiver; awarding punitive damages; and awarding Mansfield its costs, attorneys' fees, disbursements and interest; and

(g) On Count VII, damages in an amount to be determined but not less than $3,998,868.46 including, but not limited to, its costs, attorneys' fees, disbursements and interest, together with punitive damages; and

(h) Granting such other and further relief as the Court deems just and proper.

Dated: Danbury, Connecticut
September 24, 2026

Respectfully submitted,

*<u>/s/ Urs Broderick Furrer</u>*
URS BRODERICK FURRER, ESQ.
HARRITON & FURRER, LLP
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832

/s/ *Frederick P. Santarelli*
FREDERICK P. SANTARELLI
KYLE M. ELLIOTT
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215.977.1000 (phone)
FPSantarelli@elliottgreenleaf.com
kme@elliottgreenleaf.com

Counsel for Plaintiff
Mansfield Oil Company of Gainesville, Inc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MANSFIELD OIL COMPANY OF GAINESVILLE, INC., | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | No. 2:26-cv-06072-GAM |
| KRSM INC. and SYED KAZMI, | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2026, I caused the foregoing First Amended Complaint to be filed electronically and is available for viewing and downloading from the ECF System.

Dated: Danbury, Connecticut
September 24, 2026

HARRITON & FURRER, LLP
*/s/ Urs Broderick Furrer*
URS BRODERICK FURRER, ESQ.
Attorneys for Plaintiff
83 Wooster Heights Road, Suite 125
Danbury, Connecticut 06810
(914) 730-3400
UBFurrer@HFLawLLP.com
PA Bar # 312832