# EXHIBIT A

***Mansfield Oil Company of Gainesville, Inc.***
1025 Airport Parkway, S.W., Gainesville, GA 30501
Tel. 1-800-708-3048 Fax 678-450-2318
e-mail: creditsetups@mansfieldoil.com

**Commercial Credit Application**

Terms: Net 10 Days from Delivery Date

Company Name KRSM INC
Mailing Address 1601 Princeton ave
City Lawrenceville State NJ Zip 08648
Tel # 215-278-4111 Email accounting@upssites.com
Estimated monthly usage in gallons: 1,200,000
FEIN 38-4042718
Check One: ☑ Corporation ☑ Proprietorship ☑ Partnership ☑ Other ______
Type of Business: Whoelsale Fuel
Dunn & Bradstreet # ______

**Officers/Principals**

Full Name Syed Kazmi
Title President

Full Name ______
Title ______

**References**

Bank Name M and T bank
Address 1817 Street rd bensalem, PA
Contact Person Klara

Tel # (215) 639-0750
Fax # ______
Acct. # ______

**Trade References**

Name & Contact Sunoco LP Tel # 610-247-8417
Name & Contact United energy plus terminals Tel # 610-905-3372
Name & Contact ______ Tel # ______
Name & Contact ______ Tel # ______

Fiscal Year End Financial Statement as of 2020 attached (please attach a copy).

IRS Form W-9 attached (please attach a copy).

The undersigned hereby: (i) certifies that all information on this application and attachment(s) is true and accurate for the purpose of obtaining credit; and (ii) gives their authorization for Mansfield Oil Company of Gainesville, Inc.("Mansfield") to check the references listed herein and/or on the attachment for the purpose of obtaining credit from Mansfield. In the event Mansfield extends credit to Company hereunder, and Company thereafter purchases fuel from Mansfield, Company hereby agrees that it shall be responsible to pay Mansfield for such fuel. Mansfield reserves the right to assess late payment charges or interest at the maximum rate allowable under state law on all unpaid past due balances. The undersigned hereby agrees to reimburse Mansfield for all collection expenses, including reasonable attorney's fees, incurred in connection with the collection of any amounts properly due to Mansfield.

Date: 1-25-2022
By: Syed Kazmi
Printed Name of Authorized Officer

[signature]
Signature of Authorized Officer

Wholesale Marketing Representative: Zach Harrell

Mansfield
Energy. Simplified.

## GENERAL TERMS AND CONDITIONS – FOB

These General Terms and Conditions ("Terms and Conditions") are entered into by and between Mansfield Oil Company of Gainesville, Inc., and/or any affiliated entity that enters into a transaction hereunder (collectively, "Mansfield"), and the undersigned entity ("Purchaser"), which may include its affiliates and/or subsidiaries as specified by Purchaser.

1. PURCHASE/SUPPLY REQUIREMENTS. Except as may be set forth in a separate written agreement between Mansfield and Purchaser, Mansfield has no obligation to sell any Product to Purchaser and Purchaser has no obligation to purchase any Product from Mansfield at any time.

2. SALE OF PETROLEUM PRODUCTS. "Petroleum Products" and/or "Fuel" shall refer to gasoline, gasohol, diesel, or biodiesel fuel meeting applicable ASTM specifications of the respective jurisdiction where any such Fuel is supplied.

3. DELIVERY. The "Delivery Point" will be the terminal where Purchaser and/or Purchaser's common carrier receives Fuel. Any common carrier used by Purchaser must be approved in advance by Mansfield. For clarity, Mansfield shall have no obligation to inspect any carrier's truck, trailer, and/or fuel storage tanks; it is the responsibility of any such carrier to comply with all applicable laws and regulations for the transportation of Fuel, including any requirements of the terminal, as well as any set-up procedures and terminal access agreement(s) as may be required by Mansfield and/or the terminal. Purchaser and/or Purchaser's common carrier may only obtain Fuel at the applicable terminal rack and supplier source using a specific loading number as received from Mansfield. Purchaser agrees that it will provide Mansfield all requested bill of lading documentation if needed for billing or clarification purposes. In the event Purchaser and/or Purchaser's common carrier knowingly obtains possession of any Fuel from Mansfield's account using an incorrect loading number, then such load is unauthorized and Mansfield may pursue any and all available civil and criminal legal remedies against Purchaser for such unauthorized taking.

4. OWNERSHIP OF PETROLEUM PRODUCTS. Title and risk of loss for Fuel shall pass to Purchaser as it is dispensed into Purchaser's or its common carrier's vehicle at the applicable terminal Delivery Point.

5. PURCHASE PRICE. The price for Fuel shall be set forth in a price letter sent by Mansfield to Purchaser, unless otherwise agreed to in a separate writing between the parties, such as an index contract agreement and/or day deal. Mansfield will charge Purchaser the agreed upon price per gallon of Fuel, plus applicable taxes and environmental fees.

6. PAYMENT FOR PETROLEUM PRODUCTS. Mansfield will invoice Purchaser for Fuel upon lifting at the Delivery Point. Full payment of such invoiced amounts shall be paid to Mansfield via EFT within ten (10) days following Purchaser's receipt of invoice, with interest thereafter accruing at the rate of 1.5% per month on any unpaid balance. Should any of Purchaser's subsidiaries and/or affiliates receive Fuel under the terms hereof and fail to timely pay any invoices when due, Mansfield shall have the right to demand payment directly from Purchaser, and Purchaser shall be responsible to pay to Mansfield the full amount of any unpaid invoice on behalf of its subsidiaries and/or affiliates. Additionally, Purchaser is responsible for all costs of collection, including reasonable attorney's fees, if collected through an attorney. All Fuel shall be billed on gross gallons or net gallons in accordance with the prevailing practice in the jurisdiction where such Fuel is sold, unless otherwise agreed to by the parties.

7. FINANCIAL CONDITION. Purchaser hereby acknowledges and agrees that it is purchasing Fuel on credit from Mansfield, and must therefore meet Mansfield's credit approval at all times. Purchaser will comply with Mansfield's reasonable requests for information about Purchaser's financial health, unless Purchaser chooses to prepay for its Fuel purchases. In the event Purchaser fails to make any and all payments in a timely manner, or exceeds their credit limit as extended by Mansfield, Mansfield shall be authorized to stop and/or suspend all future Fuel sales to Purchaser until such time as Purchaser pays all outstanding invoices, and thereafter has the right to demand advance cash payment for future Fuel sales. Further, if Purchaser becomes involved in a bankruptcy proceeding (whether voluntary or not), Mansfield shall be authorized to stop all Fuel sales to Purchaser, net and/or set off all transactions outstanding between the parties, and use all other rights and defenses available at law or equity.

8. INSURANCE REQUIREMENTS. Purchaser and/or Purchaser's common carrier who shall receive Fuel at any applicable terminal Delivery Point shall be responsible for obtaining and maintaining the following minimum insurance coverage: (a) employer's liability and workers' compensation insurance in accordance with the laws of the state where Purchaser's employees are located; (b) commercial general liability insurance on an occurrence basis with a combined single limit of $1,000,000 each occurrence, and annual aggregates of $2,000,000 for bodily injury and property damage, including coverage for blanket contractual liability, broad form property damage, personal injury liability, independent contractors, products/completed operations, and sudden and accidental pollution liability; and (c) excess or umbrella liability insurance with a combined single limit of $1,000,000 each occurrence and annual aggregates of $1,000,000 for bodily injury and property damage covering excess of Employer's Liability and the insurance described in (a) and (b) above.

9. INDEMNIFICATION. A. Purchaser agrees to defend and indemnify Mansfield (and its officers, directors, employees, successors and assigns) against all claims, suits, liabilities, fines, penalties, assessments, losses and expenses (including attorney's fees and expenses of litigation) arising out of (i) Purchaser's negligence, non-performance or breach of its obligations, representations or warranties herein; and (ii) Purchaser's or its affiliates' or its common carrier's transportation, delivery, use, sale, storage, handling, leakage or spillage of the Fuel; except to the extent of Mansfield's indemnification obligations as set forth below or caused by the negligence or willful misconduct of Mansfield. B. Mansfield agrees to defend and indemnify Purchaser (and its officers, directors, employees, successors and assigns) against all claims, suits, liabilities, fines, penalties, assessments, losses and expenses (including attorney's fees and expenses or litigation) arising out of (i) Mansfield's negligence, non-performance or breach of its obligations, representations or warranties herein; and (ii) Mansfield's sale of Fuel which fails to meet applicable ASTM specifications of any such Fuel in the jurisdiction where such Product is received; except to the extent of Purchaser's indemnification obligations as set forth above or caused by the negligence or willful misconduct of Purchaser. C. This provision shall survive any expiration or termination of these Terms and Conditions.

10. FORCE MAJEURE. Any delay in performance or failure to perform by either Mansfield or Purchaser shall not constitute a breach or default hereunder, or give rise to any claims for damages hereunder, if such delay or failure is caused by circumstances or events beyond the reasonable control of the affected party (or in the case of Mansfield, circumstances or events affecting a supplier), including but not limited to, acts of God such as floods, fires, explosions, extreme heat or cold, earthquake, hurricane, or storm; strikes, lockouts or other industrial disturbances; wars, acts of terrorism or sabotage; accident or breakage of equipment or machinery; interruption, loss, or shortage of transportation facilities, supplies, or refinery capacity, or shortage of supply of Product deliverable hereunder; or any law, rules, order or action of any court or instrumentality of the federal or any state government (the "Force Majeure Event"). Any suspension of performance pursuant to this section shall commence upon notice of any such Force Majeure Event and shall continue until the affected party is able to again perform its obligations hereunder. Neither Purchaser nor Mansfield shall be required to make up performance omitted on account of a Force Majeure Event (other than payments properly due and owing for received Product).

11. GOVERNING LAW. These Terms and Conditions shall be controlled by the laws of the state where the terminal from which Purchaser receives Product is located. In the event of a dispute, the prevailing party in such dispute shall be entitled to reimbursement from the non-prevailing party for all costs and attorneys' fees incurred in connection with such dispute.

12. ENTIRE AGREEMENT. These Terms and Conditions shall constitute the entire agreement between the parties with respect to the subject matter of these Terms and Conditions. The terms and conditions contained herein supersede all prior oral and written communications, agreements and understandings of the parties with respect to the subject of these Terms and Conditions. No modifications hereof shall be effective unless expressly set forth in writing signed by an authorized representative of both parties hereto.

PURCHASER: KRSM INC

BY: [signature]

NAME: Syed KaZMI

TITLE: President

DATE: 1-25-2022

Wholesale Marketing Representative: Zach Harrell